FILED
CLERK, U.S. DISTRICT COURT
2004 DEC 28 P 4: 29

Todd C. Emerson, A8175
SkyWest Airlines, Inc.
444 S. River Road
St. George, UT 84790
Telephone: (435) 634-3530

Scott M. Petersen, A7599
David N. Kelley, A9137
FABIAN & CLENDENIN,
A Professional Corporation
215 South State Street, 12th Floor
P.O. Box 510210
Salt Lake City, Utah 84151
Telephone: (801) 531-8900

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ANDREW DAVID CALLAWAY<br><br>Plaintiff,<br><br>vs.<br><br>SKYWEST AIRLINES INC., a Utah Corporation,<br><br>Defendant. | **MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO QUASH AND FOR SANCTIONS**<br><br>**EXPEDITED HEARING REQUESTED**<br><br>Civil No. 2:04CV00179<br><br>Judge Ted Stewart |

SkyWest Airlines hereby submits its Memorandum in Opposition to Plaintiff's Motion to Quash and for Sanctions.

20

## FACTUAL BACKGROUND

Plaintiff Andrew Callaway was employed as a pilot for the Defendant, SkyWest Airlines. During his employment, SkyWest received numerous complaints, on different occasions and from different sources, about Mr.Callaway treating fellow employees and security personnel in a rude and abusive manner. Despite being counseled on the problem, this behavior continued and Mr. Callaway's employment was terminated in October 2003. Mr.Callaway brought the present action claiming wrongful termination in violation of the Railway Labor Act and public policy, breach of an alleged implied employment contract, and violations of federal wiretapping laws. (*See* Complaint, ¶¶ 37-67).

In June 2004, SkyWest received what appeared to be a request under the Pilot Records Improvement Act ("PRIA") for Mr.Callaway's SkyWest employment records.[1] The PRIA Request was prepared on a Federal Aviation Administration (FAA) form apparently by both Mr. Callaway and a person identified as Tiffany Cotter carrying the title of "SIF Representative." (A copy of the PRIA Request is attached as Exhibit "A"). The PRIA Request identifies the requesting air carrier as "AAWH" and lists "YEN789J" as its air carrier certificate number. SkyWest has received no other PRIA Requests for Mr. Callaway in the past twelve months. (Aff. of Jacque Nielsen, ¶¶3-5, attached as Exhibit "B", hereafter "Nielsen Aff.").

At or around the same time, SkyWest in-house counsel Todd Emerson received a telephone call from plaintiff's counsel Erik Strindberg requesting that Mr.Callaway's employment status be changed from "terminated" to "voluntary terminated" so that his client's

[1] PRIA is a federal law that requires commercial air carriers to seek a pilot/applicant's flight, drug testing and disciplinary records from prior employers for the previous five years.

chances of obtaining employment might improve.[2] The lawyers discussed various concessions (i.e. dropping claims for future damages, etc.) and Mr. Emerson agreed not to answer the pending PRIA until Mr. Strindberg had spoken to his client about his options. Mr. Strindberg did not contact SkyWest or its attorneys on this matter for the remainder of the summer.

In September the lawyers exchanged telephone calls and increasingly accusatory correspondence about the pending PRIA information. The gist of Mr. Strindberg's letters was that SkyWest had failed to respond to several PRIA requests, that the delay had injured his client, and that SkyWest should now expunge his employment record and recommend Mr. Callaway to Polar Air, an air cargo company that was apparently interested in hiring his client. Mr. Emerson responded that SkyWest had only received one PRIA request (presumably from Polar), reminded Mr. Strindberg that the PRIA had been delayed at his request, and promised that the information would be immediately faxed to Polar Air, without revision. (Letters to and from Eric Strindberg, Todd Emerson and Scott Petersen, attached as Exhibit "C").

