Todd C. Emerson, A8175
SkyWest Airlines, Inc.
444 S. River Road
St. George, UT 84790
Telephone: (435) 634-3530

Scott M. Petersen, A7599
David N. Kelley, A9137
FABIAN & CLENDENIN,
A Professional Corporation
215 South State Street, 12th Floor
P.O. Box 510210
Salt Lake City, Utah 84151
Telephone: (801) 531-8900

Attorneys for Defendant

RECEIVED CLERK
FILED
2005 JAN 26 P 5: 34
U.S. DISTRICT COURT
DISTRICT OF UTAH

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ANDREW DAVID CALLAWAY<br><br>Plaintiff,<br><br>vs.<br><br>SKYWEST AIRLINES INC., a Utah Corporation,<br><br>Defendant. | **MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER**<br><br>Civil No. 2:04CV00179<br><br>Judge Ted Stewart |

Defendant SkyWest Airlines, Inc. ("SkyWest") hereby submits the following Memorandum in Opposition to Plaintiff's Motion for Protective Order.

## FACTUAL BACKGROUND

Plaintiff David Andrew Callaway claims he was wrongfully terminated as a pilot for

SkyWest. His claims include wrongful termination in violation of the Railway Labor Act ("RLA") and public policy, breach of an implied employment contract, and violations of federal wiretapping laws. (*See* Complaint, ¶¶ 37-67). During his deposition, Callaway testified that he applied for a position with Polar Air, and that while he was at the offices for Polar Air, he personally provided the appropriate SkyWest facsimile number and observed an employee send, via facsimile, a Pilot Records Improvement Act ("PRIA") request to SkyWest.[1] (Deposition of David Andrew Callaway ("Callaway Dep."), p. 329-34, attached as Exhibit "A"). However, SkyWest never received a PRIA request from Polar Air relating to Callaway. (Affidavit of Jacque Nielsen, attached as Exhibit "B", hereafter "Nielsen Aff."). The only PRIA request SkyWest has received relating to Callaway was a falsified document sent by Tiffany Cotter, a friend of Callaway who does not work for any airline. (Nielsen Aff., ¶¶ 3-5; Callaway Dep. at 293-95).

SkyWest sent a response to the PRIA request, but when it contacted Polar Air to confirm that Polar Air received its PRIA response, Polar Air responded that they did not receive the PRIA response and that Ms. Cotter was not a Polar Air Employee. (Nielsen Aff. ¶ 10). Because there were two different stories being told by Mr. Callaway and Polar Air, Counsel for SkyWest determined that they had to issue a subpoena for Polar Air's records pertaining to Mr. Callaway's alleged job application and PRIA request.

Prior to serving a subpoena on Polar Air, SkyWest received a Motion to Quash Subpoena and subsequently Callaway's Motion for Protective Order. Mr. Callaway hopes to preclude

[1] Under PRIA, air carriers are required to seek employment records for the past five years for pilots who apply for work. The hiring carrier cannot put the new pilot into service until such records are received.

SkyWest from "seeking any information from Polar Air, any of its related entities, or any entity identified by Mr. Callaway as a potential employer." (*See* Motion for Protective Order). The basis for Mr. Callaway's claim is that he does not want Polar Air to know that he has filed suit against his former employer, SkyWest. *Id.*

Mr. Callaway's request, however, lacks merit and should be denied. His lawsuit is a matter of public record. His interest in keeping a public matter "private" is nugatory. More importantly, SkyWest must have the opportunity to defend itself with respect to Callaway's allegations, misrepresentations and failure to mitigate damages. SkyWest must be allowed to discover the extent that Callaway has sought other employment, and if so, why he has not obtained it. Callaway has represented that he was not hired by Polar Air specifically because SkyWest allegedly failed to respond to a legitimate PRIA request. (Letter from Eric Strindberg to Scott Petersen dated October 8, 2004, attached hereto as Exhibit "C"). Specifically, Strindberg wrote, "[Callaway] did not go for training [at his new job] because SkyWest never responded to the PRIA request. Therefore he was never extended a job offer." *Id.* SkyWest has the right to verify this claim from Polar Air, particularly in light of the fact that Mr. Callaway has admitted to falsifying the only PRIA request SkyWest has in its possession. Mr. Callaway's fraudulent actions also directly reflect on his credibility with respect to his discovery responses as well as his testimony as a witness at trial. Accordingly, the Motion for Protective Order should be denied, and SkyWest should be granted leave to conduct discovery from Polar Air.

