Erik Strindberg (Bar No. 4154)
Ralph E. Chamness (Bar No. 6511)
**STRINDBERG SCHOLNICK & CHAMNESS, LLC**
44 Exchange Place, 2nd Floor
Salt Lake City, UT 84111
Telephone: (801) 359-4169
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **DAVID ANDREW CALLAWAY**<br><br>Plaintiff,<br><br>vs.<br><br>**SKYWEST AIRLINES, INC.,**<br><br>Defendant. | **MEMORANDUM IN OPPOSITION TO MOTION TO VACATE PROTECTIVE ORDER**<br><br>Case No. 2:04CV00179<br><br>Judge Ted Stewart<br>Magistrate Judge Alba |

Plaintiff David Andrew Callaway ("Mr. Callaway"), by and through his undersigned counsel, hereby submits the following Memorandum in Opposition to the Motion to Vacate Protective Order filed by Defendant SkyWest Airlines, Inc. ("SkyWest"). As outlined below, there is no reason for this Court to modify the protective order it previously entered prohibiting Sky West from seeking information from Polar Air, any of its related entities, or any entity identified by Mr. Callaway as a potential employer, by way of subpoena or any other method of discovery allowed under the Federal Rules of Civil Procedure.

41

## ARGUMENT

### I. The Information Sought From Polar Air is Irrelevant and Redundant.

F.R.C.P. 26(b) limits discovery to information which is "relevant to the claim or defense." Here, Sky West is seeking to obtain information from Polar Air, a potential employer of Mr. Callaway. Sky West claims that it needs to obtain documents from, and depose Polar Air, to support its claim that Mr. Callaway has failed to mitigate his damages. However, Sky West ignores the relevant legal standard in making this argument.

#### A. Mr. Callaway has Provided Sufficient Evidence.

Mr. Callaway has already provided SkyWest with information about his application to and interview by Polar Air. Mr. Callaway has been deposed on three days. The first day, Mr. Callaway, on the advice of counsel, asserted his Fifth Amendment right and refused to answer Sky West's questions concerning a PRIA request. December 8, 2004 Deposition of David Andrew Callaway, pages 293-304, copies are attached as Exhibit "A." On the second day, Mr. Callaway answered questions concerning his attempts to find alternate employment, including his efforts to obtain additional training which he believed would make him a more attractive candidate for employment. December 9, 2004 Deposition of David Andrew Callaway, pages 328-335, 354-362, copies are attached as Exhibit "B." After the Court entered the Protective Order at issue

on February 11, 2005, Mr. Callaway waived his Fifth Amendment right and answered all of Sky West's questions about the PRIA request, his efforts to obtain employment and his relationship with Tiffany Cotter. February 14, 2005 Deposition of David Andrew Callaway, pages 410-423, 432-444, 446-482, copies are attached as Exhibit "C."

Prior to the third day of his deposition, Mr. Callaway provided Sky West with an email from Polar Air indicating that there was still no position for him. Mr. Callaway further provided Sky West with recordings of voice mail messages from Polar Air. Mr. Callaway simply has no further information concerning his attempts to obtain employment since Sky West terminated him.

In short, Mr. Callaway has provided every bit of information in his control to Sky West about his efforts to obtain alternate employment. Directly seeking information from Polar Air will merely serve to ensure that Mr. Callaway is not hired.

**B. The Information Sought is Unnecessary.**

While Sky West claims that it needs the discovery in order to find out "why Callaway has not been hired by Polar Air," that question is irrelevant to the issue of whether or not Sky West can prove its affirmative defense of failure to mitigate. The mitigation defense is not based on whether or not Mr. Callaway *actually* found a job, but whether Mr. Callaway has made reasonable efforts to find a job. Mr. Callaway has presented an abundance of evidence that he has made, and is continuing to make,

reasonable efforts to obtain alternative employment. Further, once Mr. Callaway has demonstrated evidence of his reasonable attempts to find alternate employment, Sky West has the burden of demonstrating that there were alternate open positions which Mr. Callaway unreasonably failed to find. Polar Air will have nothing to say which will impact *either* of these inquiries.

Mr. Callaway has clearly presented sufficient evidence to meet the burden imposed by the Tenth Circuit in order to seek to recover his lost wages. The Tenth Circuit has held that, "[a] claimant need only make a reasonable and good faith effort [to mitigate] and is not held to the highest standards of diligence." *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1158 (10th Cir. 1990). Once Mr. Callaway has presented evidence that he has engaged in such a good faith effort, Sky West must show:

> "(1) that the damage suffered by plaintiff could have been avoided, i.e. that there were suitable positions available which plaintiff could have discovered and for which he was qualified; and (2) that plaintiff failed to use reasonable care and diligence in seeking such a position."

