Erik Strindberg (4154)
Lauren Scholnick (7776)
Ralph E. Chamness (6511)
STRINDBERG, SCHOLNICK & CHAMNESS, LLC
44 Exchange Pl., 2nd Floor
Salt Lake City, UT 84111
Tel. (801) 359-4169

Attorneys for Plaintiff

FILED
U.S. DISTRICT COURT
2005 MAY 24 A 10: 33
DISTRICT OF UTAH
BY: ________
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ANDREW DAVID CALLAWAY,<br><br>Plaintiff,<br><br>vs.<br><br>SKYWEST AIRLINES, INC., a Utah corporation,<br><br>Defendant. | PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCOVERY AND FOR ATTORNEY'S FEES AND COSTS<br><br>Civ. No. 2:04CV00179<br>JUDGE TED STEWART<br>MAGISTRATE JUDGE SAMUEL ALBA |

Pursuant to Fed. R. Civ. P. Rule 37(a) and (d), Plaintiff Andrew David Callaway ("Callaway") moves this Court to compel Defendant Skywest Airlines, Inc. ("Skywest") to respond fully to Callaway's Second Set of discovery requests and to order Skywest to pay Callaway's reasonable attorneys' fees and costs incurred in bringing this Motion.

**INTRODUCTION**

Callaway, formerly a Captain for Skywest, was wrongfully terminated for engaging in protected Union organizing activities. Callaway also seeks redress for Skywest's unauthorized access of its in-house pilots' association ("SAPA") website. Callaway took an active part in organizing efforts to try to form a Union to represent Skywest's pilots, and he contributed to SAPA's website. Two members of Skywest's management, Brad Holt and Jim Breeze, chastised

Callaway for his union organizing activities and they directed him to stop. Skywest then tried to discredit Callaway by creating performance and misconduct issues against him. Ultimately, Callaway was terminated when a flight attendant, Kirsten Wiley, complained that Callaway was trying to collect money from her through a Small Claims action, although the debt collection was legitimate. Callaway was among other pilots who were harassed and terminated for their Union organizing efforts within the same time frame.

The parties' counsel communicated (both orally and in writing) about Callaway's concerns regarding Skywest's responses.[1] Although they were able to resolve some of the discovery issues, there are still several requests outstanding for which a substantive response was withheld pending Skywest's objection. Callaway therefore seeks this Court's intervention to obtain complete responses.

## ARGUMENT

Callaway's discovery requests try to draw out facts and evidence to support his claims and challenge Skywest's defenses.[2] Pursuant to Rule 26(b)(1), "Parties may obtain discovery regarding *any matter, not privileged, that is relevant to the claim or defense of any party*. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. Rule 26(b)(1)(emphasis added). Skywest's responses contain very little by way of substantive information and they largely consist of objections of relevancy, overbreadth, burden, vagueness,

[1] *See* DUCivR 37-1 Statement of even date herewith; *see also,* Letters between counsel, dated 2/23/05 and 3/7/05, respectively; the letters are attached here as Exs. "A" and "B."

[2] *See*, Plaintiff's Second Set of discovery, a true and correct copy of which is attached here as Ex. "C."

and ambiguity.[3] Skywest made no objections of privilege, work product, or confidentiality regarding protected information; nor did it seek a Rule 26(c) protective order before its response period expired.

*Interrogatories No. 1 & 2; Document Request No. 2:* These discovery requests specifically ask Skywest to identify complaints made about Jim Breeze. Though some queries utilizing the phrase "pertains to" may be considered indefinite, vague, ambiguous or overbroad, when the request identifies a category of items with reasonable precision, the omnibus phrase survives facial objections. *See*, Sonnino v. Univ. of Kan. Hosp. Auth'y., 221 F.R.D. 661, 667-68 (D. Kan., 2004). "Interrogatories need not be phrased with technical precision, but they should give a reasonably clear indication of the information sought, in order to escape the 'vague and ambiguous' charge." *See e.g.,* Wells Fargo v. Young, Civ. No. 04-286 (D. N.M. Nov. 8, 2004).[4] In responding to Callaway's discovery responses, Skywest "should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in interrogatories . . . . 'If necessary to clarify its answers, [Skywest] may include any reasonable definition of the term or phrase at issue.'" *Id.* Its objections based upon the meaning of the term "complaint," and the phrase "pertains to, or which is about," should be overruled.

