**EXHIBIT A**

STRINDBERG SCHOLNICK & CHAMNESS, LLC
*Attorneys at Law*

February 23, 2005

*Via Fax and U.S. Mail*

Scott Petersen
Fabian & Clendenin
215 S. State, 12th Floor
Salt Lake City, Utah 84111

Re: *Callaway v. SkyWest Airlines, Inc.*

Dear Scott:

Thank you for taking the time yesterday to 'consult and confer' regarding several discovery issues. Since we covered a number of issues, I thought it might be appropriate to summarize our conversation. I've broken it down by topics.

**Polar Air**

You indicated that you still felt the need to serve Polar Air with a subpoena to determine if Mr. Callaway has in fact made a good faith attempt to mitigate his losses. I explained my understanding of what occurred vis-a-vis Polar and restated our position: that subpoenaing information from Polar would effectively scuttle Mr. Callaway's attempt to obtain employment there. Further, I believe the information we have, and will, provide is enough to show that Mr. Callaway did in fact apply and was offered a position at Polar. Ralph Chamness joined us during our discussion of Polar Air to address your contention that we had promised to get information from Polar Air directly. It is Mr. Chamness' recollection that while he made such an offer, it was in the context of trying to resolve the issue after the first hearing. He did not argue or tell the Court that we would do so, and our obtaining information directly from Polar was not part of the Court's Order. I will obtain and send to you copies of the latest correspondence Mr. Callaway has had with Polar.

**Tiffany Cotter**

We also discussed whether you were going to depose Tiffany Cotter. You indicated that you felt you might have to depose her to satisfy the 'requirements' in Judge Alba's Order. As I told you, I have no opinion on that issue (i.e., whether her deposition is required by the Order) but in any event I could not stipulate that her deposition is unnecessary.

44 EXCHANGE PLACE · SALT LAKE CITY, UT 84111 · PHONE: (801) 359-4169 · FAX: (801) 359-4313 · www.utahworklaw.com

**Scheduling**

Deposing Ms. Cotter (as well as my deposition of Kristen Wiley) led into a discussion of scheduling. We agreed that we would allow discovery to continue at least until March 15. However, we also decided that you would call the Court and see what place setting we have for our trial. If it is not a first place setting, we will discuss a possible modification of the scheduling order. I also suggested that the parties might want to stipulate to having a magistrate judge hear the case as this might allow us to get a new trial date (if that is necessary) more expeditiously. It is my understanding that you will call me today after you talk with the court.

**Written Discovery**

We talked at some length about your objections to our interrogatories and requests for production of documents. While I don't know if we reached any firm resolutions, let me summarize where we are.

Interrogatories 1 and 2 and Request No.2 - I discussed what we know about the complaints regarding Mr. Breeze and our belief that Ms. Jasmine is either informally or formally looking into them. You said you would check to see what is happening in this regard.

Interrogatory No. 3 and Request no. 1 - I explained why we feel that information about discipline is relevant. I believe you understood my position and indicated that you were going to think about it and to do some investigation. You stated that one resolution you might propose is to make pilot files available for us to inspect. You indicated that you were going to rethink your position and perhaps also talk with Todd.

Interrogatory No. 4 and Request no. 4 - Again I explained our position and you explained yours. You stated that you would talk with Todd to determine or to get a feel for the number and types of actions that have been brought by pilots in the last five or so years and we would then re-discuss the issue.

Interrogatories No 7 & 8 and Request No. 9 - you were going to find out what happened to Mr. Carey Breeze and we could then discuss whether we wanted any additional information.

Request no. 5 - you stated that SkyWest didn't have any minutes or notes but that you would check.

Request no. 8 - I told you that we did not receive any probationary reports pertaining to Mr. Callaway or any sort of check ride forms. You indicated yo would look to see if there was any additional personnel type documents pertaining to Mr. Callaway.

**Tabbed Documents**

I reiterated why we believe that documents pertaining to discipline are relevant. You explained your position and we left it with you stating that you are still not sure if you would copy

the documents we tabbed and produce them.

If I've misstated any thing please let me know. I will await your call re: scheduling.

