**APPENDIX 1**

# Loislaw Federal District Court Opinions

WELLS FARGO v. YOUNG, (N.M. 2004)

WELLS FARGO, Plaintiff, v. GAVIN K. YOUNG, Defendant/Counter-Plaintiff, v. WINNEBAGO INDUSTRIES, INC., ROCKY MOUNTAIN R.V. WORLD, INC., SPARTAN MOTOR CHASSIS, INC., and WELLS FARGO, Counter-Defendants.

No. CIV 04-286 MV/LFG.

United States District Court, D. New Mexico.

November 8, 2004

**ORDER ON GAVIN K. YOUNG'S MOTION TO COMPEL DISCOVERY FROM ROCKY MOUNTAIN R.V. WORLD, INC.**

LORENZO GARCIA, Magistrate Judge

THIS MATTER comes before the Court on the Motion to Compel Complete Answers to Interrogatories and Responses to Request for Production from Rocky Mountain R.V. World, Inc. [Doc. 41], filed by Gavin K. Young ("Young") on August 9, 2004. Rocky Mountain R.V. World, Inc. ("RMRV"), Counter-Defendant in this action, filed its Response and an errata notice [Docs. 52 and 54], and Young filed his Reply [Doc. 56]. The motion is now fully briefed and ready for ruling. No oral argument is necessary. For the reasons given below, Young's Motion to Compel is granted in part and denied in part.

**Page 2**

Factual and Procedural Background

Young purchased a Winnebago motor home from RMRV on August 30, 2002. He states that at the time of the sale, he informed the RMRV salesman that he intended to use the motor home as a residence for himself and his family while he traveled around the country to start a new business, and that the salesman assured him the motor home was fit for that purpose.

However, Young contends that in the first five months following the purchase he was forced to bring the motor home back to RMRV for repairs on over 60 defects. He asserts that some of these defects were repaired but many remained unresolved, although RMRV continued to claim that the motor home was fully repaired. Young says he therefore had the motor home examined by expert James Hughes, who reported significant problems with the motor home which made it unsafe and substantially impaired its performance — problems including defects in alignment and steering which caused the motor home to veer from side to side, unacceptable noise levels inside the motor home, and a light switch too hot to touch.

Young contends that the motor home had 34 defects that have been repaired since the time of purchase, and an additional 26 problems that remained unresolved up to the time of repossession. He states also that documents produced during discovery reveal that, in a seven month period prior to his purchase of the home,

it underwent numerous repairs.

RMRV generally denies Young's allegations that the motor home was defective and unfit for its intended purpose and that RMRV failed to honor Young's revocation of acceptance. RMRV asserts that it performed all needed repairs in a workmanlike manner and that Young refused to allow RMRV to perform any additional warranty work for the alleged necessary repairs.

Young purchased the motor home from RMRV under a Retail Installment Contract and

**Page 3**

Security Agreement which was assigned to Wells Fargo for financing. On August 26, 2003, Wells Fargo filed an action in New Mexico state court for enforcement of the contract, alleging that Wells Fargo perfected a security interest in the motor home and that Young defaulted in making the required payments. Wells Fargo asserted that it was entitled to a writ of replevin and was further entitled to accelerate the contract balance, foreclose the security interest, and sell the vehicle. It asked for entry of judgment in its favor for the balance due on the contract.

Young filed an Answer and Counterclaim against Wells Fargo on November 26, 2003, alleging that the motor home was not worth the contract price due to substantial defects and unsafe condition at the time of sale. Young denied any default and claimed that the contract had validly been revoked. He also asserted certain affirmative defenses including fraud or misrepresentation in procuring the contract, revocation of the contract due to statutory violations, unclean hands, waiver, estoppel, and the FTC Holder Rule.

Young also brought counterclaims against Wells Fargo, asserting that as holder and assignee of the contract, it is subject to all claims and defenses which Young could assert against RMRV and Winnebago Industries ("Winnebago"), the seller and manufacturer. Young alleged that he purchased the motor home from RMRV on August 30, 2002 and that between September 3, 2002 and January 18, 2003 he took it in several times for repairs to "multiple problems, many of which never fixed to his satisfaction. Due to the nature and extent of the multiple problems, Young contends, the motor home is not fit for its intended use.

In his Counterclaim Young asserts eight causes of action, including: breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, negligent and intentional infliction of emotional distress, violations of the Motor

**Page 4**

Vehicle Dealers Franchising Act (N.M.S.A. 1978 §§ 57-16-4, 57-16-5, and 15-16-7), violations of the Unfair Practices Act (N.M.S.A. 1978 §§ 57-12-2, 57-12-3), violations of the Magnuson-Moss Warranty — Federal Trade Commission Improvement Act (**15 U.S.C. §§ 2301**-**2312**), revocation of acceptance of the contract pursuant to the Uniform Commercial Code as set forth in N.M.S.A. § **55-2-608**, and defamation.

On January 29, 2004, the state court judge granted the stipulated motion of Young and Wells Fargo, directing that RMRV, Winnebago, and Spartan Motor Chassis, Inc. ("Spartan") be joined as defendants under Young's counterclaim. On March 12, 2004, RMRV and other defendants filed a Notice of Removal to federal court

Case 2:04-cv-00179-TS Document 48-4 Filed 05/24/05 PageID.256 Page 4 of 30

based on Young's claim under the Magnuson-Moss Warranty Act, a federal statute. Prior to removal, Wells Fargo physically repossessed the motor home. Young asserts that the repossession was unlawfully done, but Wells Fargo retains possession of the motor home.

Young served discovery requests on RMRV in this action, including the Interrogatories and Requests for Production at issue in this motion. He contends that RMRV did not adequately respond to these requests, and he brings this Motion to Compel complete answers to Interrogatory Nos. 2-6, 8, 10-15, 17, 20, and 22-26;**[fn1]** and to compel production of items requested in Request for Production Nos. 1, 3, 5, 16, 19, and 27-29.

Standards for Discovery

Rule 26 generally provides a broad scope for discovery. The rule states that parties may discover "any matter, not privileged, that is relevant to the claim or defense of any party," and that

**Page 5**

"[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R. Civ. P. **26**(b)(1). The broad discovery procedures set forth in the Rules seek to further the interests of justice by minimizing surprise at trial and ensuring wide-ranging discovery of information, Simpson v. University of Colorado, 220 F.R.D. 354, 358 (D. Colo. 2004), as "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." Hickman v. Taylor, 392 U.S. 495, 507, 65 S. Ct. 385, 392 (1947).

However, there are limits to what may be discovered. A court has broad discretion to restrict discovery or tailor it as needed. Even if a matter is relevant and not privileged, discovery may be limited if the Court determines that the requested information is unreasonably cumulative or duplicative; obtainable from another source that is more convenient, less burdensome, or less expensive; or where the burden or expense of the proposed discovery outweighs its likely benefit. Fed.R. Civ. Proc. **26**(b)(2); Smith v. Pfizer, Inc., No. CIV.A. 98-4156-CM, 2000 WL 1679483, at *2 (D. Kan. October 26, 2000). In balancing the need for information against the burden of production or risk of harm, the court considers "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R. Civ. P. **26**(b)(2)(iii).

Prior to rule changes in 2000, relevance was more broadly defined for purposes of discovery. After the 2000 rule revisions, discovery was narrowed in scope from material relevant to the "subject matter of the action," to material relevant any "claim or defense of any party." A party may still obtain discovery of "subject matter" material, however, upon a showing of good cause. Fed.R. Civ. P. **26**(b)(1). When the requested discovery appears relevant as defined in the current rule, the party

**Page 6**

resisting discovery bears the burden of demonstrating the lack of relevance. Bryant v. Farmers Ins. Co., No. Civ.A. 01-02390-CM, 2002 WL 1796045, at *2 (D. Kan. July 31, 2002).

Discussion: Particular Discovery Requests

**Interrogatory No. 2**

In Interrogatory No. 2, Young asks RMRV to identify writings, including every bulletin, advisory, mailgram, notice and document which were utilized by its employees in working on each repair activity.**[fn2]** RMRV objects on grounds the Interrogatory is vague and ambiguous and, without waiving the objection, answers that it is not aware of any such documents.

Interrogatories need not be phrased with technical precision, but they should give a reasonably clear indication of the information sought, in order to escape the "vague and ambiguous" charge.

> The expressions complained of do not seem unduly vague or indefinite under the circumstances. Plaintiff is asking for information largely in the exclusive possession of defendant. It knows only the general nature and type of information which it wants, not the exact answer which it is to receive. It cannot be required to phrase its inquiries with mathematical precision. The phrases used in some of these interrogatories may be somewhat general, but they appear to be such as to give defendant a reasonably clear indication of the information to be included in its answers.

Banana Service Co. v. United Fruit Co., 15 F.R.D. 106, 109 (D. Mass. 1953).

An objection on grounds of vagueness may be sustained if the responding party can show that the interrogatory contains terms that are indefinite, or subjective in nature. *See, e.g.,* Heritage Furniture, Inc. v. American Heritage Inc., 28 F.R.D. 319 (D. Conn. 1961) (the phrase "early American furniture" is too indefinite to require a response to an interrogatory using the phrase); and

**Page 7**

Struthers Scientific & Int'l Corp. v. General Foods Corp., 45 F.R.D. 375 (S.D. Tex. 1968) (interrogatory asking whether coffee extract would suffer "adverse flavor effects" under certain conditions was too subjective).

The request for information in Interrogatory No. 2 is not so indefinite that it cannot be answered, nor does it involve a matter of opinion. Young simply asks RMRV to identify the writings, if any, which its employees relied on in performing repairs to the motor home. Young even details the types of documents it seeks. The Court overrules the objection for vagueness and ambiguity.