Mr. Emerson's last letter indicated that the requested information "has been sent via facsimile" to Polar Air. This, in fact, did not occur. Using the fax number provided on the PRIA request form, SkyWest HR manager Jacque Nielsen faxed the information to Tiffany Cotter at A.A.W.H. believing that this was Polar Air's parent company; Air Atlas World Holdings. Jacque Nielsen then called Polar Air's HR department to confirm receipt of the information. Polar denied receiving a fax from SkyWest and informed Ms. Nielsen that they did not have any

[2] This option had been offered to Mr. Callaway when he was terminated and several times prior to filing his lawsuit. He repeatedly declined it. (Callaway Dep. at 268-70, 325-27, attached as Exhibit "D").

information about Mr. Callaway, they had not sent SkyWest the identified PRIA Request, and that Tiffany Cotter was not a Polar Air employee. (Nielson Aff., ¶¶7-10). SkyWest then contacted the FAA and learned that AAWH is not a registered air carrier and that certificate number YEN789J did not match any known air carrier, but was close to the number that corresponded with Jet Blue. (Nielson Aff., ¶11). SkyWest also learned that the return address listed on the PRIA Request was not a Polar Air business address and the facsimile number provided in the request corresponded to the Staples Corporate Headquarters in Framingham, Massachusetts. Mr. Emerson telephoned Mr. Strindberg and asked him to explain these discrepancies so that the PRIA request, if legitimate, could be answered. Mr. Strindberg had no answers but agreed to ask his client to clarify the situation. Mr. Strindberg made no further efforts to explain the "Polar" PRIA request.

On or about October 25, 2004, Mr. Callaway responded to SkyWest's discovery requests and claimed "I have had interviews at Polar Air and Atlas Air." (Pl.'s Answer to Def.'s First Set of Written Discovery Requests, Answer to Interrog. 4, attached as Exhibit "E"). Given Mr. Callaway's response that he had interviewed with Polar Air, and the incorrect information located in the PRIA Request, Mr. Petersen prepared and signed a subpoena duces tecum to be served on Polar Air's corporate headquarters in New York seeking any documents about Mr. Callaway's contact with Polar Air. Mr. Petersen's paralegal prepared an accompanying letter on December 7, 2004 and sent both the letter and the subpoena to a process server in New York. Copies of both the Subpoena and accompanying letter are attached as Exhibit "F".

The next day, December 8, 2004, SkyWest took Mr. Callaway's deposition. During the deposition, Mr. Callaway was asked whether he had, since his termination, sought employment

with any other airline. He responded that he had interviewed with Polar Air. (Callaway Dep. at 329). Later in his deposition, Mr. Callaway was asked about the PRIA Request. The exchange went as follows:

Q. Okay. There's a Part I and a Part II in there. Do you see that? First box says, "Part I: Air Carrier and Other Records Request (PRIA); Part II: Airman Consent to Release of Records." Is that your signature in Part II?
A. Yes, it is.
Q. Dated 6/12/2004, correct?
A. That's correct.
Q. And did you prepare Part II?
A. Yes, I did.
Q. The Part I, do you know who prepared that?
A. Yes, I do.
Q. Who is it?
A. Tiffany Cotter.
Q. Who is Tiffany Cotter?
A. Tiffany Cotter is a friend of mine.
Q. All right. And who does she work for?
A. She works for a company in Boston.
Q. What's the company called?
A. I don't know.
Q. Does she work for Polar Air?
A. No.
Q. Do you see where it says "AAWH" under--over the "Air Carrier Name"?
A. Yes, I do.
Q. What is that in reference to? Do you know?
A. I don't know. I did not fill out Part I.
Q. Does Tiffany Cotter work for an airline at all?
A. No, she does not.
Q. Okay. That's the 64 dollar question, then, why would you have your friend Tiffany Cotter fill out an air carrier request?
A. Because I had not received my PRIA records from Polar Air. They had not received PRIA records that were requested during an interview I had. And I wanted to see why and if I would be able to obtain my own records, which I am allowed to do.
Q. So you had her falsify a PRIA request.
MR. STRINDBERG: Objection. It's argumentative.
MR. PETERSEN: Okay. Go ahead. Answer.
MR. STRINDBERG: Just a second. Give me a moment.
THE VIDEOGRAPHER: We're going off the record. Time is 5:08 p.m.