## ARGUMENT

## I. THE PROTECTIVE ORDER SOUGHT IS OVERBROAD.

The discovery rules regarding relevance are to be applied broadly. Rule 26(b)(1) specifically provides for "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Fed. R. Civ. P. 26(b)(1). "It has been authoritatively stated that '(t)he scope of discovery has been made very broad and the restrictions imposed upon it are directed chiefly at the use of, rather than the acquisition of, the information discovered.'" *Clayton Brokerage Co., Inc. of St. Louis v. Clement,* 87 F.R.D. 569, 571 (D. Md. 1980) (quoting 8 Wright & Miller, Federal Practice and Procedure § 2001). Rule 26(c) grants the Court broad discretion with respect to the form of protective orders.

Mr. Callaway wishes to prevent SkyWest from attempting to contact any potential employer. (*See* Motion for Protective Order). Granting such an order would effectively prevent SkyWest from defending itself against Callaway's allegations or attempting to limit his damage claim. Such a broad restriction on discovery would be inappropriate, particularly where Callaway made the issue of new employment central to this case when he caused his friend, Tiffany Cotter, to fraudulently submit a falsified PRIA request to SkyWest. Callaway compounded his misrepresentations when he caused his attorney of record, Erik Strindberg, to threaten and harass SkyWest regarding that falsified PRIA request.

## II. CALLAWAY HAS FAILED TO SHOW GOOD CAUSE FOR THE PROTECTIVE ORER.

The general rule is that the discovery take place and Callaway has the burden to show good cause why the Court should grant his requested protective order. "Rule 26(b) is liberally interpreted to permit wide-ranging discovery of all information reasonably calculated to lead to

discovery of admissible evidence; but the discoverable information need not be admissible at the trial." *Ragge v. MCA/Universal Studios*, 165 F.R.D. 601, 603-604 (C.D. Cal 1995). There are some limits on discovery, and rule 26(c) of the Federal Rules of Civil Procedure allows a party to seek an order defining those limits.

The burden of limiting the scope of discovery, however, is on the party seeking the protective order. *See Grundberg v. Upjohn Co.*, 137 F.R.D. 372, 389 (D. Utah 1991). That party must show good cause for the protective order. *Id.* Furthermore, the showing of good cause is a heavy burden. *Id.* "[F]ederal courts have been reluctant to limit pretrial discovery when there is a need to search for the truth of allegations." *Berniger v. Denver and Rio Grande Western R.R. Co.,* 139 F.R.D. 175, 177 (D. Colo. 1991) (citing *Univ. of Penn. v. E.E.O.C.,* 493 U.S. 182, 110 S.Ct. 577 (1990)). "[T]he party seeking the protective order must show good cause by demonstrating a particular need for protection. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 23(c) test." *Grundberg,* 137 F.R.D. at 189 (quoting *Cipollone v. Liggett Group, Inc.* 785 F.2d 1108, 1121 (3rd Cir. 1986)).

Callaway has failed to show that SkyWest's search for evidence regarding the truth of his claims should be limited. Rather, Callaway's motion for protective order is full of broad, unsubstantiated allegations of possible harm. As theses type of conclusory statements are insufficient to justify a court order limiting SkyWest from conducting discovery, the Court must deny Callaway's broad request for a protective order.

## III. CALLAWAY LACKS STANDING TO BRING THE REQUESTED MOTION.

Callaway lacks standing to bring his motion for protective order as there is no existing employment relationship between Callaway and Polar Air. The law is settled that a party cannot

challenge a third-party subpoena unless the party claims some personal right or privilege with regard to the documents. 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2459 (2004); *see also Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2nd Cir. 1974); *Brown v. Braddick,* 595 F.2d 961 (5th Cir. 1979) ("In the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness."); *Hertenstein v. Kimberly Home Health Care, Inc.*, 189 F.R.D. 620, 635 (D. Kan. 1999).

Mr. Callaway has no personal right in Polar Air's documents and has asserted no privilege with respect to the information sought by SkyWest. He has no standing to bring this motion. In each of the cases Callaway cites for the proposition that he has a personal right to the documents, there existed an employment relationship.[2] Here no such employment relationship exists between Callaway and Polar Air, and there is no alternative method for discovery of the requested information. Mr. Callaway, through counsel, has suggested that he can obtain the documents from Polar Air and then produce them to us. This is laughable, given the fact that Mr. Callaway has already prepared a fake PRIA and submitted it to SkyWest in an attempt to deceive. Neither SkyWest nor the Court can rely upon Mr. Callaway's promise to obtain and share accurate documents from Polar Air. Moreover, Polar Air will likely ask Mr. Callaway why he wants the documents, which would require him to lie again, and may be reluctant to produce

[2] Callaway cites *Stewart v. Mitchell Transport,* 2002 U.S. Dist. LEXIS 12958 (D. Kan. 2002); *Grahm v. Casey's General Store,* 206 F.R.D. 251 (S.D. Ind. 2002); *Terwilliger v. York International Corporation,* 176 F.R.D. 214 (D. Va. 1997); and *Beach v. City Olathe, Kansas,* 2001 U.S. Dist. LEXIS 16214 (D. Kan. 2001).

them for fear of a failure to hire lawsuit themselves.[3]

The same argument applies with respect to the remaining potential employers Callaway seeks to prevent SkyWest from contacting. No employment relationship has been established, and without knowing what information SkyWest may seek to obtain, it is impossible to determine whether Callaway has standing to prevent any such discovery. Thus, Callaway's request with respect to potential employers should also be denied.