*Equal Employment Opportunity Commission v. Sandia Corporation*, 639 F.2d 600, 627 (10th Cir. 1980) *quoting Sias v. City Demonstration Agency*, 588 F.2d 692, 696 (9th Cir. 1978).

Indeed, it is because Mr. Callaway wants to obtain employment that he has objected to Sky West's attempts to contact Polar Air and/or any other potential employer. As discussed at oral argument on Mr. Callaway's Motion for Protective Order, the law,

and common sense, recognize the harm that will occur if Polar Air is subjected to a deposition by Sky West probing the reasons why it has not yet hired Mr. Callaway. Any such discovery will all but guarantee that Mr. Callaway is not hired. Mr. Callaway has attempted to find work (and, therefore, has engaged in mitigation) and has, of now, still not found work (and, therefore, his damages are not diminished). Indeed, under Sky West's theory, it would be entitled to subpoena *every* potential employer Mr. Callaway has identified to probe why Mr. Callaway did nto obtain a job. Clearly, such an inquiry is beyond what is necessary to assert its failure to mitigate defense. Because any additional information that Polar Air may have is unnecessary and would not lead to the discovery of additional relevant information, the Court should refuse to modify its prior Order.

## II. Mr. Callaway did not Interfere With Sky West's Attempts to Depose Ms. Cotter.

Sky West claims that the Court should allow it to contact Polar Air because Mr. Callaway allegedly "interfered" with its efforts to subpoena Tiffany Cotter. The mere fact that Sky West has been unable to serve Ms. Cotter does not mean that it should be able to subpoena Polar Air. Simply put, Polar Air is wrong.

First, contrary to Sky West's assertion that Mr. Callaway interfered with its attempts to subpoena Ms. Cotter by emailing Ms. Cotter in January 2005, Mr. Callaway actually emailed Ms. Cotter concerning the potential that she might be subpoenaed shortly after his deposition on December 9, 2004. It was at the December 9, 2004 deposition that

Mr. Callaway learned for the first time that Sky West had issued a subpoena to Polar Air and claimed that the subpoena had already been served.[1]

During the December 9, 2004 deposition, Mr. Callaway testified that he did not know Ms. Cotter's telephone number, her address, or who she currently works for. Exhibit "B," page 341-344. Shortly after his deposition, Mr. Callaway emailed Ms. Cotter and told her that Sky West may attempt to contact her. He said, "I believe in the e-mail, I said if you do not wish to be served, you don't have to answer your door." *See* Exhibit "C," page 415. Ms. Cotter did not respond to the email. *Id.* page 416. He further testified that he did not "know what the process does" and that "I'm sure they could, you know, figure a way to serve her." *Id.* 416-417. While Mr. Callaway saw Ms. Cotter in January 2005, he did not speak to her about the subpoena and only "said hello in passing." *Id.* Further, since September 2004, Mr. Callaway and Ms. Cotter have not spoken in depth and their friendship is over. *Id.* 434, 472-474; Exhibit "B," pages 341-344.

Neither Mr. Callaway, nor his counsel, have in any way misled the Court about Sky West's ability to contact, or subpoena Ms. Cotter. If Mr. Callaway had any

[1]Mr. Callaway immediately moved the quash the subpoena. The Court denied Mr. Callaway's motion but allowed Mr. Callaway to move for the Protective Order at issue. The history of Sky West's initial attempts to subpoena Polar Air are outlined in Mr. Callaway's Memorandum in Support of Motion to Quash. Docket No. 18.

knowledge about how to contact Ms. Cotter, he would have answered Sky West's questions. However, he cannot provide information which he does not have.

## CONCLUSION

Because the requested information from Polar Air is irrelevant to any issue presented in this litigation, the Court should refuse to modify it prior order prohibiting SkyWest from seeking any information from Polar Air, or any entity related to Polar Air.

DATED this 8th day of April, 2005.

**STRINDBERG SCHOLNICK & CHAMNESS, LLC**

Erik Strindberg
Ralph E. Chamness
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing **MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER** was mailed, first class postage prepaid this 8th day of April, 2005 to:

Scott M. Petersen
David N. Kelley
FABIAN & CLENDENIN
215 South State Street, 12th Floor
Salt Lake City, Utah 84111
Facsimile: 596-2814

Todd C. Emerson
SKYWEST AIRLINES,
444 South River Road
St. George, Utah 84790

U:\current clients\Callaway_DA\Memo_Opp_Vacate.wpd

Exhibits/
Attachments
to this document
have **not** been
scanned.

Please see the
case file.