Relevance is the basis for many of Skywest's objections. Rule 26(b)(1) provides that an inquiry is relevant so long as it appears "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "Relevancy is broadly construed, and a request

---

[3] *See*, Skywest's Resps. to Pl.'s Second Set of Ints. and Reqs. for Prod. of Docs., a true and correct copy of which is attached here as Ex. "D."

[4] Pursuant to DUCivR 7-2(a), copies of unpublished opinions are attached here at Appendix 1.

for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." *See*, Cory v. Aztec Steel Bldg., Inc., 225 F.R.D. 667, 670 (D. Kan 2005). Therefore, Skywest's relevancy objections must be considered within the framework of Rule 26, which is to be broadly construed.

Jim Breeze is Skywest's Chief Pilot and a key management employee who perpetuated much of Skywest's improper conduct towards Callaway. The information is requested to determine whether Breeze acted similarly towards other Skywest employees and if so, to determine the basis and motivation for such behavior. Skywest maintains that since its employees are at-will, Breeze would not need a reason to fire them. Even if there were needed a reason to fire an employee, Skywest incorrectly maintains that the inquiry would not advance the issue of whether Callaway was terminated for engaging in protected union activity.

The information about Jim Breeze is relevant in several respects. Notably, the standard at this juncture is not admissibility; rather, the key is whether there is "any possibility" that the information sought may be relevant. Cory v. Aztec Steel Bldg., Inc., 225 F.R.D. 667, 670 (D. Kan. 2005). Although information regarding Breeze's conduct towards other employees may be inadmissible at trial, it could very well lead to evidence which is "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," or for the purpose of challenging "a witness' credibility on cross-examination." *See*, F.R.E. Rule 404(b); *see also*, Outley v. City of New York, 837 F.2d 587, 593-94 (2d Cir. 1988). Further, in the context of cases relating to termination of employment where there are questions of motive or intent, as here,

> prior acts of discrimination or retaliation are relevant to establish motive and

> intent. The proponent of such evidence may use it to show that, since a person accused of discrimination or retaliation acted with discriminatory or retaliatory animus on an earlier occasion, it is more likely than not that he acted with the same animus when he committed the act claimed by the plaintiff to be discriminatory or retaliatory.

Willingham v. Ashcroft, 2005 U.S. Dist. LEXIS 922, at *10 (D.D.C. 2005); *see also,* Allen v. Perry, 279 F. Supp. 2d 36, 46 (D.D.C. 2003). If Breeze engaged in unfair or discriminatory conduct towards other employees resulting in complaints against him, then those complaints are relevant to Callaway's claims that Breeze's conduct towards him was improperly motivated.

It is inappropriate for Skywest to "specify the filter for its duty" to respond to discovery requests. *See e.g.,* Canopy Corp. v. Symantec Corp. Civ. No. 2:04cv629 (D. Utah March 9, 2004). Callaway's objections unilaterally filter what queries add probative value to Callaway's claims or to Skywest's defenses. If Mr. Breeze is coming down on other employees once they have done something to gain his attention, particularly if it pertains to an employee's protected activities or rights within the workplace, then the inquiry is relevant to this case.

Skywest bears the burden to show that its facial objections are valid. "Bare assertions that the discovery requested is overly broad, unduly burdensome, oppressive or irrelevant are ordinarily insufficient . . . to bar production." Continental Ill. Nat'l Bank & Trust v. Caton, 136 F.R.D. 682, 684 (D. Kan. 1991). Although Skywest is not "required to make heroic exertions to divine the intent of an opaque, ambiguous, or clumsily worded discovery request . . . the spirit of the Civil Rules requires that a party be responsive, complete, and forthcoming in its answer." Steir v. Girl Scouts of the USA, et al., 383 F.3d 7, 14 (1st Cir. 2004).