Sincerely,

**STRINDBERG SCHOLNICK & CHAMNESS, LLC**

Erik Strindberg

cc: Callaway, REC

U:\current clients\Callaway_DA\Correspondence\peterson_confer.wpd

**EXHIBIT B**

Fabian & Clendenin
A Professional Corporation
F&C

Attorneys at Law
215 South State, Twelfth Floor
Salt Lake City, UT 84111
Telephone: (801) 531-8900

P.O. Box 510210
Salt Lake City, UT 84151-0210

**Scott M. Petersen**
Direct Dial: (801) 323-2233
Facsimile: (801) 596-2814
spetersen@fabianlaw.com

March 7, 2005

Erik Strindberg, Esq.
STRINDBERG SCHOLNICK & CHAMNESS
44 Exchange Place
Salt Lake City, Utah 84111

This is a
**CONFIRMATION COPY**
of a Document
Sent by Facsimile

Re: *Callaway v. Skywest Airlines, Inc.*

Dear Erik:

This letter serves to respond to all the outstanding discovery issues your client has raised over the past weeks. I appreciate our telephone calls as well as your February 23, 2005 letter.

**Polar Air Information**

As we discussed, SkyWest will be filing a motion to vacate the protective order to allow SkyWest to obtain information from Polar Air related to Callaway's employment opportunities with Polar Air. Specifically, SkyWest needs to understand the details surrounding Callaway's training offer and why Polar Air has not provided Callaway with a subsequent training opportunity. As I indicated, when an airline offers a pilot training, it is generally because they have been offered employment contingent upon successful completion of training and other administrative requirements. In his deposition, Callaway testified that he believed he has not been given any subsequent training because (1) SkyWest failed to respond to a PRIA request SkyWest contends it never received or (2) SkyWest called Polar Air by telephone as follow up to the PRIA request SkyWest did receive that, it turns out, was not from Polar Air but rather made up by Mr. Callaway. Moreover, Callaway testified that he told Polar Air that he could not attend the first training session that was offered to him because he was in the middle of 737 training with another company. It is SkyWest's position that had Callaway terminated his 737 training and attended the Polar Air training, he would very likely be working for Polar Air today.

In summary, Callaway clearly blames SkyWest for his failure to obtain subsequent employment from Polar Air. SkyWest denies that it did anything to hinder Callaway from obtaining another job, and in fact, it appears to be Callaway's rejection of the training opportunity that terminated Polar Air's interest in hiring him. Regardless, these divergent

positions can only be resolved by figuring out why Polar Air has yet to hire Callaway. The only way to answer this question is to ask Polar Air, and that is why the additional discovery with Polar Air is necessary. It is noteworthy that in his latest deposition, Callaway indicated he believed Polar Air was giving him the "run around," suggesting that he does not believe his chances of employment with them are very good at this point.

**Tiffany Cotter Deposition**

We are still attempting to serve Tiffany Cotter with a subpoena. Nonetheless, we do not believe it is a requirement that we depose her prior to moving the court to vacate the protective order. Our position is based on two grounds. First, from Callaway's latest deposition testimony, it looks like Ms. Cotter had no communications with Polar Air and very little to do with the false PRIA request that Callaway sent to SkyWest. Second, it is also clear from Callaway's deposition and Ms. Cotter's current behavior that she is avoiding service. We are confident that Magistrate Alba will not require her deposition as a condition precedent to obtaining information from Polar Air when our inability to subpoena her is due to the "heads up" e-mail that Callaway sent her in the first instance.

**Scheduling/Trial**

We have agreed to move the discovery cutoff date from February 28, 2005 to March 15, 2005. Are you going to prepare a stipulation and order for that? Let me know. As for the new trial date, it was my understanding from our conference call with Judge Stewart's scheduling clerk that the Court would give us a "good" second place setting for the first week in August. You indicated that you needed to confirm the change with your client. I have not heard anything from you on the new trial date and I have received no notice that the trial date change was actually made by the Court. Please confirm as soon as possible that August 1-5 are available for Callaway so we can confirm the change with the Court. Our agreement to move the discovery date was contingent upon getting a more realistic trial date, and we need to ensure that the dates proposed by the Court are still available.

**Callaway's <u>Second</u> Set of Discovery**

We have considered your arguments concerning our objections to specific discovery requests from Callaway's second set of discovery requests. SkyWest's responses follow, addressing the discovery requests you specifically identified.