To the extent RMRV supplied a response to this Interrogatory, that answer it is "not aware of any such documents" is not sufficient. A corporation can not avoid answering an interrogatory by an allegation of ignorance, if it can obtain the requested information from the sources under its control. Hornung v. Eastern Auto. Forwarding Co., 11 F.R.D. 300, 301 (N.D. Ohio 1951). If a party is unable to supply requested information, it may not simply refuse to answer but must state under oath that it is unable to provide the information and must

detail the efforts it made to obtain the information. Hansel v. Shell Oil Corp., 169 F.R.D. 303 (E.D. Pa. 1996).

> Answers must be complete, explicit and responsive. If a party cannot furnish details, he should say so under oath, say why and set forth the efforts he used to obtain the information. He cannot plead ignorance to information that is from sources within his control. If a party is a corporation, information in the hands of its agents and others within its control must be supplied. . . . [Where information is unobtainable, the only proper response is] a sworn answer indicating a lack of knowledge and no means of obtaining knowledge. . . .

Milner v. National Sch. of Health Tech., 73 F.R.D. 628, 632-33 (E.D. Pa. 1977).

Interrogatories served on a corporate party must be answered by an officer or agent of the corporation who shall furnish "such information as is available" to the corporation, Fed.R. Civ. P.

**Page 8**

33(a); United States v. Kordel, **397 U.S. 1**, **8**, 90 S. Ct. 763, 767 (1970), and a corporation cannot avoid answering a discovery request by an allegation of ignorance if it can obtain the information from sources under its control. Westinghouse Credit Corp. v. Mountain States Mining & Milling Co., 37 F.R.D. 348, 349 (D. Colo. 1965).

This means that a corporate officer or agent designated to answer interrogatories is required to secure all information available to the corporation. United States v. Kordel, *supra*, **397 U.S. at 8**. If the designated person lacks personal knowledge of the subject of a discovery request, he or she must consult with other members of the organization who are in possession of the information sought and must "furnish relevant information from whatever sources are available to it." Skelton & Co. v. Goldsmith, 49 F.R.D. 128, 130 (S.D.N.Y. 1969).

> [T]he Federal Rules of Civil Procedure do not contemplate that the corporate officer or employee responding to the interrogatories have first-hand personal knowledge of all the facts reflected in the answers. This would obviously be impossible in most corporations since no one officer or employee has first-hand personal knowledge of what all the other officers and employees do in the day-to-day conduct of a corporation's business. The rules require that the corporation select an officer or employee to gather and obtain from books, records, other officers or employees, or other sources, the information necessary to answer the interrogatories and sign them on behalf of the corporation not himself.

Casson Constr. Co. v. Armco Steel Corp., 91 F.R.D. 376, 382 (D. Kan. 1980). *See also*, Weddington v. Consolidated Rail Corp., 101 F.R.D. 71, 74 (N.D. Ind. 1984) (corporation must answer interrogatories with the "composite knowledge" of the entity); United States v. 58.16 Acres of Land, 66 F.R.D. 570, (E.D. Ill. 1975).

The Motion to Compel with respect to Interrogatory No. 2 is

granted. RMRV is directed to make proper inquiry of its employees and respond fully to this Interrogatory, or to submit a sworn

**Page 9**

statement that the company is unable to respond, giving details as to its efforts to obtain the information.

**Interrogatory No. 3**

In this Interrogatory, Young asks RMRV to identify and describe all repair activity performed on the motor home before and after Young purchased it. In response, RMRV refers Young to 136 pages of documents attached to its answers.

Young does not explain how this response is inadequate or evasive. The only argument he presents in his memorandum is the assertion that RMRV should be compelled to consult with its employees to ensure that this interrogatory is fully answered. This is indeed true, but there is no indication that the interrogatory was not fully answered. The Court does not have before the 136 pages of documents referred to in the response, and Young has not pointed to any indication in this group of documents that would demonstrate that something is missing. Young does not support his request that the Court compel disclosure beyond what has already been produced.

The Motion to Compel is denied with respect to Interrogatory No. 3.

**Interrogatory No. 4**

In this Interrogatory, Young asks that RMRV identify "each bulletin, advisory, mailgram, memorandum, letter, notice and/or document you have" relating to the motor home or motor homes of the same style, model and year, involving 17 defects which Young lists in an exhibit [Ex. H to Doc. 42]. RMRV objects that the interrogatory is vague and ambiguous. As in its response to Interrogatory No. 2, RMRV answers, without waiving its objection, that it is not aware of any such documents.

The Court finds that the interrogatory is overly broad. It is not even limited to the specific

**Page 10**

make, model and year of Young's home, but would include "homes of the same style." That description is so broad and encompassing that virtually every motor home manufactured nation-wide is covered. The Court sustains Well Fargo's objection but will require production of documents in Well Fargo's possession that relate to Young's home and the defects in his home.

**Interrogatory No. 5**

Young's Interrogatory No. 5 asked RMRV to identify all persons who were involved with acquisition, repossession, repair activity, alteration, sale or financing of the motor home and, "For each person describe that person's role and involvement." [Doc. 56, Ex. J].

RMRV did not object to this interrogatory. In its response it listed five persons, giving each person's job title or function, without giving a description of the person's "role and involvement" with Young, as was requested in the interrogatory. Young points out that RMRV mistyped the interrogatory in

providing its answers; RMRV's version reads, "For each person described, that person's role and involvement."

The Court rejects RMRV's contention that it was improper for Young to ask for the "role and involvement," since "the role each person played is evidenced by their job description." This request is not improper; it asks for easily-obtainable information which is calculated to lead to discovery of admissible evidence relevant to Young's claims of warranty breaches and statutory violations. In addition, it is apparent that any mechanic who worked on Young's motor home falls within the description of persons involved in repair activity, and these individuals must be identified.

The Motion to Compel is granted with respect to Interrogatory No. 5. RMRV is directed to provide complete descriptions of the role and involvement of each person listed in its response to this interrogatory.

**Page 11**

**Interrogatory No. 6**

Young provides a list [*see,* Doc. 42, Ex. H] of 17 defects which he claims plagued the motor home he purchased from RMRV. He asks RMRV to state in detail, for each such defect, the efforts RMRV made to determine the origin or cause, RMRV's opinion as to what the cause was, and the basis for each opinion. RMRV does not object to this question. In its response, it states, "Those conditions which Young brought to the attention of RMRV were addressed in invoices and work orders," attached to its answers.

A party may not answer an interrogatory by simply referring to a document or other response, Willner v. University of Kansas, **848 F.2d 1023**, **1029** (10th Cir. 1988); Pilling v. General Motors Corp., 45 F.R.D. 366, 369 (D. Utah 1968). Accordingly, the Court concludes that RMRV's response is inadequate.

However, the interrogatory requires disclosures of RMRV's contentions to the extent it calls upon RMRV to disclose the cause of each defect and the basis for each opinion. Contention interrogatories are only proper at the conclusion of discovery. Fed.R. Civ. P. **33**(c); Everett v. USAir Group, Inc., 65 F.R.D. 1 (D.D.C. 1995). The Court will not require a further response to Young's "contention" portion of the interrogatory.

The Motion to Compel with respect to Interrogatory No. 6 is granted in part and denied in part.

**Interrogatory No. 8**

In this Interrogatory, Young asks RMRV to state whether it contends that the motor home has always performed without defects or as warranted and, if not, to state the conditions creating the defective or out-of-warranty performance, and the reasons for such performance. RMRV answered

**Page 12**

that it last inspected and repaired the motor home on January 18, 2003 and that the motor home performed without defects and as intended at that time. RMRV states it has "no personal knowledge" of the current condition of the motor home.

The Court finds that the response is adequate and that no

further response is necessary.

**Interrogatory No. 10**

Young asks in this Interrogatory that RMRV identify all oral or written communications "relating to Young and/or his motor home," between RMRV and each of the other parties in the suit, giving certain particulars for each communication. By way of response, RMRV directed Young to "See documents produced in response to RFP no. 16, Plaintiff's Rule 26 Disclosures, and RMRV's list of exhibits on its portion of the IPTR [*i.e.,* Initial Pretrial Report]."

As noted above, it is generally improper to answer an interrogatory by simply referring the requesting party to other pleadings and documents. Willner v. University of Kansas, *supra*. The fact that Young cannot locate, within RMRV's disclosures, some of the documents listed in the IPTR, exemplifies the problems created by this form of response. Furthermore, Young should not be forced to hunt for the information in a haystack of disclosures.

The Motion to Compel is granted in part with respect to Interrogatory No. 10. RMRV is directed to specifically identify each written communication as described in the interrogatory. The Court recognizes the general impossibility of disclosing each and every communication relating to the motor home and therefore will not require it.

**Interrogatory No. 11**

In this Interrogatory, Young asks RMRV to identify each person who had possession, custody or control of the motor home from the time it first came into RMRV's possession and to give certain

**Page 13**

particulars as to each such person. RMRV did not object. It responded by giving the name of Gavin Young and stating that on December 11, 2002, Albuquerque Freightliner had possession of the motor home for alignment work.

Young asserts that this answer is insufficient because it is apparent, for instance, that one or more individuals had custody of the motor home before it was sold to Young and that someone at RMRV must have had custody of the vehicle during the times it was repaired. The Court rejects Young's contentions and determines that RMRV has adequately answered this interrogatory.

The Motion to Compel is denied.