(Callaway Dep. at 293-95).

After speaking with his counsel, Mr. Callaway invoked his Fifth Amendment privilege and refused to answer any more questions regarding the PRIA Request or a July 21, 2004 letter from Tiffany Cotter. (Callaway Dep. at 296-304). This ended the first day of Mr. Callaway's deposition.

At the end of the second day of Mr. Callaway's deposition, Mr. Strindberg requested that SkyWest not contact Polar Air because he intended to file a motion for a protective order. Mr. Petersen indicated that he had already sent a subpoena to Polar Air in New York for any records on Mr. Callaway. Mr. Strindberg objected and indicated that he was entitled to notice of the subpoena. Mr. Petersen responded that he was unaware of any rule that required SkyWest to provide prior notice before issuing a third-party subpoena. Mr. Strindberg replied that he did not know which rule it was, but that it was a requirement of the rules. The parties parted ways at that point.

Immediately thereafter, Mr. Petersen contacted his paralegal to determine the status of the subpoena. She called the New York process server and learned that the subpoena had not yet been served. Consequently, Mr. Petersen instructed the process server to hold the subpoena and contacted Mr. Strindberg's office to inform him that the subpoena had not yet been served. Although he was not convinced Mr. Callaway had any basis for objecting to the subpoena, Mr. Petersen offered to wait 24 hours in order to provide Mr. Callaway with time to file a motion for a protective order. Mr. Petersen also prepared a "Notice of Subpoena Requiring Production of Documents" and both faxed and mailed the notice along with a copy of the subpoena and

accompanying letter to Mr. Strindberg.

Without any basis in law or fact, the plaintiff has moved to quash the Defendant's subpoena. Further, despite knowing that the subpoena has not been served, Mr. Callaway has improperly demanded sanctions against Mr. Petersen personally and required him (and his client) to defend a frivolous motion. For the reasons set forth below, SkyWest requests that the motion be denied and the Plaintiff be required to pay the Defendant's attorney fees.

## ARGUMENT

## I. MR. CALLAWAY'S MOTION TO QUASH IS IMPROPER.

### A. This Court Does Not Have Jurisdiction Over the Motion.

Mr. Callaway's motion is improperly before this Court because the United States District Court for the District of New York issued the subpoena. "The 1991 amendments to Rule 45(c) now make it clear that motions to quash, modify, or condition the subpoena are to be made to the district court of the district from which the subpoena issued. It is the issuing court that has the necessary jurisdiction over the party issuing the subpoena and the person serviced with it to enforce the subpoena." 9A Wright & Miller, *Federal Practice and Procedure*, § 2459 (2004) (emphasis added). Federal Rule of Civil Procedure 45(c)(1) states in part, "The court on behalf of which the subpoena was issued shall enforce this duty," and 45(c)(2)(B) states, "If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued." (emphasis added.)

This rule makes sense because it is the District Court of New York that has jurisdiction over Polar Air and the documents being subpoenaed. Simply put, Mr. Callaway has come to the

wrong court to attempt to have the subpoena quashed and, therefore, his motion should be denied.

### B. As SkyWest's Subpoena is Directed at a Third-Party Witness, Mr. Callaway Lacks Standing to Move to Quash the Subpoena.