## IV. THE PROPOSED SUBPOENA TO POLAR AIR IS NEITHER IRRELEVANT NOR OVERBROAD.

In addition to the aforementioned defects, which undermine the appropriateness of Callaway's motion, it should be noted that the information sought by SkyWest is relevant. Mr. Callaway seeks to limit SkyWest from conducting discovery into issues that are central to its defenses against his allegations. In *Stewart v. Mitchell Transport,* 2002 U.S. Dist. LEXIS 12958, (D. Kan. 2002) (attached hereto as Exhibit "D"), a case relied on by Callaway, a defendant moved the court to quash a subpoena served on the defendant's employer on various grounds, including relevance. The Court cited the proposition, "A request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of a party." *Id.* at *14 (citations omitted). Accordingly, the court found that "the request for [defendant's] personnel file, job application, job description, and performance evaluations appeared relevant on its face." *Id.* at *15. Mr. Callaway seeks damages for lost wages he claims resulted from his termination at SkyWest. (Amended Compl. at 10). One of SkyWest's affirmative defenses is that Callaway has failed to mitigate his damages by failing to seek

[3] Callaway testified that he applied for a position with Polar Air, but was not offered a position (he claims it is in-part due to SkyWest's failure to respond to the falsified PRIA request).

subsequent employment. (Answer at 9).

### A. Callaway has a Duty to Mitigate Damages by Seeking New Employment.

Mr. Callaway has a continuing duty to mitigate his damages by seeking other employment. "Unquestionably, wrongfully discharged claimants have an obligation to use reasonable efforts to mitigate their damages." *E.E.O.C. v. Sandia Corp.*, 639 F.2d 600, 627 (10th Cir. 1980); *see also Dilley v. Supervalu, Inc.*, 296 F.3d 958, 966 (10th Cir. 2002) (holding/noting that any back pay award must be reduced by alternative sources of income that would reasonably have been available to plaintiff). As the Tenth Circuit has stated, "[a] plaintiff's ability to replace some of the income lost by virtue of the wrongful discharge certainly affects how much lost income he is due." *Dilley*, 296 F.3d at 967.

In order to successfully assert its affirmative defense, for example, SkyWest must establish "(1) that the damage suffered by plaintiff could have been avoided, i.e. that there were suitable positions available which plaintiff could have discovered and for which he was qualified; and (2) that plaintiff failed to use reasonable care and diligence in seeking such a position." *E.E.O.C.*, 639 F.2d at 627 (quoting *Sias v. City Demonstration Agency,* 588 F.2d 692, 696 (9th Cir. 1978). Thus, SkyWest must be allowed to find support for its affirmative defense. When SkyWest asked Callaway under oath about his efforts to find subsequent employment, Callaway claimed that he applied at Polar Air, and that Polar Air had sent SkyWest a PRIA request. The circumstances surrounding a PRIA request which was allegedly sent by Polar Air are directly relevant to Callaway's diligence in seeking a position at Polar Air. The Court should therefore rule that such discovery is relevant and should allow it.

### B. Callaway Claims Additional Damages for SkyWest's Failure to Respond to the Falsified PRIA Request.

Moreover, Callaway's falsified PRIA Request and subsequent letter by Ms. Cotter go directly to Callaway's truthfulness and credibility. Prior to invoking the Fifth Amendment in his deposition, Callaway admitted that he urged a friend to prepare and submit a false PRIA Request to SkyWest. (Callaway Dep. at 293-95) Callaway, through his attorney, thereafter threatened SkyWest for not producing information sought by the falsified request. In fact, in one letter, Mr. Strindberg stated: "[Callaway] did not go for training [at his new job] because SkyWest never responded to the PRIA request. Therefore he was never extended a job offer." (Exhibit "C").