*Interrogatory No. 3; Document Request Nos. 1 & 3*: Interrogatory No. 3 and Document Request Nos. 1 and 3 ask for information about any "formal or informal disciplinary action"

against any Skywest pilot since 1999. The phrase "formal or informal disciplinary action" is followed by an exemplary series of different types of discipline. Skywest objects, calling the requests overly burdensome and overbroad in time, scope and application because Skywest employed "literally thousands of pilots since 1999." However, the inquiry is limited to those pilots who were actually disciplined during the period when Union organization of Skywest's pilots was underway. In its objection, Skywest gave no details of time, money and procedure necessary to respond; and, it ignored Callaway's offer to review the files on site.

Callaway provided specific examples of disciplinary actions to guide Skywest in its response. Skywest's general facial objections to the phrase "formal or informal disciplinary action" shirks its obligation to attribute ordinary and plain meanings to the request. *See*, Cory, 225 F.R.D. at 671. Skywest justified its objection by stating that it does not keep records of each incident when a pilot is counseled by a superior; therefore, Skywest maintains that it cannot respond. Skywest failed to make even a cursory attempt to comply with the spirit of discovery rules requiring a party's response to the fullest extent possible.

Interrogatory No. 3 and Document Request Nos. 1 and 3 are unquestionably relevant. The information sought may lead to admissible evidence of a pattern or practice by Skywest to treat pilots engaging in protected Union organizing activities less favorably than those pilots who did not.[5] "Because an employer will rarely admit retaliatory motives in firing an employee, retaliatory discharge cases generally must be proven by circumstantial rather than by direct

---

[5] "[I]n the context of employee discharge cases requiring proof of discriminatory intent, the testimony of other employees about their treatment by the defendant employer is relevant to the issue of the employer's discriminatory intent if the testimony establishes a pattern of retaliatory behavior or tends to discredit the employer's assertion of legitimate motives." Coletti v. Cudd Pressure Control, 165 F.3d 767, 777 (10th Cir. 1999).

evidence." Coletti v. Cudd Pressure Control, 165 F.3d 767,777 (10th Cir,. 1999). The information is also relevant to Skywest's motivation, intent and knowledge with respect to punitive damages.

Skywest refuses to provide information to Callaway absent "a readily definable universe of 'union organizers' versus those who are not" and, absent proof that "Callaway is undisputedly a member of the 'union organizers.'"[6] Skywest asserts that statistical comparisons which Callaway may make "will by necessity lack both validity and reliability," both of which factors govern evidentiary admissibility and weight - they do not govern relevancy in discovery. It is inappropriate for Skywest to impose its limited view of what is probative under what should otherwise be a broad definition of relevancy in the context of discovery. Further, Callaway alleged that he was not the only pilot who was harassed and terminated for union organizing efforts. Callaway is entitled to obtain information supporting his claims and not be subjected to Skywest's self-interested beliefs as to who meets its definition of a "union organizer."

At the outset of discovery, Callaway reviewed a limited number of Skywest employee files on an "attorney eyes only" basis. Now, Skywest claims that Callaway's follow-up requests are cumulative since Callaway had prior access to the files. Actual hard copies of the documents were never provided and now many of the documents identified in those files for physical production are detailed in Skywest's objections.[7] Thus, for Skywest to object to the document requests as cumulative because it had previously produced a few files on an "attorney eyes only" basis, and then simultaneously to object to production of actual hard copies of specific

---

[6] *See*, Ex. "B."

[7] *See* Ex. "B," at its attached spreadsheet.

documents previously reviewed and requested, is disingenuous.

_*Interrogatory No. 4; Document Request No. 4*_: These discovery requests seek information about litigation or administrative actions brought against Skywest by employees during the relevant period. Skywest objected on the basis of relevancy. Subsequently, Skywest objected that the requests were too broad because they sought information about claims brought by non-pilot employees.[8] Skywest further indicated the requests were over burdensome because Skywest recently consolidated its legal work and no centralized location existed to keep such claims. Consequently, Skywest claims that it is unsure if it can adequately produce the requested information. Again, Skywest gives no indication of the efforts required to comply with Callaway's request nor is it indicated that Skywest made any attempt to locate and produce responsive information. Neither Skywest's overbreadth nor burden objections were raised in its actual verified responses to the discovery and the objections are waived.