**1. Interrogatory Nos. 1 & 2; Request No. 2**

Based on our telephone discussions, these requests seek information and documents surrounding formal/informal, oral/written complaints about Jim Breeze as well as an alleged investigation into Mr. Breeze by a Ms. Jasmine. I have inquired further into these areas. First, as SkyWest indicated in its discovery responses, SkyWest (including Ms. Jasmine) is not performing any investigation into Mr. Breeze. Second, your client's request for "all complaints

that have been made by anyone at SkyWest which either pertains to, or which is about, Jim Breeze" is overbroad and irrelevant.

As you know, SkyWest employs thousands of people in several parts of the country. SkyWest does not keep a record of each time someone complains about something Mr. Breeze says or does. More importantly, complaints about Mr. Breeze are irrelevant to the parties' claims and defenses. You indicated on the telephone that Callaway's theory regarding Mr. Breeze is that once an employee is "on his radar screen," he is "out to get them" and will do what he can to get rid of them. Assuming that I understand Callaway's theory, complaints about Mr. Breeze add no probative value to that theory. Employees at SkyWest are at-will. Thus, if Mr. Breeze wanted to terminate them, he would not need to find a reason to fire them. And even if he did need a reason to do so, that does not advance the issue of whether Callaway was terminated on the basis of any union activity. The request for Jim Breeze complaints appears to be nothing more than a request for irrelevant information that Callaway would like to use to embarrass or harass Mr. Breeze. Consequently, SkyWest's objections are appropriate.

**2. Interrogatory No. 3; Request No. 1**

These two discovery requests seek information on disciplinary actions against all pilots from 1999 to the present. After discussing this issue at length with Todd Emerson, SkyWest is not willing to produce the information for the reasons set forth in its discovery responses.

First, the information is irrelevant to the parties' claims and defenses. You indicated that Callaway is claiming he was terminated as part of a larger corporate "pattern and practice." There is no evidence of any pattern and practice to terminate pilots, let alone, pilots that are engaged in union activity. Rule 26 does not allow for out-of-season fishing expeditions as lawsuits are meant to redress claims not find them. Moreover, even if Callaway could legitimately argue that he had some evidence of a larger pattern and practice, he must still provide some relevant basis upon which to argue that he is somehow connected to that larger pattern and practice. The evidence surrounding his termination contemplates no such design.

You indicated that Callaway's "pattern and practice" theory involved less favorable treatment of "union organizers" as opposed to those who are not "union organizers." SkyWest has no idea who Callaway even claims to be "union organizers," whether he is referring to a particular union drive, multiple drives, a range of time, or how it is that Callaway characterizes one pilot as a "union organizer" and another not. For example, when you and I discussed this issue on the telephone, I told you that SkyWest did not believe that Callaway fit any definition of a "union organizer." You indicated that Callaway was such an organizer. This divergence of positions simply highlights why reviewing all of SkyWest's pilot employee files for signs of discipline will not advance Callaway's claims. Unless there is a readily definable universe of "union organizers" verses those who are not, and unless Callaway is undisputedly a member of the "union organizers," then any statistical comparisons Callaway desires to make will by necessity lack both validity and reliability. They simply will be tailored to Callaway's desired outcome and lack any probative value.

Second, Callaway's requests are overly broad and burdensome. As SkyWest indicated in its response, it has employed more than 2,000 pilots since 1999. SkyWest keeps no summary statistical information regarding items like discipline, suspensions, or review boards. Employee files are not kept electronically, and the only way to determine if a pilot has been disciplined at all is to manually review the employment file. However, whether a particular pilot was disciplined for some behavior does not answer the question of whether Callaway was terminated based on his alleged union activity. It is simply irrelevant to the question. The basis for Callaway's termination lies with those involved in the entire decisionmaking process. Callaway has either deposed, or had the opportunity to depose, all those involved. Moreover, the documents relevant to his termination have also been produced. Thus, Callaway has been given all that he is entitled to receive and SkyWest will not produce all of its employee files or make them available for inspection by Callaway.

**3. Interrogatory No. 4; Request No. 4**

These requests seek information related to "other" lawsuits and administrative claims against SkyWest. SkyWest responded to these requests by indicating that there were no other claims involving the RLA, federal wiretapping laws or termination in violation of Utah's public policy. SkyWest has reviewed its response in this regard and maintains that its response was appropriate.