**Interrogatory No. 12**

Young asks RMRV to identify all people consulted in answering these interrogatories, specifying the interrogatory to which each person contributed. RMRV lists only one person, its counsel of record J. Edward Hollington. Young objects that this answer is incomplete, contending that RMRV could not possibly answer the interrogatories fully without consulting some of its employees.

Again, the Court determines that the response is adequate. The Motion to Compel with respect to Interrogatory No. 12 is denied.

**Interrogatory No. 13**

In this Interrogatory, Young asks RMRV to consult the attached report of its expert James G. Hughes and to designate each opinion and conclusion in the report with which RMRV disagrees, giving the basis of its disagreement and identifying each document and individual who will support RMRV's position.

RMRV objects on grounds the Hughes report does not comply with the requirements for

**Page 14**

expert reports set forth in Fed.R. Civ. P. **26**(a)(2)(B), and for other reasons. Without waiving the objection, RMRV refers Young to documents produced in response to Interrogatory No. 3 and RFP No. 16, and to its initial disclosures and the IPTR. Young contends that the report need not comply with the requirements of Rule 26(a)(2)(B) in order to be a proper subject of discovery inquiry. The Court disagrees.

Rule 26(a)(2)(B) **[fn3]** requires that, in addition to initial disclosures under 26(a)(1), each party shall disclose the identity of any person who may be used at trial to present expert testimony and, for each such witness, to provide an expert report prepared and signed by the witness. This report must include: (1) a complete statement of all opinions to be expressed and the basis and reasons therefor; (2) the data or other information considered by the witness in forming the opinions; (3) any exhibits to be used as a summary or in support of the opinions; (4) the qualifications of the witness, including a publication list for the past ten years; (5) the compensation to be paid for the study and testimony; and (6) a listing of other cases in which the witness has testified as an expert in the past four years. The report prepared by Mr. Hughes (attached as Ex. E to Doc. 42) does not comply with these requirements.

As Young points out, expert disclosures are not yet due in this case; the deadline for submission is November 22, 2004. [Doc. 50]. The Court finds that it is premature at this time for Young to present a preliminary and incomplete expert report and ask RMRV to take positions on it. The disclosure provisions of Rule 26(a)(2)(B) are mandatory and are intended to further the salutary purposes of the Civil Justice Reform Act, **28 U.S.C. § 471** *et seq.*, which was enacted to ensure that cases move economically and expeditiously through the federal system. Expert reports as

**Page 15**

contemplated under the Rule are intended to fully alert opposing parties of the opinions that will be offered and the basis for each opinion to be expressed at trial. To allow Young to submit a preliminary report to RMRV and ask for its position, before the expert has made all necessary disclosures, would enable Young to send out a trial balloon to test its expert's opinions and conclusions. This is unfair to RMRV and runs counter to the spirit of Rule 26.

> Rule 26 contemplates that a complete report be filed within the time constraints indicated by the court. The rule makes no provisions for "preliminary reports" followed by "supplementary reports." Rather, Rule 26 requires production of a "detailed and complete report" with full disclosure of all opinions that will be offered at the time of trial, together with full disclosure of the basis for the opinions to

be offered.

Dan v. United States, No. Civ. 01-25 MCA/LFG, slip op. at 6,7 (D.N.M. Feb. 6, 2002). Once expert reports are submitted in compliance with Rule 26, the parties will have ample time under the scheduling order to engage in follow-up discovery.

The Motion to Compel is denied with respect to Interrogatory No. 13.

**Interrogatory No. 14**

Young asks RMRV to identify "the owners of all 2002 Freedom Winnebago Motor Homes who to your knowledge have complained about any or all of the conditions" noted in a list of defects (attached as Ex. H to Doc. 42). RMRV objects to the interrogatory as ambiguous and overly broad. Without waiving the objection, RMRV states that it has no knowledge of any owners making such complaints.

Young does not address Interrogatory 14 in his briefing, except to argue that the question has not been fully answered and that RMRV should be compelled to consult with its employees and disclose whatever information they have which is responsive to the interrogatory.

**Page 16**

To the extent the interrogatory asks RMRV to identify owners of "all 2002 Freedom Winnebago Motor Homes" who have made complaints, the Court agrees with RMRV that the interrogatory is overly broad. And although Young is correct that a corporation cannot simply answer "I don't know" in response to a discovery request but must make reasonable efforts to acquire the information by consulting its employees, the Court finds that RMRV's answer to this interrogatory is responsive to the question asked. Young asked for the identities of owners who, "to your knowledge" have complained about the listed defects. RMRV responded, over objection, that it "has no knowledge of any owners making such complaints." The Court presumes that RMRV did consult with its employees before providing this response. To the extent it did not, RMRV is directed to do so and supplement the response. Otherwise, the Motion to Compel with respect to Interrogatory No. 14 is denied.

**Interrogatory No. 15**

In this request, Young asks RMRV to state whether it believes Young was responsible for causing any of the motor home's problems and, if so, to state the basis for its opinion and to identify all documents and persons who will support each such opinion.

This is a contention interrogatory. While such interrogatories are proper at the close of discovery, they are not proper at the commencement of discovery. Fed.R. Civ. P. **33**(c); Everett v. USAir Group, Inc., *supra*. The Court will not require a further response.

**Interrogatory No. 17**

Young asks RMRV in this Interrogatory to describe the factual basis supporting each of its affirmative defenses and to identify

each document and each person supporting each such defense. RMRV objects on grounds this request is a contention interrogatory and premature at this stage of

**Page 17**

the litigation. It also objects on work product grounds.

As noted above in the discussion on Interrogatory No. 8, this is a relatively early stage in the discovery process, and contention interrogatories are generally more appropriate if served toward the end of that process. Everett v. USAir Group, Inc., *supra*. The Court will not require RMRV, at this point, to respond to the Interrogatory to the extent it asks RMRV to "describe the factual basis supporting each affirmative defense."

However, the Interrogatory also asks RMRV to identify all documents which RMRV will rely on to establish its affirmative defenses, and all persons who will support each such defense. This is the type of information required to be disclosed in initial disclosures pursuant to Fed.R. Civ. P. **26**(a)(1)(A) ("each individual likely to have discoverable information that the disclosing party may use to support its claims and defenses . . ., identifying the subjects of the information); and 26(a)(1)(B) ("all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses"). Questions such as these, which seek the identification of witnesses or documents are not contention interrogatories. B. Braun Medical Inc. v. Abbott Labs., 155 F.R.D. 525, 527 (E.D. Pa. 1994); Everett v. USAir Group, Inc., *supra,* at 3.

The Motion to Compel with respect to Interrogatory No. 17 is therefore granted in part and denied in part, and RMRV is directed to answer fully the portion of this Interrogatory which asks it to identify those witnesses and documents supporting its affirmative defenses. In doing so, it may not simply refer to its initial disclosures and the Initial Pretrial Report.

**Interrogatory No. 20**

In this Interrogatory, Young asks RMRV to identify "all other persons with knowledge of any

**Page 18**

aspect of the transaction or course of dealing with Young," describing each such person's role and activities. RMRV does not object and responds by referring Young to its answer to Interrogatory No. 5, plus persons identified in RMRV's initial disclosures and the IPTR. RMRV also notes that it will supplement the answer as discovery continues.

Young complains that this response, which refers back to the response to Interrogatory No. 5, is inadequate for the same reasons the response to No. 5 was inadequate. The Court agrees. The request is proper, and in any event RMRV lodged no objection to it. RMRV must fully answer the interrogatory.

The Motion to Compel is granted with respect to Interrogatory No. 20. RMRV is directed to identify, and provide complete descriptions of the role and involvement of, each person who has knowledge of any aspect of the transactions or course of dealing with Young.

Case 1:04-cv-00179-TS Document 48-4 Filed 05/24/05 PageID.255 Page 13 of 30

**Interrogatories 22-26**

To each of these Interrogatories, RMRV lodges the following objection: "RMRV objects as Young has submitted interrogatories in excess of 50, including discrete subparts, in violation of FRCP rule 33(a), D.N.M.LR-Civ. 26.5, and Provisional Discovery Plan incorporated as an order of the Court limiting parties to 50 interrogatories, including discrete subparts." In addition, RMRV objects to Interrogatory No. 22 on grounds of relevancy.

Fed.R. Civ. P. **33**(a) provides that "any party may serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts," although leave to serve additional interrogatories may be granted by the Court. The Court's local rules provide that a party wishing to serve interrogatories beyond those allowed in Rule 33 must file a motion setting forth the proposed interrogatories and explaining why they are necessary. D.N.M.LR-Civ. 26.5(b). In this

**Page 19**

case, the parties requested and were granted leave to serve 50 interrogatories on each other. *See,* Provisional Discovery Plan [Doc. 10], at ¶ 3.

Young argues that RMRV cannot simply decline to answer its last five interrogatories on grounds that, by RMRV's reckoning, Young has exceeded the 50-interrogatory allotment. Rather, Young contends, RMRV is obligated to proceed by way of a Motion for Protective Order and its failure to do so operates a waiver of this objection. Furthermore, Young asserts that he has not exceeded the 50-interrogatory limit as each of his subparts is "logically or factually subsumed within and necessarily related to the primary question."

The Court disagrees. At the Rule 16 scheduling conference, the Court specifically admonished the parties that the interrogatory limitation included subparts, and therefore counsel had to be cautious and circumspect in framing their interrogatories so that they did not exceed the numerical limitation. Indeed, the Court specifically instructed the parties that they need answer only the first 50 questions.

Here, the Court concludes that Young exceeded the numerical limitation without obtaining opposing party's or the Court's agreement.

The Court sustains RMRV's objections.