In addition to the jurisdictional defects of Mr. Callaway's motion, he also lacks standing to bring his motion to quash. He has not asserted any personal right or privilege to the documents SkyWest seeks to obtain from Polar Air. The law is settled that "a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action unless the party claims some personal right or privilege with regard to the documents." 9A Wright & Miller, *Federal Practice and Procedure*, § 2459 (2004); *see also Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2nd Cir. 1974); *Brown v. Braddick*, 595 F.2d 961 (5th Cir. 1979) ("In the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness."); *Hertenstein v. Kimberly Home Health Care, Inc.*, 189 F.R.D. 620, 635 (D. Kan. 1999). "A motion to quash or modify a subpoena duces tecum may only be made by a party to whom the subpoena is directed except where the party seeking to challenge the subpoena has a personal right or privilege with respect to the subject matter requested in the subpoena." *Id.* (quoting *Smith v. Midland Brake, Inc.*, 162 F.R.D. 683 (D. Kan. 1995) (citing *Kansas Health Care Association, Inc. v. Kansas Dept. of Social and Rehabilitation Services*, 1990 WL 255000 (D. Kan. 1990) (unpublished opinion)).

Here, the subpoena requires the production of documents that belong to Polar Air, who is not a party to this litigation. Plaintiff has no personal right in Polar Air's documents and has asserted no privilege with respect to the information sought by SkyWest. He has no standing to even bring this motion.

### C. Mr. Callaway Has Failed to Follow the Local Rules of the District Court for Discovery Disputes.

In addition to the defects listed above, Mr. Callaway's motion fails because it is procedurally defective. D.U.Rule 37-1(a) states, "Unless otherwise ordered, the court will not entertain any discovery motion … unless counsel for the moving party files with the court, at the time of filing the motion, a statement showing that the attorney making the motion has made a reasonable effort to reach agreement with opposing attorneys on the matters set forth in the motion." With his demand for sanctions pending, one would expect Mr. Callaway to have followed the rules he is now seeking to strictly enforce, yet he has failed to submit the required "meet and confer" statement prior to bringing his motion to quash. Interpreting a similar local rule for the U.S. District Court in Kansas, the court overruled a motion to quash where "the motion and supporting memorandum … reveal no efforts to confer in good faith" and where "Plaintiff has filed no separate certification of compliance with the conference requirement of D.Kan.Rule 37.2." *Hertenstein v. Kimberly Home Health Care, Inc.*, 189 F.R.D. 620, 635 (D. Kan. 1999).

Similarly, Mr. Callaway has not filed a separate certification of compliance and certainly has not brought his motion in good faith – keeping in mind that he argues no substantive reason for quashing the motion. The entire basis for quashing is that a subpoena was served without prior notice, a fact Mr. Callaway and his lawyer know to be untrue. Mr. Strindberg told counsel for SkyWest that he had not received advance notice prior to serving the subpoena, to wit, counsel for SkyWest stopped service of the subpoena. The error was caught and remedied before the Rule was violated -- but this fact has not stopped Mr. Callaway and his counsel from troubling the Court with a "violation" that did not happened and has caused no damage or

prejudice. A great deal of time and expense might have been saved if Mr. Callaway had followed the requirements of D.U.Rule 37-1(a).

### D. The Information Requested by the Subpoena Seeks Information Relevant to Plaintiffs' Credibility and His Attempts to Mitigate Damages

In addition to all the jurisdictional and procedural defects which undermine the appropriateness of Mr. Callaway's motion, it should be noted that the information sought by SkyWest is central to the pending litigation. The discovery rules regarding relevance are to be applied broadly. Rule 26(b)(1) specifically provides for "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." "It has been authoritatively stated that '(t)he scope of discovery has been made very broad and the restrictions imposed upon it are directed chiefly at the use of, rather than the acquisition of, the information discovered.'" *Clayton Brokerage Co., Inc. of St. Louis v. Clement,* 87 F.R.D. 569, 571 (D. Maryland 1980) (quoting 8 Wright & Miller, Federal Practice and Procedure: Civil s 2001 at 15.).