Thus, Callaway is claiming increased damages as a result of SkyWest's alleged failure to respond to a PRIA request SkyWest claims it never received. SkyWest therefore needs the opportunity to conduct independent discovery from Polar Air including; 1) whether Callaway ever applied for a position with Polar Air, 2) the status of that application, 3) whether Polar Air ever sent SkyWest a PRIA request, and 4) whether training was scheduled for Callaway with Polar Air and whether he attended. Each of these issues is central to SkyWest's affirmative defense of mitigation of damages. They are additionally relevant where Callaway has alleged that he was unable to obtain employment with Polar Air because of SkyWest's alleged failure to respond. Accordingly, SkyWest should not be prevented from seeking such information.

### C. Callaway's Credibility is Directly at Issue In This Case.

Finally, the falsified PRIA request and accompanying threats places Callaway's honesty directly at issue. SkyWest believes that through the subpoena to Polar Air, it will obtain proof that Callaway has lied to create and/or enhance the damages he claims against SkyWest in this case. Furthermore, SkyWest believes that the discovery it intends to request from Polar Air will

provide proof that Callaway lied while under oath. It is settled law that the triers of fact do not have to accord any weight to a witness' testimony if they think he is lying. *See Lambert v. Blackwell*, 387 F.3d 210, 256 (3rd Cir. 2004). As many aspects of Callaway's case are supported only by his own testimony, proof of his dishonesty is central to SkyWest's defense.

At the very least, SkyWest needs the opportunity to review documents actually held by Polar Air to determine whether Callaway applied for a position, was extended a position, and/or failed to attend training required for the job. The documents will also allow SkyWest to know whether Callaway has testified truthfully. SkyWest's defense should not be limited to those documents produced by Callaway. As stated by the court in *Berniger,* "federal courts have been reluctant to limit pretrial discovery when there is a need to search for the truth of allegations." *Berniger,* 139 F.R.D. at 177. Here, there is a clear need to search for the truth of Callaway's allegations. Where it has the burden of proving its affirmative defense, SkyWest should not be limited to the questionable testimony and documents produced by Callaway. The documents sought by SkyWest are relevant and go to the heart of Mr. Callaway's damages or lack thereof. Accordingly, the Court should permit discovery of these documents and Callaway's motion should be denied.

### D. Mr. Callaway's Claim that SkyWest is Attempting to Sabotage his Attempts at Finding Subsequent Employment is Baseless.

Mr. Callaway's final argument suggests that SkyWest is trying to sabotage Callaway's attempts to find subsequent employment. (Memorandum In Support of Motion for Protective Order, p. 7). The argument is baseless. As stated in *Stewart,* a case relied on by plaintiff, "To establish good cause [for granting a protective order], that party must make 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'"

*Stewart*, 2002 U.S. Dist. LEXIS 12958 at *20 (*quoting Gulf Oil Co. v. Bernard,* 452 U.S. 89, 102 n. 16, 68 L. Ed.2d 693, 101 S.Ct. 2193 (1981). In *Stewart,* the court refused to grant a defendant's request for a protective order, seeking to protect information in his employment file, where the defendant "made nothing more than conclusory statements that Plaintiffs seek to annoy, harass, and embarrass him through [the] subpoenas." *Id.* Finding, that the "conclusory statements are insufficient to satisfy [movant's] Rule 26(c) burden." *Id.*

Here, Mr. Callaway has provided only unsupported conclusory statements. It is obviously in the interest of SkyWest that Callaway find subsequent employment as any subsequent employment will reduce SkyWest's potential exposure. *Dilley,* 296 F.2d at 966. The contradiction between the facts thus far discovered and Callaway's testimony suggests that Callaway may be seeking to arbitrarily increase his claim for damages against SkyWest. The protective order sought by Callaway would effectively prevent SkyWest from conducting any independent discovery into Callaway's mitigation efforts; information that is clearly relevant to Callaway's claimed damages. If the Court were to grant Callaway's motion, SkyWest would be forced to rely on self-serving, conclusory testimony and selective documents produced by Callaway. Rule 26 of the Federal Rules of Civil Procedure is not so limiting. Rather, it provides for broad discovery as it relates to claims and defenses. Accordingly, the motion for protective order should be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny Callaway's Motion for Protective Order and allow SkyWest to serve the subpoena on Polar Air, and to conduct any other discovery within the scope of Rule 26 of the Federal Rules of Civil Procedure.

DATED this 26th day of January 2005.

Scott M. Petersen
David N. Kelley
FABIAN & CLENDENIN,
a Professional Corporation
Attorneys for Defendant SkyWest Airlines

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing **MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER** to be hand delivered this 26th day of January, 2005, to the following:

Erik Strindberg, Esq.
Lauren I. Scholnick, Esq.
Strindberg & Scholnick, LLC
44 Exchange Place, 2nd Floor
Salt Lake City, UT 84111

Suzanne Judd