Identification of actions brought against Skywest by its employees is reasonably calculated to lead to admissible evidence regarding managerial behavior within the workplace. Skywest's duties and practices with respect to its employees' legally protected rights are at issue here. "[P]rior acts 'may constitute relevant and probative background evidence'" *See e.g.*, Malarkey v. Texaco, Inc., 559 F. Supp. 117, 121 (S.D.N.Y. 1982). Employee actions against Skywest may very well involve information about Skywest's employment practices as a matter of policy or as applied to particular individuals. That information "'is relevant, . . . and may be used . . . to illuminate current practices which, viewed in isolation, may not indicate discriminatory motives.'" Malarkey, 559 F. Supp at 121 (citations omitted). The requests are relevant to the

[8] *See*, Ex. "B."

present action where Callaway alleges that he was improperly disciplined and terminated for engaging in federally protected activities within the context of his employment.

*Interrogatory No. 5:* Callaway alleges specific facts regarding certain postings, or messages, he listed on SAPA's website as to which Skywest acquired unauthorized access. His request for information about the internet postings which lead to his being called by management to Skywest's St. George offices and his subsequent discipline directly bears upon his claims and Skywest's defenses. Skywest has objected on four grounds: lack of possession, custody or control of the information; availability from other sources; facial deficiencies of vagueness, ambiguity and unintelligibility; and, relevance.

If the requested information is not within Skywest's possession, Skywest still has the duty to provide the information if it has the practical ability to obtain it from another source. *Id.* "Production of documents not in a party's possession is required if a party has the practical ability to obtain the documents from another, irrespective of legal entitlement to the documents." National Union Fire Ins. Co. V. Midland Bancorp, 159 F.R.D. 562, 566 (D. Kan. 1994); *see also,* RTC v. Deloitte & Touche, 145 F.R.D. 108, 110 (D. Colo. 1992). Information posted on Skywest's company website is within its practical ability to obtain.

The request is relevant to Callaway's claim that Skywest gained unauthorized access to SAPA's website, then tried to cover up that access and justify its conduct towards Callaway by claiming that articles posted by Callaway were in fact posted on Skywest's company website. Skywest's conduct with respect to SAPA's and its own websites vis-à-vis Callaway's postings is at issue and is pertinent to Callaway's claims and Skywest's defenses.

*Interrogatory Nos. 9-11:* Interrogatory Nos. 9 through 11 ask for information supporting

Skywest's responses to Callaway's Requests for Admission. If Skywest denied a Request or otherwise qualified an admission, then Callaway reasonably seeks the information upon which Skywest relied in responding. Further, it does not appear that Skywest tried to use common sense and reason to discern the term "unqualified yes" as it related to its responses to Requests for Admission, and the objection should be overruled.

Skywest responded to Interrogatory No. 9 by reference to Kevin Hyatt's deposition and a statement that "there are circumstances in which a pilot's disciplinary action may be changed, amended or deleted." However, Skywest did not delineate those circumstances. Also, Mr. Hyatt's deposition was not obtained under Rule 30(b)(6). Technically, the information obtained therein may not be characterized as a corporate response, and the response is inadequate. *Cf.*, Fed. R. Civ. P. Rule 30(a) and 30(b)(6).

Interrogatory No. 11 refers to Ms. Wiley's allegations of Callaway's conduct towards her in his efforts to collect the debt she owed him. Skywest responded by reference to "several people within the appropriate Skywest departments on a 'needs to know' basis were made aware of and/or discussed Ms. Wiley's allegations regarding Mr. Callaway." (*See*, Ex. "D" at 6.) However, Skywest did not identify the "appropriate Skywest departments," nor did it identify the people who were on a "needs to know basis" within those departments. Further, Skywest responded by reference to depositions of persons not subject to Rule 30(b)(6) as corporate representatives of Skywest designated to speak for it.[9] As such, Skywest's answer to Interrogatory No. 11 is inadequate. *See also*, Fed. R. Civ. P., Rule 30(b)(6).

---

[9] Skywest's answer by reference to other depositions, without further specificity, is inadequate. A party may not simply refer to other pleadings or discovery "hoping that [Callaway] will be able to glean the information from them." *See* Directv v. Puccinelli, 224 F.R.D. 677, 680-81 (D. Kan. 2004).