First, as we discussed, it is SkyWest's position that any federal or state court or agency claims based, for example, on Title VII, the ADA, or the ADEA, are simply irrelevant. Claims by other employees (not even limited to pilots) against SkyWest based on race, gender, age, etc. do not advance Callaway's claims that he was terminated because of union activity. It simply does not follow. As we discussed on the telephone, Federal Rule of Evidence 404(b) precludes the admission of evidence of other "bad acts" to prove action in conformity therewith. There can be no other use of the evidence Callaway seeks with these requests except to suggest that because other employees have brought unrelated claims against SkyWest, SkyWest is somehow a bad company and therefore must have discriminated against Callaway based on his alleged union activity.

Second, the requests are too broad. What do unrelated claims by employees that are not pilots, and therefore not similarly situated to Callaway, have to do with Callaway's claims?

Third, even if the information were somehow relevant to the parties' claims or defenses and not overly broad, obtaining the information is overly burdensome. Callaway has asked for "all" claims by any SkyWest employee and limits the requests only to the extent that they exclude workers compensation and unemployment claims. Yet, until recently, SkyWest had not consolidated its legal work. Rather, each department was free to address legal issues (including claims against the company) as they saw fit and no centralized location existed to keep such claims. Consequently, given the ease and informality with which an employee may file an administrative action, SkyWest is not sure it could adequately produce such information even if it were somehow relevant to this case.

4. **Interrogatory Nos. 7 & 8; Request No. 9**

These requests seek information and documents related to complaints and an alleged investigation into Carey Breeze. As we discussed, Carey Breeze is Jim Breeze's son and no longer works for SkyWest. He is not a pilot or a union organizer, and SkyWest does not believe that discipline related to Mr. Breeze or his termination of employment with SkyWest has anything to do with this lawsuit. In discussing these issues with Todd, I learned that the circumstance surrounding Carey Breeze's termination were similar to Callaway's in that he was offered resignation as an alternative to termination. Unlike Callaway, however, Carey Breeze took the offer and resigned his employment.

5. **Request No. 5**

Request No. 5 seeks documentation of "Chief Pilot's meetings" from 1999 to the present. I indicated to you on the telephone that, as was indicated in its response, SkyWest does not keep records of the weekly chief pilot meetings. I agreed, however, to look at this again and double check. I have done so and the response remains the same. SkyWest does not keep records of what occurs in the chief pilot meetings.

6. **Request No. 8**

Request No. 8 seeks copies of Callaway's "check ride" or probationary reports. I have inquired of SkyWest again regarding this request. The answer is the same as SkyWest indicated in its response. SkyWest has produced all documents that are responsive to this request.

**Tabbed Documents from Callaway's <u>First</u> Set of Discovery**

I have reviewed the documents you identified from the employee files that we provided to you for an "attorney eyes only" review.

First, as it relates to Kristen Wiley's file, you requested the entire file. This request is overbroad. SkyWest does not believe that any of the information you identified is relevant to the case. The basis for Ms. Wiley's termination or whether or not what she told SkyWest was in fact true or not is simply irrelevant to the question of why SkyWest terminated Callaway. Nonetheless, out of an abundance of caution, SkyWest will produce to you those documents surrounding her termination from SkyWest.

Two, you identified documents from several other employee files that you have requested. All of these documents are also irrelevant. For example, most of the documents you identified come from pilot Hiram Drane's employee file. These documents consist of letters, copies of the Utah Code, and copies of various tax withholding forms apparently related to Mr. Drane's claim that he is not obligated to pay federal income taxes, or that SkyWest is not authorized to withhold payroll taxes from his paychecks. This information is completely irrelevant to the parties' claims or defenses.

Rather than spend the time to address each document in this letter, to aid you in understanding why SkyWest believes these documents are irrelevant, I have included with this letter a spreadsheet that we prepared for you identifying each document you marked, any date on the document, who's employee file it came from, and why SkyWest believes it is not relevant and therefore will not be produced.

Some of the documents we are willing to produce to you out of an abundance of caution, but keep in mind that we do not believe they are ultimately relevant to this case. Nonetheless, SkyWest will produce the following documents from those you identified in the employee files: (1) Ben Palmer's June 12, 2003 Review Board Summation, (2) the June 20, 2003 reinstatement terms, (3) Palmer's December 18, 2002 Review Board Summation, (4) the October 29, 2002 counseling statement, and (5) the Charles P. Alford November 11, 1999 Action Item Form.