**Request for Production No. 1**

In this Request, Young asks RMRV to produce all documents relating to repair activity performed on the motor home since the date it was manufactured. RMRV did not object and answered by referring Young to the documents produced in response to Interrogatory No. 3.

Young's complaint about this answer is that he has knowledge that repairs were made to the motor home in January and December 2002, but no bills for or summaries of this work were

**Page 20**

produced in response to the Request. Young suggests that, if documentation of this work does exist within the 177 pages provided in response to Interrogatory No. 3, RMRV can comply with

its discovery obligations by identifying specifically the page numbers corresponding to this documentation. Young also questions whether RMRV consulted with its employees in order to answer this RFP and asks that it be compelled to do so before answering.

In its Response brief, RMRV does not make the identification which Young requests but continues to assert that it has fully responded to all discovery requests. The Court cannot order RMRV to produce documentation which does not exist. However, the Court will order that RMRV specifically identify, by Bates numbers, all documents within the material produced in response to Interrogatory No. 3 which is also responsive to Request for Production No. 1. To this extent, the Motion to Compel is granted with respect to RFP No. 1.

**Request for Production No. 3**

In this Request, Young asks RMRV to produce "all bulletins, opinions, advisories, documents, mailgrams, and notices you have concerning or relating to the conditions listed" in a document which sets out alleged defects in the motor home (attached as Ex. H to Doc. 42). RMRV objects to the Request on grounds it is vague and ambiguous.

The Court overruled this same objection in connection with Interrogatory No. 4, to which this Request for Production relates, and will do so here as well for the same reasons. The Motion to Compel is granted with respect to RFP No. 3.

**Request for Production No. 5**

Young asks RMRV in this RFP to provide all documents which it intends to or may introduce as evidence at trial. RMRV responds that it has not yet determined the documents it will or may

**Page 21**

introduce at trial, but it refers Young to disclosures and production already made.

The Court finds nothing wrong with the response that RMRV has not yet determined which documents it will introduce at trial. The Court reminds all parties, however, that they have a continuing duty to supplement discovery as it becomes known or available. Fed.R. Civ. P. **26**(e).

Young has a separate complaint, however, with regard to the answer to RFP No. 5. He states that not all of the documents identified in the IPTR have been produced, citing in particular RMRV documents 18, 19, 23, and 24, as listed in the IPTR. RMRV says that it told Young's counsel, prior to the time this motion was filed, to notify him if any of the documents listed in the IPTR were missing. He says that Young's counsel never responded to this offer, but "[r]egardless, RMRV continues to offer to provide these documents to Young if he has not received them." [Doc. 52, at 15]. This is all very well and good, but it would have saved judicial resources if RMRV had simply turned the documents over when it received Young's Memorandum.

Young has identified four documents which he says he did not receive. RMRV is directed to provide copies of those documents, as listed and described at pages 12-13 of Young's Memorandum in Support of this motion. To that extent, the Motion to Compel is granted with respect to RFP No. 5, and RMRV is reminded of its

duty to supplement its answer to this RFP.

**Request for Production No. 16**

In this RFP, Young asks for all documents pertaining to the sale and financing of the motor home. He then provides a list of the sort of documents which would satisfy this request. RMRV did not object. It provided some documents in response and referred Young to other documents already produced.

Young's only complaint with this response is that RMRV again refers to the IPTR but has not

**Page 22**

produced all documents listed therein. The Court's order with respect to RFP No. 5 takes care of this complaint, and the Motion to Compel is therefore denied with respect to RFP No. 16.

**Request for Production No. 19**

In this RFP, Young asks RMRV to produce, for each repair attempted or completed on the motor home, each bulletin, advisory, mailgram, notice and document referred to in working on the repair. RMRV objects on grounds the request is vague and ambiguous.

For the reasons stated above in the discussion of Interrogatory No. 2, to which this RFP corresponds, the Court finds that the request is not vague or ambiguous. The Motion to Compel is granted with respect to RFP No. 19.

**Request for Production No. 27**

Request No. 27 asks RMRV to produce all documents identified in the response to Interrogatory No. 10, which asks RMRV to identify all oral or written communications between RMRV and each of the other parties in the suit which relate to Young and/or his motor home. RMRV does not object to the Request and refers Young to its responses to RFP Nos. 13, 14, and 15. Those three RFPs request all correspondence to and from Winnebago, Spartan, and Wells Fargo, the other three counter-defendants in this case.

Young did not complain about the material produced in response to RFP nos. 13-15, but he is apparently not satisfied with RMRV's response to this RFP for the same reasons he complains about the response to Interrogatory No. 10 — that is, he says that some of the material identified in the IPTR has not been produced. The Court's order with respect to RFP No. 5 takes care of this complaint, and the Motion to Compel is therefore denied with respect to RFP No. 27.

**Page 23**

**Request for Production No. 28**

Young seeks in this Request all documents identified in, or which support, RMRV's answer to Interrogatory No. 17. The Court sustained RMRV's objection to Interrogatory No. 17, to the extent it prematurely sought an answer to a contention interrogatory. However, the Court ordered RMRV to produce documents on which it will rely to establish its affirmative defenses and to identify all persons who will support each such defense, without simply referring Young to other documents or disclosures.

The Motion to Compel with respect to RFP No. 28 is denied insofar as it seeks material excluded by the Court's order with respect to Interrogatory No. 17. The Motion to Compel is granted with respect to documents on which RMRV will rely to establish its affirmative defenses, and any documents which identify persons who will support each such defense. For any documents to which RMRV asserts a work product privilege, an adequate Vaughn index must be provided.

**Request for Production No. 29**

In this RFP, Young requests all "policy manuals, procedures, rules, guidelines, directions, instructions and memos in effect in 2002" which address 12 specific subject matters. RMRV objects on grounds of vagueness and ambiguity, overbreadth, and relevance. Without waiving the objection, RMRV also states that if any documents responsive to the request are discovered, they will be produced "pursuant to supplementation or further order of this Court."

The Court agrees with Young that RMRV has not supported its contention that the RFP is vague or ambiguous, and the objection on this ground is overruled. However, RMRV also objects that the materials sought are not relevant to the claims and defenses asserted in this case, and that the request is overly broad.
**Page 24**

Young's claims in this case include allegations that RMRV sold him a motor home which was defective, unsafe and unfit for its intended purposes. In his counterclaim, he alleges that RMRV breached its express and implied warranties that the motor home would perform as warranted and for its intended purpose, and that RMRV failed to make adequate repairs and misrepresented that the motor home was repaired, safe, and without defects. He further asserts that RMRV failed to honor his revocation of acceptance. He seeks compensatory and punitive damages. RMRV denies these allegations and asserts that it fully performed all necessary repairs in a workmanlike manner, and at all times advised Young that it was ready, willing and able to perform further warranty work but that Young refused to allow this.

Some of the material described in RFP No. 29 could conceivably be relevant to these claims and defenses. Young argues that policy manuals, rules, guidelines, and the like which bear on such subjects as customer complaints, purchase and sale of Winnebagos, financing of motor homes, performance requirements of RMRV and its employees, training and education of sales personnel, etc. could shed light on whether RMRV treated Young in a manner which violated its own rules and protocols and would therefore be relevant to his claim of Unfair Trade Practice and his request for punitive damages.

The Court finds this relevancy connection too tenuous in light of the extreme overbreadth of the Request. Young cannot justify his need for every policy manual, procedure, guideline, instruction or memo bearing on, for instance, the issue of "purchase and sale of winnebagos." This could include nearly every document in the files of the dealership that had anything to do with Winnebagos. Certainly something in that mass of materials might conceivably bear on the question whether a particular RMRV employee's actions violated Young's consumer rights. But discovery

**Page 25**

does not give litigants the right to rifle indiscriminately through the files of their opponents.

The Court sustains RMRV's objections. Request for Production No. 29 is overly broad, and the Motion to Compel will therefore be denied as to this Request.

**Order**

IT IS THEREFORE ORDERED that Gavin K. Young's Motion to Compel [Doc. 41] is granted in part and denied in part, as specified above. Rocky Mountain R.V. World, Inc. is directed to provide the discovery as ordered above on or before November 23, 2004.

[fn1] In his Motion, Young refers to the last group as "Interrogatories 23-26" [Doc. 41, at ¶ 2]. His briefing makes clear, however, that he intends to seek an order compelling a response to Interrogatory No. 22 as well.

[fn2] Young defines "activity," as used in his discovery requests, to mean "all work, repairs, service, maintenance, inspections, tests, and examinations performed . . . upon the motor home [emphasis in original]."

[fn3] Both parties mistakenly refer to this Rule as "26(2)(B)."

Copyright © 2005 Loislaw.com, Inc. All Rights Reserved

# Loislaw Federal District Court Opinions

CANOPY CORPORATION v. SYMANTEC CORPORATION, (Utah 2005)

CANOPY CORPORATION, et al., Plaintiffs, v. SYMANTEC CORPORATION, Defendant.

Case No: 2:04 CV 629 DAK.

United States District Court, D. Utah.

March 9, 2005

**ORDER GRANTING MOTION TO COMPEL AND MOTION FOR EXPEDITED REVIEW**

DAVID NUFFER, Magistrate Judge (Part-time)

Plaintiffs have moved to compel discovery**[fn1]** and to expedite consideration**[fn2]** of the motion because depositions are to start March 22nd in California.**[fn3]** The case involves a contract (Agreement) under which Plaintiffs' predecessor was to provide order fulfillment services to Defendant's predecessor.**[fn4]**
**Page 2**

The dispute revolves around three major areas:**[fn5]**

So-called "contention interrogatories" asking for factual or evidentiary support for certain allegations made by Defendant;

Minutes of corporate meetings; and

An unredacted copy of the Disclosure Letter called for in the merger agreement between Defendant and its predecessor.