Mr. Callaway seeks damages for lost wages he claims resulted from his termination at SkyWest. (Amended Compl. at 10). Likewise, one of SkyWest's affirmative defenses is Mr. Callaway's failure to mitigate his damages. (Answer at 9). Mr. Callaway's claim that he applied at Polar Air and that Polar Air sent SkyWest a PRIA request is directly relevant to both his damages and SkyWest's affirmative defense.

Moreover, Mr. Callaway's falsified PRIA Request and subsequent letter by Ms. Cotter go directly to Mr. Callaway's truthfulness and credibility. Prior to invoking the Fifth Amendment, Mr. Callaway admitted that he urged a friend to prepare and submit the false PRIA Request as though it came from Polar Air when it did not. Mr. Callaway, through Mr. Strindberg, thereafter threatened SkyWest for not producing information sought by the falsified request. In fact, in one

letter, Mr. Strindberg stated: "[Mr. Callaway] did not go for training [at his new job] because SkyWest never responded to the PRIA request. Therefore he was never extended a job offer." (Exhibit "C", Letter from Eric Strindberg to Scott Petersen dated October 8, 2004). This entire set of events places Mr. Callaway's credibility at issue, and it is settled law that the triers of fact do not have to accord any weight to a witness' testimony if they think he is lying. *See Lambert v. Blackwell*, 387 F.3d 210, 256 (3rd Cir. 2004). At the very least, SkyWest needs the opportunity to review documents actually held by Polar Air to figure out whether Mr. Callaway is telling the truth. The documents sought by SkyWest are relevant and go to the heart of Mr. Callaway's damages or lack thereof. SkyWest needs these documents for its defense and its subpoena is proper.

## II. PLAINTIFF'S REQUEST FOR SANCTIONS IS IMPROPER.

It is unclear why Mr. Callaway seeks sanctions against SkyWest or Mr. Petersen. It is undisputed that the subpoena has not been served and therefore there is no violation of Rule 45 to be sanctioned. Mr. Callaway's counsel was informed of this fact within a few hours of the parties' discussion about the subpoena. There is simply no basis for Mr. Callaway's claim for sanctions. Rather, it appears to be an attempt by Mr. Strindberg to bother and harass Mr. Petersen. If that was the desired result, Mr. Strindberg has succeeded, but there remains no basis for sanctions.

## CONCLUSION

Mr. Callaway has come to the wrong court. He comes without fulfilling the requirements of D.U.Rule 37-1(a) and without a substantive basis for quashing the subpoena. If and when he goes to the proper court, he will do it without standing because he has no personal right or

privilege in the requested documents. His violation of D.U.Rule 37-1(a) has not prevented him from demanding personal sanctions against Mr. Petersen for an alleged violation that did not occur and resulted in no prejudice. For the foregoing reasons, SkyWest respectfully requests the Court to deny Mr. Callaway's motion to quash and for sanctions.

**EXPEDITED HEARING REQUESTED**

Discovery cutoff is fast approaching. Moreover, given the nature of the information sought by SkyWest, SkyWest requests an expedited hearing on Mr. Callaway's motion so that it might obtain the information sought and thereafter, if necessary, make arrangements to take depositions of the appropriate Polar Air representatives pursuant to Rule 30(b)(6), Federal Rules of Civil Procedure. These depositions would most probably take place in the state of New York.

DATED this 27th day of December 2004.

Scott M. Petersen
David N. Kelley
FABIAN & CLENDENIN,
a Professional Corporation
Attorneys for Defendant SkyWest Airlines

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a true and correct copy of the foregoing **MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO QUASH AND FOR SANCTIONS** to be mailed, postage prepaid, and sent via facsimile this 27th day of December, 2004, to the following:

Erik Strindberg, Esq.
Lauren I. Scholnick, Esq.
Strindberg & Scholnick, LLC
44 Exchange Place, 2nd Floor
Salt Lake City, UT 84111
**Fax: 359-4313**

Suzanne Judd

Exhibits/
Attachments
to this document
have **not** been
scanned.

Please see the
case file.