*Document Request No. 5:* This request seeks records from Chief Pilots' meetings about discussions, decisions, plans, and other matters relevant to Skywest's conduct towards Callaway - particularly if those matters arose in the context of a Chief Pilot meeting. Skywest failed to state what (if any) efforts it made to contact attendees of those meetings to obtain their records. Skywest should be required to verify the efforts it made and to certify that no records exist; similarly, if the records were destroyed, a statement pertaining to the destruction of the records should be provided by Skywest to avert questions of spoliation. *See*, Hansel v. Shell Oil Corp, 169 F.R.D. 303 (E.D. Pa. 1996); *see also*,, Cook Assocs., Inc. v. PCS Sales (USA), Inc., 271 F. Supp. 2d 1343, 1356-57 (D. Utah 2003).

*Document Request No. 6:* Callaway requested documents pertaining to Kristen Wiley's leave request in the Summer 2003. Ms. Wiley allegedly complained to Skywest that Callaway was trying to collect a debt from her through a small claims action and that she was so upset, she had to take leave. In response, Skywest terminated Callaway. The information concerning Ms. Wiley's requested leave is relevant to her complaint and Skywest's subsequent reaction. It is also relevant to establishing Ms. Wiley's credibility for purposes of cross-examination and to discovering admissible rebuttal evidence. In considering the HIPAA objection, this Court should balance Callaway's need for the discovery against the potential harm arising from disclosure. The documents may, of course, be reviewed with certain protections in place, none of which have been requested by Skywest. Its blanket HIPAA objection does not absolve Skywest of its obligation to produce the documents; it only effects the circumstances of production.

*Document Request No. 8:* Although Skywest indicated that it has produced all responsive documents, in its subsequent correspondence of March 7, 2005 regarding the parties' discovery

Skywest acknowledged that Document Request No. 8 sought copies of Callaway's "check ride" or probationary reports. Those documents were not included in its previous document production, yet Skywest maintains that all responsive documents were produced. Skywest should be required to verify the efforts to which it went to locate the specific documents sought by the request; and if indeed none exist, to verify that fact. Further, if such documents existed in the past, but have since been destroyed or lost, then Skywest should be required to attest to the circumstances of the destruction or loss so as to avert the question of spoliation. *See e.g.*, Cook Assocs., Inc., 271 F. Supp. At 1357-58.

**REQUEST FOR FEES AND COSTS PURSUANT TO F.R.C.P. 37(a)**

This Court has discretion to award sanctions against Skywest for its failure to comply with discovery under the Federal discovery rules. Coletti v. Cudd Pressure Control, 165 F.3d 767, 777 (10th Cir. 1999). Callaway has incurred additional attorney's fees and costs herein to procure discovery responses. Arguably, Skywest exerted little or no effort to respond to Callaway's requests to the fullest extent possible. As a result, Callaway was left with no option but to file this Motion. Thus, if this Court grants Callaway's Motion, then it is appropriate to further award him his reasonable fees and costs pursuant to Rule 37.

**CONCLUSION**

Callaway propounded discovery requests which were reasonably calculated to lead to the discovery of admissible evidence; the information sought is relevant both to Callaway's claims and to Skywest's defenses. Prior to making its objections, Skywest made little effort to identify, obtain and provide the information requested. Instead, Skywest primarily relied upon general facial objections without making the effort required to respond to the fullest extent possible.

Skywest failed to attribute plain and ordinary meanings to phrases contained within the requests, nor did it incorporate its own interpretations in making a response. Skywest made no effort to establish the time, effort and expense required to respond to what it has characterized as overbroad or over burdensome requests. Further, Skywest has attempted to filter relevant information by unilaterally deciding what is probative of Callaway's claims and what is not.

Callaway therefore respectfully requests that this Court compel Skywest to respond in sufficient detail to his discovery requests. He also requests an award of his reasonable attorney's fees and costs which would not have been incurred but for Skywest's failure to adequately respond to discovery.

DATED this 23rd day of May, 2005.

STRINDBERG, SCHOLNICK & CHAMNESS

By: ______________________________
Ralph E. Chamness
Attorneys for Plaintiff