The remaining documents have nothing to do with union activity or any of Callaway's other claims. Admittedly, there are a couple of documents relating to Phil Alford that reference unions in a very general way, but they are dated 1994 or 1995 and are, therefore, too remote in time to be relevant or helpful.

SkyWest will provide you copies of the documents identified above in the next day or two, once they are bates labeled. Please contact me if you have any questions.

Sincerely yours,

Scott

Scott M. Petersen

SMP/stj

Enclosure

cc: Todd C. Emerson, Esq. (w/ enclosure)

SkyWest/Callaway

# List of Documents Requested by Erik Strindberg for Copying

| | Document Title or Description | Date | Employee | Comments – SkyWest Response |
|---|---|---|---|---|
| 1 | Affidavit of Hiram Magruder Drane, Jr., to which is attached the following: | May 5, 2003 | Drane | This and all the other documents that follow pertaining to Mr. Drane have nothing to do with Callaway's claims. Rather, all of the documents deal with Drane's demand that SkyWest not withhold federal income tax, and SkyWest's responses. Drane's position is that it is illegal to require him to file a W-4. These documents are not relevant to the parties' claims or defenses. |
| | • UCC Financing Statement | 8/16/02 | Drane | *See above* |
| | • Email from Jill Jones to Joshua Campbell | May 16, 2003 | Drane | *See above* |
| | • Statement from Drane to Skywest | | Drane | *See above* |
| | • Letter from Joshua Campbell to Drane | May 21, 2003 | Drane | *See above* |
| | • Utah Code 59-10-403 | | Drane | *See above* |
| | • Utah Code 59-10-402 | | Drane | *See above* |
| | • Utah Code 59-10-405 | | Drane | *See above* |
| | • Utah Code 59-10-112 | | Drane | *See above* |
| | • Utah Code 34-28-3 | | Drane | *See above* |
| | • Utah Code 34-28-4 | | Drane | *See above* |
| 2 | Letter from Scott Vest re W-4 Matter | May 16, 2003 | Drane | *See above* |
| 3 | Statement from Drane to SkyWest to which is attached the following: | | Drane | *See above* |
| | • Affidavit | May 5, 2003 | Drane | *See above* |
| | • UCC Financing Statement | 8/16/02 | Drane | *See above* |
| | • IRS letter to SkyWest | 3/7/03 | Drane | *See above* |
| | • Verified Affidavit & Notice to | 3/30/03 | | *See above* |

| # | Document Title or Description | Date | Employee | Comments—SkyWest Response |
|---|---|---|---|---|
| | Terminate w/ W-F Agreement | | | |
| | • Form W-4 | 3/30/03 | Drane | *See above* |
| 4 | Letter from Elizabeth Platte Johnson to Norman Lehnhardt | December 1, 2000 | Drane | *See above* |
| 5 | Letter from National Worker's Rights Committee to SkyWest | November 16, 2000 | Drane | *See above* |
| | • Privacy Act Release Form & Power of Attorney | May 12, 1999 | Drane | *See above* |
| 6 | Fax to Tom Brown & Alyce Rubinfeld from Karalee Smith with attached email from Drane to Karalee Smith dated August 7, 2000 | 8/7/00 | Drane | *See above* |
| 7 | Letter from Karalee Smith to Norman Lehnhardt | May 3, 1999 | Drane | *See above* |
| 8 | Letter from Karalee Smith to Drane | December 14, 1998 | Drane | *See above* |
| 9 | UPSP envelope label showing postage | December 26, 1998 | Drane | *See above* |
| 10 | Note of explanation and Form W-8 Certificate of Foreign Status | 12/20/98 | Drane | *See above* |
| 11 | Letter from Drane to Karalee Smith with cited materials attached | 12/20/98 | Drane | *See above* |
| 12 | Affidavit from Drane to SkyWest | 12/21/98 | Drane | *See above* |
| 13 | Email from Ashley Ieremia to Jim Breeze, et al. | January 25, 2004 | Kanuch | Crew support attempted to contact Kanuch regarding an assignment. Kanuch failed to return call. Kanuch pulled off ADM for his scheduled YYC overnight and his flight was assigned to a reserve. Kanuch was angry for being pulled and not guaranteed pay. His pay was eventually guaranteed. Not related to any party's claims or defenses and therefore irrelevant. |
| 14 | Irregularity Report – prepared by Max P. Parker, MX Control | 19 August 2004 | Chappell | Flew higher than scheduled and "oil pressure" warning illuminated. Had to land at nearest suitable airport. Chappell said he didn't know of altitude restriction. Not relevant to the parties' claims or defenses. |
| 15 | Letter from Necia Clark-Mantle to | April 16, 2004 | Alford | Alford reimbursed for user/vacation time |