**Contention Interrogatories**

Plaintiff has asked three interrogatories regarding Defendant's positions stated in its Answer that

Defendant terminated the Agreement;**[fn6]**

Defendant never approved assignment of the Agreement to Plaintiff;**[fn7]** and

Defendant did not need to provide notice for cessation of use of Plaintiffs' services.**[fn8]**

Defendant objects to answering these interrogatories at this time, hoping to defer answer until some discovery is taken,**[fn9]** and claiming that its recently filed answer**[fn10]** to the amended
**Page 3**
complaint addresses the very information Plaintiffs are seeking.**[fn11]** Defendant cites case law and rule comments which permit deferral of answers to contention interrogatories, but the magistrate judge does not feel that complete deferral is

wise in this case, because the upcoming depositions would then be taken without the benefit of any disclosure of Defendant's presently known factual bases for its assertions. The depositions of *individuals* may be more focused if such facts as are now known to the *corporate* Defendant are disclosed.

The magistrate judge fails to see how the answer to the amended complaint provides any factual underpinning and also fails to understand Defendant's argument that the statements in the Answer are based on "legal argument" and not on facts.**[fn12]** There must be some factual foundation.

Further, while the magistrate judge is convinced that a full answer to these interrogatories**[fn13]** may not be available until after depositions, *such factual basis as is known to Defendant at the present time must be stated now.* It is true that depositions will later inquire into these matters**[fn14]** and more complete supplemental answers to the interrogatories will probably follow but this should not justify complete silence. The Defendant's factual support for its contentions, to the extent now known by Defendant, should be revealed.
**Page 4**

**Meeting Minutes**

Several requests for production**[fn15]** and an interrogatory**[fn16]** seek minutes of Defendants' board, officers and shareholders meetings in which the merger of *Defendant* and *Defendant's predecessor* was discussed. Defendant asserts that there is no discussion of *Plaintiffs' predecessor, Plaintiff* or the Agreement in any of those meetings.**[fn17]** However, the discovery seeks minutes of meetings in which *Defendants'* predecessor is discussed. The magistrate judge is not inclined to let Defendant specify the filter for its duty of production,**[fn18]** and is further not inclined to undertake the in camera review suggested by Defendant.**[fn19]** That review is an unnecessary burden for the magistrate judge, far less familiar with the facts than the parties.

The protective order**[fn20]** provides substantial assurance that the "extremely sensitive and proprietary"**[fn21]** nature of the minutes is not compromised. Presumably, the minutes would be designated to permit use only by Plaintiffs' outside counsel. However, an additional assurance will be imposed by this order to require that by the close of fact discovery Plaintiff shall
**Page 5**
determine which of the minutes it intends to use as exhibits at trial and shall at the close of fact discovery return to Defendant all copies of all minutes other than those used in depositions or designated for use at trial.

**Unredacted Disclosure Letter**

The final area of dispute to survive the briefing is Plaintiffs' desire to see an unredacted version of the "Disclosure Letter" produced in performance of the merger agreement between Defendant and Defendant's predecessor.**[fn22]** Defendant claims Plaintiffs and their predecessor were only mentioned in one line of the 169 page document**[fn23]** and that relevant portions of the Disclosure Letter have been produced.**[fn24]** Plaintiffs claim that the

production was essentially 169 blank pages.[fn25] But again, more than those portions which mention Plaintiffs or their predecessors may bear on issues in this case. The unredacted 169 page disclosure letter should be provided to Plaintiffs for examination. At the close of fact discovery Plaintiffs shall return to Defendant all portions of the letter other than those used in depositions or designated for use at trial.

**Sanctions**

Authoritative commentators suggest a fairly low threshold for showing "substantial" justification which prevents imposition of discovery sanctions. "Making a motion, or opposing a motion, is `substantially justified' if the motion raised an issue about which reasonable people

**Page 6**

could genuinely differ . . ."[fn26] The Tenth Circuit similarly articulates an objective standard that is relatively easy to meet:

> We are of the view, therefore, that as between the two commonly used connotations of the word "substantially," the one most naturally conveyed by the phrase before us here is not "justified to a high degree," but rather "justified in substance or in the main" — that is, justified to a degree that could satisfy a reasonable person.[fn27]

The magistrate just finds the position of Defendant was, though incorrect, objectively reasonable and therefore substantially justified.

**Page 7**

**ORDER**

IT IS HEREBY ORDERED that the motion to compel[fn28] and to expedite consideration[fn29] are GRANTED as provided herein.

IT IS FURTHER ORDERED that on or before March 15, 2005, Defendant's counsel shall notify Plaintiffs' counsel of the time and place when, on or before March 17, 2005, Defendant shall produce those items required to be produced under this order, and that Plaintiffs shall thereafter comply with obligations to return some of those items as discussed in this order.

[fn1] Docket no. 22, filed February 7, 2005.

[fn2] Docket no. 39, filed March 7, 2005.

[fn3] *Id.* at 3.

[fn4] Plaintiffs' Memorandum in Support of Plaintiffs' Motion to Compel (Supporting Memorandum) at ii, docket no. 23, filed February 7, 2005; Memorandum in Opposition to Plaintiffs' Motion to Compel . . . at 2 (Memorandum in Opposition), docket no. 37, filed February 25, 2005. Apparently Plaintiff merged with the party which contracted to provide services and Defendant purchased the company for which the services were rendered.

[fn5] Other issues raised in the motion to compel have apparently been assuaged in the time since that motion was filed. *See* Memorandum in Opposition at 11 and 12, and Reply Memorandum in

Support of Plaintiffs' Motion to Compel (Reply Memorandum), docket no. 40, filed March 7, 2005. The magistrate judge notes that providing materials after the filing of a motion to compel is not wholly curative of a failure to provide materials earlier. F.R.Civ.P. **37**(a)(4).

[fn6] Interrogatory No. 12, reproduced with Defendant's response in Defendant's First Amended Responses to Plaintiffs' First Set of Requests for Admissions, Interrogatories, and Requests for Production of Documents (Discovery), attached as Exhibit D to Memorandum in Support.

[fn7] Interrogatory No. 14, found in *Id.*

[fn8] Interrogatory No. 16, found in *Id.*

[fn9] Memorandum in Opposition at 5-6.

[fn10] Docket no. 36, filed February 23, 2005.

[fn11] *Id.* at 7 n. 6.

[fn12] *Id.* at 7 & n. 6.

[fn13] The interrogatories seek "every factual and evidentiary basis." Interrogatories 12, 14 and 16 in Discovery.

[fn14] Memorandum in Opposition at 6.

[fn15] Requests Nos. 6, 7 and 8 in Discovery.

[fn16] Interrogatory No. 16 in Discovery.

[fn17] Memorandum in Opposition at 8 and 10.

[fn18] Defendant's argument that minutes need not be produced if "they do not relate to any issue in the case" (Memorandum in Opposition at 9) is a tautology that leaps the issue of discoverability. Plaintiffs have articulated sufficient facts to establish that the minutes may be "relevant to a claim or defense" and the minutes are certainly "relevant to the subject matter" – the process by which Defendant became Plaintiffs' contracting party. Fed.R.Civ.P. **26**(b)(1).

[fn19] Memorandum in Opposition at 10.

[fn20] Docket no. 18, filed January 13, 2005.

[fn21] Memorandum in Opposition at 9.

[fn22] Reply Memorandum at 6-8.

[fn23] Memorandum in Opposition at 9.

[fn24] *Id.* at 11.

[fn25] Reply Memorandum at 6.

[fn26] 8A Wright & Miller Fed. Prac. & Proc. Civ.2d § 2288.

[fn27] *Hutchinson v. Pfeil,* No. 98-5043, 1999 WL 1015557, *3 (10th Cir. Nov. 9, 1999) (unpublished decision). Interestingly,

*Hutchinson* and many other cases cite to "[t]he controlling definition of `substantially justified' ? set forth in *Pierce v. Underwood,* **487 U.S. 552**, **564-65**, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)" when that case considered a different legal issue entirely, only analogizing to what Justice Scalia termed to be the prevalent view under Fed.R.Civ.P. **37**(a)(4)(A). *Id.*

[fn28] Docket no. 22, filed February 7, 2005.

[fn29] Docket no. 39, filed March 7, 2005.

Copyright © 2005 Loislaw.com, Inc. All Rights Reserved

7 of 7 DOCUMENTS

**GLORIA J. WILLINGHAM, Plaintiff, v. JOHN ASHCROFT, Defendant.**

**Civil Action No. 02-1972 (ESH/JMF)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

**2005 U.S. Dist. LEXIS 922**

**January 25, 2005, Decided**

**SUBSEQUENT HISTORY:** Later proceeding at Willingham v. Ashcroft, 2005 U.S. Dist. LEXIS 923 (D.D.C., Jan. 25, 2005)

**DISPOSITION:** Discovery motions ruled on.

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1] For GLORIA WILLINGHAM, Plaintiff: Iris McCollum Green, GREEN & FOUSHEE, Washington, DC.

For JOHN ASHCROFT, Attorney General, Defendant: Jeffrey D. Kahn, United States Department of Justice, Civil Division, Federal Programs Branch, Washington, DC.