| | Document Title or Description | Date | Employee | Comments—SkyWest Response |
|---|---|---|---|---|
| | Captain Charles Phillip Alford with attached computer screen printouts | | | Letter of Instruction stands. Not relevant to the parties' claims or defenses. |
| 16 | Letter of Instruction from Brad Holt to Alford | 1/26/03 | Alford | Co-employees reported general self-righteous attitude or arrogance, Alford was described as intimidating, hostile, and rude. Ordered to cease negative comments and promote safe and comfortable environment. Not relevant to the parties' claims or defenses. |
| 17 | Letter of Instruction from Kelvin L. Hyatt to Alford with attached Counseling Statement | 7/25/02 | Alford | Assigned a reserved shift and requested early release. Request declined. Listed himself for flight and did not make the flight. Alford argued with the Agent and asked for her supervisor. Listed for another flight and was flagged by security for a random search. He refused and refused to board the airplane. Customers and fellow employees viewed his actions. Forfeited one week of pay. Not relevant to the parties' claims or defenses. |
| 18 | Interoffice Memo from Gary R. Overbaugh to Brad Holt, et al., attaching letter from Daniel T. Giles to Gary Overbaugh. | September 26, 1995 | Alford | Complaint regarding Alford's statements on Compuserve Forum about "senior Mormon Boys" Not relevant to the parties' claims or defenses. Nearly ten years old; too remote in time and not relevant to the parties' claims or defenses. |
| 19 | Handwritten fax to Gary O. and Brad H. from Anastacia Karra. | October 6, 1999 | Alford | Letter regarding delay in flight. Delay was longer than necessary because of Alford. Happened twice. Not relevant to the parties' claims or defenses. |
| 20 | Letter from Alford to Kelvin Hyatt | January 16, 2003 | Alford | Alford denies saying he has "stocking stuffer" for co-employee's wife. Not relevant to the parties claims or defenses. |
| 21 | Letter from Alford to Gary | June 1, 1994 | Alford | Over ten years ago; too remote. Complaints about OPS and maintenance causing problems. Complains that management is pitting groups against each other. Need to cease employee vs. employee problem. Not relevant to the parties' claims or defenses. |
| 22 | Letter from Alford to Gary Overbaugh | June 4, 1994 | Alford | Over ten years ago; too remote. Complaint about Ms. Bishop's verbal assault. Not relevant to the parties' claims or defenses. |
| 23 | Report of Irregularity signed by Julie | June 1, 1994 | Alford | Over ten years ago; too remote. Bishop claims Alford was late boarding the aircraft, boarding 10 |

| | Document Title or Description | Date | Employee | Comments – SkyWest Response |
|---|---|---|---|---|
| | Bishop with attached letter from Alford to Gary | | | minutes before scheduled departure. Alford complained about APU, and Bishop thought he should have been on the plane earlier to notice and fix the problem as passengers had already boarded. Not relevant to parties' claims or defenses. |
| 24 | Action Statement from Ron Fletcher to Jim Breeze | November 3, 1994 | Alford | Over ten years ago; too remote. Statement regarding incident – not relevant to parties' claims or defenses. |
| 25 | Fax from Jim to Gary O. with attached note from Alford | September 20, 1995 | Alford | Statement regarding "senior Mormon boys" and accompanying apology. Too remote in time; not relevant to the parties' claims or defenses. |
| 26 | Action Item Form | 4/17/2000 | Alford | Summary: Statement from ramp stating that CA Phil Alford & FO Tim McCabe left the weather radar on after leaving a/c 7/8/2002. Not relevant to the parties' claims or defenses. |
| 27 | Action Item Form | 10/6/1999 | Alford | Summary: Letter from Delta Gate Agent regarding constant delays in Orange County due to Phil's decisions. Not relevant to the parties' claims or defenses |
| 28 | Action Item Form | 6/28/2002 | Alford | Summary: Phil met with Kelvin re: a counseling statement regarding an incident that occurred on 6/28/02. Not relevant to the parties' claims or defenses. |