**JUDGES:** JOHN M. FACCIOLA, UNITED STATES MAGISTRATE JUDGE.

**OPINIONBY:** JOHN M. FACCIOLA

**OPINION:**

**MEMORANDUM OPINION**

This case was referred to me for the resolution of discovery disputes by Judge Huvelle. Currently ripe and ready for resolution are several discovery motions. For the reasons stated herein, Plaintiff's Motion to Expand Scope of Discovery Order Dated July 20, 2004 and to Compel Answers to Interrogatories and Responses to Request for Production of Documents [# 43] is denied in part and granted in part, Plaintiff's Supplement to Motion to Expand Scope of Discovery Order Dated July 20, 2004 and to Compel Answers to Interrogatories and Responses to Request for Production of Documents [# 44] is denied in part and granted in part, Defendant's Motion to Quash Subpoena and to Enter a Protective Order Vacating Plaintiff's Notice of Deposition to Former Drug Enforcement Administrator Donnie Marshall [# 51] is denied in part [*2] and granted in part, Defendant's Motion to Strike Plaintiff's Reply Memorandum to Plaintiff's Motion to Expand Scope of Discovery Dated July 20, 2004 and to Compel Answers to Interrogatories and Responses to Request for Production of Documents [# 55] is denied, and Plaintiff's Motion to Late File Plaintiff's Second Motion to Compel Documents [# 58] is granted.

**I. INTRODUCTION**

Plaintiff, an attorney who was an Attorney-Advisor in the Drug Enforcement Administration ("DEA"), an agency within the Department of Justice ("DOJ"), claims that her termination from that position was motivated by a retaliatory and discriminatory animus. The defendant, the Attorney General ("AG"), will defend on the grounds that an investigation of plaintiff's behavior on the night she was arrested in Fairfax County for assault and statements she made thereafter justified her removal from federal service, even though she was acquitted of the charges that led to her arrest.

**II. DISCUSSION**

**A. The Number of Interrogatories Plaintiff Was Permitted to Propound and the Number of Interrogatories She Has Already Propounded**

At a conference held on December 15, 2003, the presiding [*3] judge, Judge Huvelle, rejected plaintiff's request that she be permitted to propound 50 interrogatories. Initial Sched. Conf. Tr., Dec. 15, 2003, at 5. While the judge did not memorialize any precise limitation, the pertinent Federal Rule of Civil Procedure

permits only 25, n1 and plaintiff did not seek leave of court to propound more than 25 before she served her interrogatories. While she propounded interrogatories numbered from 1 to 25, the AG protests that when one counts separately "all discrete subparts" as the Rule requires, n2 plaintiff has in fact propounded 43 interrogatories.

n1 Fed. R. Civ. P. 33(a).

n2 Id.

The AG's complaint invokes the analysis I engaged in Banks v. Office of Senate Sergeant-at Arms, 222 F.R.D. 7, 10 (D.D.C. 2004). I stated that ascertaining whether an interrogatory counted as one question or more than one question required a pragmatic approach:

> Perhaps a more pragmatic approach, reminiscent of Justice [*4] Stewart's memorable "definition" of pornography, would be to look at the way lawyers draft interrogatories and see if their typical approaches threaten the purpose of the rule by putting together in a single question distinct areas of inquiry that should be kept separate.

Id. (footnote omitted). Thus, once a subpart of an interrogatory introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it, the subpart must be considered a separate interrogatory no matter how it is designated. Id. Using this analysis, I will now determine which of plaintiff's interrogatories, no matter how they are numbered or otherwise propounded, must be considered more than one interrogatory.

*Interrogatory Number 3*. In this interrogatory, plaintiff begins by asking when Catherine Reeves ("Reeves") started working for the Office of Attorney Personnel Management and the number of disciplinary actions she decided since she came to that office. She then proceeds to inquire about every particular of each disciplinary action Reeves decided. Finally, she shifts once again to whether the disciplined employee thereafter filed [*5] a discrimination complaint and seeks all the particulars of the complaint, including its disposition.

In my view, this interrogatory raises two distinct areas of inquiry: (1) Reeves' service, the record of what she did in the cases before her, and the particulars of those cases; and (2) whether the persons disciplined filed discrimination complaints and the particulars of those complaints. Hence, this interrogatory should be counted as two interrogatories.

*Interrogatory Number 9*. In a similar fashion, this interrogatory seeks the identity of any DOJ employee who has been charged with a criminal offense and demands to know the particulars of the crime charged. It then asks whether the DOJ investigated the commission of the offense and proffered disciplinary charges against the employee who committed it and, if so, the name, race, and title of the official who proffered the disciplinary charges and the subsequent history of the charges proffered, if any. Finally, it asks whether the employee had been previously disciplined.

In my view, this interrogatory raises at least three distinct areas of inquiry: (1) the identity and particulars of the cases of any DOJ employee charged with [*6] a criminal offense; (2) the investigation of those charges by the DOJ, any resulting disciplinary charges, and how those charges were resolved; and (3) the prior disciplinary records of the employees disciplined.

*Interrogatory Number 10*. This interrogatory seeks the particulars pertaining to any employee who had been disciplined by the DEA for making a false statement and any punishment that was imposed if the charge was sustained. It then asks whether any such employee was ever removed and, if not, why he was not removed. Again, the interrogatory asks whether the employee had been previously disciplined.

In my view, this interrogatory raises two distinct areas of inquiry: (1) the disciplining of any DEA employee for making a false statement and the removal or non-removal of any such employee; and (2) the prior disciplinary history of the employee.

*Interrogatory Number 14*. This interrogatory seeks information about the filing of complaints of discrimination against 12 persons. Specifically, it requests the particulars of each complaint and then asks if a lawsuit was filed and, if so, the particulars of the lawsuit. While I do not accept the AG's view that this constitutes [*7] 12 separate interrogatories, I do believe that it raises two distinct areas of inquiry: (1) the particulars of the complaints filed against these individuals; and (2) the particulars of the lawsuits filed.

*Interrogatory Number 15*. This interrogatory seeks information about a white female DEA employee who was accused of shoplifting. It asks for the particulars of any criminal charge brought against her and whether the DEA investigated the charges, whether disciplinary charges were brought against her, the disposition of those

charges, and finally whether she was employed by the DEA after the date of the criminal offense.

In my view, this interrogatory raises three distinct areas of inquiry: (1) the proffering of criminal charges against this woman; (2) the investigation of them by the DEA and any resulting disciplinary charges; and (3) the woman's employment history after the date of any criminal offense.

*Interrogatory Numbers 8, 11, and 12*. Each of these interrogatories seeks information regarding a certain topic and then requests documents relating to that subject area. "Clearly, [a demand for information and a demand for the documents that pertain to that event] are [*8] two distinct demands because knowing that an event occurred is entirely different from learning about the documents that evidence it occurred. Thus, a demand for information about a certain event and for the documents about it should be counted as two separate interrogatories," not one. Banks, 222 F.R.D. at 10.

By my arithmetic, as of Interrogatory Number 15, plaintiff in fact propounded 25 interrogatories (not 15), and the AG was not obliged to answer any more, although he did. I appreciate that plaintiff seeks to expand the number of the interrogatories she can propound but, as I have explained, Judge Huvelle rejected her demand for 50, meaning that the number of interrogatories plaintiff was permitted reverted to the 25 allowed by the Federal Rules of Civil Procedure. Moreover, courts should not condone disobedience to a rule's requirements by permitting a party to violate them and then, after the fact, seek permission to justify that disobedience retroactively.

I will now turn to the AG's objections to the first 15 interrogatories for those are the only ones plaintiff was permitted to propound. I will begin with her assertion that Judge Huvelle's order restricting [*9] discovery should be reconsidered and plaintiff should be permitted to seek greater discovery than Judge Huvelle ordered.

**B. Discovery Restrictions Set by Judge Huvelle and Whether the Restrictions Should Be Alleviated**

Having heard argument as to the scope of discovery, Judge Huvelle issued the following order:

> **FURTHER ORDERED** that on or before August 2, 2004, defendant shall produce information regarding all disciplinary actions taken by Mr. Marshall at the DEA's Office of Chief Counsel and/or Ms. Reeves at the Office of Attorney and Professional Management against DEA personnel between February 1998 and November 2001. This Order is not meant to cover the specific individuals named by plaintiff, and defendant may, if appropriate, object to the production of this requested information to the extent that it is not covered by the prior sentence. To the extent that plaintiff is dissatisfied with the defendant's production or with the scope of this paragraph, she must file a motion to compel on or before August 23, 2004, and she need not confer with chambers before filing such a motion.

Order, July 20, 2004, at 2.

Plaintiff insists that she is entitled [*10] to engage in what can be called "national discovery." She wants, for example, the particulars of any charge of misconduct lodged against any attorney of the DOJ in the ten-year period prior to the termination of her employment (Interrogatory Number 5), the names and detailed particulars of any criminal charges against any persons employed by the DOJ since 1985 (Interrogatory Number 9), and the names of any attorneys employed by the DOJ charged with misconduct since January 1, 1985 and the detailed particulars of those cases (Interrogatory Number 12).

This and similar discovery is well beyond the reach of the discovery permitted by Judge Huvelle, and plaintiff seeks to expand the discovery she is allowed to pursue.

I begin with the premise that prior acts of discrimination or retaliation are relevant to establish motive and intent. The proponent of such evidence may use it to show that, since a person accused of discrimination or retaliation acted with a discriminatory or retaliatory animus on an earlier occasion, it is more likely than not that he acted with the same animus when he committed the act claimed by the plaintiff to be discriminatory or retaliatory. Allen v. Perry, 279 F. Supp. 2d 36, 46 (D.D.C. 2003) [*11] and cases cited therein.

As is first obvious, discovery in the ordinary course should be restricted to the acts of the persons claimed to have discriminated or retaliated against plaintiff. Plaintiff rejects such a limitation and demands information as to the entire DOJ or the entire DEA, a division or agency within the DOJ, for a 15-year period. According to plaintiff, since all the lawyers who work in the either the DOJ or DEA are held to the same national standards, it supposedly follows that evidence of how any of them has or has not been disciplined is a fit comparison to how plaintiff was disciplined. Motion to Expand Scope of Discovery Order Dated July 20, 2004 and to Compel Answers to Interrogatories and Responses to Request for Production of Documents ("Mot. to Expand and Comp.")

at 6-7. But, that a lawyer whose behavior deviated from national standards in Houston was not disciplined for an offense similar to plaintiff's casts no light whatsoever on the motive or intent with which the persons who disciplined plaintiff acted. This is not a national class action in which all the African Americans who make up a national class are claiming a national pattern or practice and [*12] therefore legitimately inquiring as to how all African Americans are disciplined compared to their white or Hispanic colleagues. It is an individual action where plaintiff is obliged to prove that she was the victim of racial discrimination or retaliation. How superiors disciplined other people anywhere in the country in the DOJ or the DEA for the 15-year period plaintiff demands cannot possibly make any more likely that the persons who disciplined her were motivated by a discriminatory or retaliatory animus.

Plaintiff's extreme position is hardly supported by the cases she cites that she says stand for the proposition that the persons to whom she wishes to compare herself ("comparators" n3) need only be disciplined for acts of similar misconduct or comparable seriousness and that it is unnecessary to establish that she and the comparators had the same supervisors. Id. at 5-7.

n3 A "comparator" is "one that compares something to be measured with a standard measure." Webster's Third New International Dictionary 462 (1976). In Title VII cases, however, it has come to mean another human being to whom one person, most often plaintiff, is being compared.

[*13]

In Anderson v. WBMG-42, 253 F.3d 561 (11th Cir. 2001), the defendants took the extreme position that the action of the comparators must be "the same or nearly identical" and that comparators cannot, as a matter of law, be similarly situated to the plaintiff unless they were disciplined by the same supervisor. Anderson, 253 F.3d at 565. The Eleventh Circuit rejected such a technical construction in favor of the principle that, in a case based on disparate discipline, it sufficed to show that plaintiff and the comparators had engaged in similar rather than identical misconduct and that they had worked in an organization in which plaintiff and the comparators "fell within the primary responsibility of one middle manager and the same supervisory chain of command." Id. at 566. That case therefore emphasizes the need to show the similarity of the conduct that led to the disciplining of a plaintiff and her comparators and that, as a minimum, plaintiff and her comparators worked within the same chain of command within an organization. The case can hardly be cited for the proposition that plaintiff is entitled to national discovery of every [*14] incident of discipline anywhere in the United States. Indeed, in emphasizing the necessity of plaintiff and the comparators working within the same chain of command, it underscores the correctness of Judge Huvelle's limiting discovery to other discipline administered by the persons who disciplined plaintiff.

In McGuinness v. Lincoln Hall, 263 F.3d 49 (2d Cir. 2001), the court was dealing with whether plaintiff met her "minimal burden" of establishing a *prima facie* case because she was offered a less favorable severance package than a comparator. McGuinness, 263 F.3d at 53. A magistrate judge had dismissed the case, concluding that plaintiff was required to show that she and the comparator had reported to the same supervisor and had been subject to the same standards of performance and engaged in similar conduct, claimed to justify their terminations, "without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it." Id. at 51. The court of appeals reversed that determination, finding that the magistrate judge's reading of an earlier precedent, Shumway v. United Parcel Service, Inc., 118 F.3d 60 (2d Cir. 1997) [*15] , was too narrow. At the stage of assessing whether a plaintiff has made out a *prima facie* case, plaintiff need not show identical circumstances with her comparator in all pertinent respects. It sufficed to show that the plaintiff and the comparator were "similarly situated in all material respects" - not in all respects. McGuinness, 263 F.3d at 54 (quoting Shumway, 118 F.3d at 64). Again, the court's emphasis on the need to show that plaintiff and the comparators be "similarly situated in all material respects" hardly supports plaintiff's demand for national discovery for 15 years.

Viewed against the case law, Judge Huvelle's definition of the scope of discovery was most reasonable. The time restriction Judge Huvelle imposed is coterminous with the tenure of the official who proposed plaintiff's removal (Donnie Marshall) and the one who issued the final decision (Catherine Reeves) and will universally capture every disciplinary action they took while at the Department. Indeed, it will capture all disciplinary actions, irrespective of their seriousness or comparability to plaintiff's conduct and discipline. By giving plaintiff the universe of [*16] all previous disciplinary actions taken by the two persons who either proposed or took disciplinary action against her, Judge Huvelle gave plaintiff the entire universe of complaints that could possibly be evidence of prior acts of discrimination by Marshall or Reeves.

**C. Plaintiff's Complaints Regarding the AG's Responses to Interrogatories**

Having concluded that Judge Huvelle's order should not be reconsidered, I turn to plaintiff's complaints as to the AG's responses to her first 15 interrogatories, other than her complaint that the AG should not be permitted to answer them in accordance with the restrictions ordered by Judge Huvelle.

*Interrogatory Number 3.* Plaintiff complains that she was not given the race of two of the employees disciplined by Catherine Reeves who I will call "Mr. F" and "Mr. S" to protect their privacy. In the interests of expedition, I will ask counsel for the AG to call Mr. F and Mr. S and to provide plaintiff with their races.

*Interrogatory Number 4.* In a single word, plaintiff complains that the AG's response to this interrogatory was "unresponsive." I have reviewed the defendant's response, and finding it to be adequate, I will not compel [*17] any further response.

*Interrogatory Number 5.* Plaintiff complains that the AG's response does not include certain actions taken during February 1998. Again, in the interest of expedition, I will order the AG to supplement his response to include any DOJ attorney who was charged with misconduct by the entity the AG calls OARM during February 1998.

*Interrogatory Number 6.* Plaintiff complains that the AG has not identified the custodian of certain computer files, but the AG has indicated there is no custodian, *per se*. There is nothing more to compel.

*Interrogatory Number 11.* Plaintiff complains that the AG failed to adequately respond to this interrogatory and to produce all records regarding the investigation of whether a certain employee made a false statement when he stated that he faxed a document to the Merit Systems Protection Board. Although I find the AG's written response to be adequate, I will order that the defendant supplement its response to Interrogatory Number 11 with any documentation regarding the incident that was the subject of this inquiry.

*Interrogatory Number 14.* Plaintiff complains that the AG did not answer this interrogatory appropriately [*18] because the defendant did not provide information about whether complaints of discrimination were filed against certain persons. However, the AG did provide information about Marshall and Reeves, the individuals alleged to have proposed and imposed disciplinary action against plaintiff. As to the other individuals, plaintiff has made no showing that they were plaintiff's supervisors or otherwise within the chain of command. Absent a showing that the information she seeks is likely to lead to relevant evidence, I will not compel any further response from the AG.

**D. Plaintiff's Complaints Regarding the AG's Responses to Requests to Produce Documents**

In her submissions to the court, plaintiff refers to what she calls "plaintiff's positions." I will address each request in which she sets forth her position, assuming in her favor that a statement of position means that she is claiming that the defendant's response is inadequate.

*Request Number 2.* As to this request, plaintiff states only that "the Defendant has failed to produce the above referenced documents." Addendum to Motion to Expand Scope of Discovery Order Dated July 20, 2004 and to Compel Answers to Interrogatories [*19] and Responses to Request for Production of Documents at 8. The AG, however, explains that he has produced the documents. Defendant's Opposition to Plaintiff's Motion to Expand Scope of Discovery Order Dated July 20, 2004 and to Compel Answers to Interrogatories and Responses to Requests for Production of Documents at 26. Since I have no reason to disbelieve the AG's representation, and plaintiff offers no explanation for her assertion that the AG has not produced the documents, there is nothing to compel.

*Request Number 16.* This request seeks information about an allegation that Ms. H violated DEA standards of conduct in connection with a travel voucher. The AG objects on the grounds that this information is not within the scope of Judge Huvelle's order and that, in any event, information pertaining to Ms. H's travel vouchers is irrelevant. Def's. Ex. 3, at 18-19. Plaintiff does not show that Ms. H's conduct led to her being disciplined during the relevant time period or that the discipline imposed or the decision not to impose it was made by Reeves or Marshall. In the absence of such a showing, the AG's objection is legitimate. Additionally, as I have explained, the cases [*20] cited by plaintiff herself require a showing that the comparator and the plaintiff's circumstances were similar in all material respects and that they at least work within the same chain of command. In the absence of such a showing, it cannot be said that documents as to Ms. H's behavior are likely to lead to any evidence relevant to plaintiff's claims or the defendant's defenses.

*Request Number 33.* In this request, plaintiff asked for documents that pertain to the arrest of DEA employees whom DEA did not investigate or discipline. The AG responded:

> Defendant objects to this request as unanswerable as stated. The absence of an investigation by OPR or other appropriately designated authority necessarily means the absence of an investigative file, which, in turn, means

> that the DEA's Board of Professional Conduct has no evidence upon which to determine charges.

Def's. Ex. 3, at 28.

Plaintiff charges that the AG should look beyond the files of the Board of Professional Conduct because responsive documents "may be in the files of other offices of DEA, such as the Office of Personnel, a supervisor's office, or even OPR." Plaintiff's Reply to Defendant's Opposition [*21] to Plaintiff's Motion to Expand Scope of Discovery Order Dated July 20, 2004 and to Defendant's Opposition to Plaintiffs' Motion to Compel Answers to Interrogatories and Responses to Requests for Production ("P's. Reply") at 19. Thus, plaintiff would have the AG search every supervisor's office anywhere in the United States for an indefinite period of time for an indication that a DEA employee was arrested but not investigated. As is first obvious, that exceeds the scope of the restriction imposed by Judge Huvelle by a remarkable margin. Furthermore, as just explained, at a minimum, plaintiff has to show that the persons not disciplined were at least within the chain of command in which she worked. This request clearly seeks information beyond the proper scope of discovery in this case, and no further response will be compelled.

*Request Number 38.* Plaintiff seeks documents pertaining to an investigation of her for having more than one Social Security number. But, the AG points out that such an allegation had nothing to do with the discipline that was imposed and that Marshall and Reeves, the persons who either proposed that she be disciplined or imposed the discipline, were [*22] unaware of any such allegation. Def's Ex. 3, at 30. Given that this allegation had absolutely nothing to do with plaintiff's being disciplined, documents pertaining to it are unlikely to lead to relevant information, and I will not compel any greater response.

*Request Numbers 39, 47-50.* Plaintiff sought all documents that pertained to any allegation that an attorney in the DEA's Office of Chief Counsel committed an act of misconduct. The AG objected and referred to its objection to Request 19(1). Nevertheless, plaintiff represents that the AG objected to this request citing Judge Huvelle's order. P's. Reply at 20-21. Since the AG did not object to this request on that basis, plaintiff has indicated the wrong number of the request. In any event, whatever she was intending to object to, I have already disposed of her contention that the restriction that Judge Huvelle imposed on discovery should be reconsidered, and I will not compel any further response to this or any other request in which the AG has restricted his production to documents that fall within the scope of Judge Huvelle's order.

Plaintiff's objections to Request Numbers 47-50 all suffer from the same defect, overbreadth, [*23] and can be summarized briefly in the following chart:

| | |
|---|---|
| # 47 | Documents in effect since 1984 that set forth disciplinary practices |
| # 48 | Documents in effect since 1985 pertaining to penalities to impose for acts of misconduct |
| # 49 | Documents in effect since 1989 pertaining to initiating or conducting investigations |
| # 50 | Documents in effect since 1987 pertaining to referrals by DEA to DOJ's Office of Inspector General or Office of Professional Responsibility |

Despite plaintiff's claim that she has "narrowed" her requests, n4 she still seeks documents that set forth procedures and penalties that were in effect a decade before the pertinent period of time described in Judge Huvelle's order and before she was disciplined. Her request is patently beyond the scope of discovery as defined by Judge Huvelle and is utterly unlikely to lead to evidence that is relevant to her claim or the AG's defense.

n4 See Supplement to Motion to Expand Scope of Discovery Order Dated July 20, 2004 and to Compel Answers to Interrogatories and Responses to Request for Production of Documents ("Supp. Mot.") at 8, 9.

[*24]

*Request Number 51.* Plaintiff seeks documents pertaining to Mr. W who, the AG explains, was removed from federal service in 1996. The AG also indicates that neither Marshall nor Reeves proposed his removal or decided that he should be removed. Since this matter falls outside the scope of discovery ordered by Judge Huvelle, the AG's objection must be sustained. Plaintiff lamely argues that Judge Huvelle's order does not control

because Mr. W complained of retaliation and not about the manner in which he was disciplined. Supp. Mot. at 13. But, only retaliation by either Marshall or Reeves in an earlier case could pertain to their motive and intent in the manner in which they disciplined plaintiff. Since they were not involved in any way in the case against Mr. W, the actions of others have nothing to do with plaintiff's claim or the AG's defense.

*Request Number 52*. In this request, plaintiff seeks documents pertaining to an incident in Albuquerque, New Mexico involving plaintiff and another man. The AG objected on the grounds that the request was beyond the scope of discovery as defined by Judge Huvelle and then stated, on information and belief, that the event occurred in [*25] the mid-1990' s and that there were no documents responsive to this request. Plaintiff objects to the representation being made on information and belief. That point is well taken, but if this incident was not considered by Marshall and Reeves when Marshall proposed disciplining plaintiff and Reeves imposed it, documents pertaining to it are, as I have already indicated, not likely to lead to relevant evidence. The AG will therefore have to supplement its answer by indicating whether Marshall or Reeves considered this incident when plaintiff was disciplined.

**E. The AG's Invocation of the Work-Product Privilege**

The AG claimed that thirty responsive documents were privileged and submitted a privilege log. Plaintiff takes exception to some of the thirty documents. Mot. to Exp. and Comp. at 12. Given that there are only a small number of documents at issue, I will order the AG to produce them *in camera* and then rule on the privilege claims.

**F. The Deposition of Former Drug Enforcement Administrator Donnie Marshall**

As noted several times earlier, Donnie Marshall proposed that plaintiff be disciplined. A hearing concerning this matter was held before the Merit Systems [*26] Protection Board, during which Marshall testified under oath and was cross examined by the lawyer who represented plaintiff. Plaintiff now wants to depose Marshall, but the AG has moved that the court protect Marshall from being deposed.

A protective order may be issued to protect a party or person from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). Invoking this authority, the federal courts have protected government officials from being deposed unless the information sought from them cannot be obtained from any other source and they have some personal knowledge about the matter. Lederman v. Giuliani, 2002 U.S. Dist. LEXIS 19857, No. 98 Civ. 2024, 2002 WL 31357810, at *2-3 (S.D.N.Y. Oct. 17, 2002); Alexander v. FBI, No. CIV. 96-2123, No. CIV. 97-1288, 1999 WL 270022, at *2 (D.D.C. Apr. 12, 1999). This use of the federal courts' power to issue protective orders is motivated by the obvious interference with their official duties that would occur if such officials could be deposed as easily as anyone else. Alexander, 1999 WL 270022, at *2. This difference in treatment has been extended [*27] to former public officials upon the theory that being subjected to depositions as to many matters that fell within their jurisdiction might deter capable people from entering public service. United States v. Wal-Mart Stores, 2002 U.S. Dist. LEXIS 6929, No. CIV. A. PJM-01-CV-152, 2002 WL 562301, at *1-2 (D. Md. March 29, 2002).

The AG understandably points to Marshall's former testimony as establishing that plaintiff cannot possibly show that the information she seeks to secure from him is unavailable from another source. Plaintiff already has it in the form of a transcript. But, it must be recalled that the discovery purpose of a deposition is different from the examination of a witness at a trial or hearing. Moreover, it must be remembered that this case does not involve judicial review of agency action upon an agreed-upon record. Compare Cmty. Fed. Sav. & Loan Assoc. v. Fed. Home Loan Bank Bd., 96 F.R.D. 619, 621 (D.D.C. 1983). A Title VII case is *de novo*, n5 irrespective of earlier proceedings before the EEOC or the Merit Systems Protection Board and Marshall, as a decision maker, has actual, personal knowledge of how plaintiff came to be disciplined and ultimately fired. [*28]

n5 Cf. Alexander v. Gardner-Denver Co., 415 U.S. 36, 59-60, 39 L. Ed. 2d 147, 94 S. Ct. 1011 (1974).

With that said, it must also be recalled that plaintiff could only claim that Marshall has information not otherwise available from another source (*i. e.*, the transcript of his testimony) if he is asked questions that were not already asked of or answered by him previously. I will therefore permit Marshall to be deposed for a four-hour period during which plaintiff may not ask him questions that were previously asked of him. I will order the AG to provide me with a transcript of his prior testimony, and I will remain available during the deposition by phone call. If the AG advises me that plaintiff is asking the same questions that were asked of Marshall during the hearing, and that proves to be true, I will stop the deposition immediately.

An Order accompanies this Memorandum Opinion.

JOHN M. FACCIOLA

UNITED STATES MAGISTRATE JUDGE

January 25, 2005

**ORDER**

In accordance with the Memorandum [*29] Opinion issued simultaneously herewith, it is, hereby, **ORDERED** that:

1. Plaintiff's Motion to Expand Scope of Discovery Order Dated July 20, 2004 and to Compel Answers to Interrogatories and Responses to Request for Production of Documents [# 43] is **DENIED in part and GRANTED in part**; and it is **FURTHER ORDERED** that

2. Plaintiff's Supplement to Motion to Expand Scope of Discovery Order Dated July 20, 2004 and to Compel Answers to Interrogatories and Responses to Request for Production of Documents [# 44] is **DENIED in part and GRANTED in part**; and it is **FURTHER ORDERED** that

3. Defendant's Motion to Quash Subpoena and to Enter a Protective Order Vacating Plaintiff's Notice of Deposition to Former Drug Enforcement Administrator Donnie Marshall [# 51] is **DENIED in part and GRANTED in part**, provided, however, that the deposition of Marshall may not take more than four hours and plaintiff may not ask Marshall any questions to which he previously replied under oath while testifying before the Merit Systems Protection Board; and it is **FURTHER ORDERED** that

4. Defendant's Motion to Strike Plaintiff's Reply Memorandum [*30] to Plaintiff's Motion to Expand Scope of Discovery Dated July 20, 2004 and to Compel Answers to Interrogatories and Responses to Request for Production of Documents [# 55] is **DENIED**; and it is **FURTHER ORDERED** that

5. Plaintiff's Motion to Late File Plaintiff's Second Motion to Compel Documents [# 58] is **GRANTED**; and it is **FURTHER ORDERED** that

6. The defendant shall produce for the Court's *in camera* inspection all documents it claims to be privileged within 7 days of the date of this Order; and it is **FURTHER ORDERED** that

7. The defendant shall supplement its discovery responses in accordance with the accompanying Memorandum Opinion within 7 days of the date of this Order.

**SO ORDERED.**

JOHN M. FACCIOLA

UNITED STATES MAGISTRATE JUDGE

January 25, 2005