Todd C. Emerson, A8175
SkyWest Airlines, Inc.
444 S. River Road
St. George, UT 84790
Telephone: (435) 634-3530

Scott M. Petersen, A7599
David N. Kelley, A9137
FABIAN & CLENDENIN,
A Professional Corporation
215 South State Street, 12th Floor
P.O. Box 510210
Salt Lake City, Utah 84151
Telephone: (801) 531-8900

Attorneys for Defendant

FILED
2005 -3 P 5:32
U.S. DISTRICT COURT
DISTRICT OF UTAH

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH, CENTRAL DIVISION**

ANDREW DAVID CALLAWAY

Plaintiff,

vs.

SKYWEST AIRLINES INC., a Utah Corporation,

Defendant.

**OBJECTIONS TO MAGISTRATE ORDER GRANTING ONLY LIMITED DISCOVERY FROM POLAR AIR**

Civil No. 2:04CV00179

Judge Ted Stewart

Magistrate Samuel Alba

Pursuant to Rule 72(a), Federal Rules of Civil Procedure, Defendant SkyWest Airlines, Inc. ( "SkyWest") submits the following objections to Magistrate Alba's May 25, 2005 Order, and requests that the Court expand the scope of the Magistrate's order as explained below.

## FACTUAL BACKGROUND

Plaintiff David Andrew Callaway claims he was wrongfully terminated as a pilot for Defendant SkyWest. Accordingly, he has brought the following causes of action against SkyWest; wrongful termination in violation of the Railway Labor Act ("RLA") and public policy, breach of an alleged implied employment contract, and violations of federal wiretapping laws.

Mr. Callaway seeks, among other remedies, back and front pay. As one of its affirmative defenses, SkyWest claims that Mr. Callaway is not entitled to such damages because he has failed to mitigate his damages by properly seeking for, and obtaining, other suitable employment.

In the course of discovery, SkyWest learned that Mr. Callaway had applied for a pilot's position with a cargo airline named Polar Air. Nonetheless, Mr. Callaway was not offered the job. Also during discovery, SkyWest received, via facsimile, a Pilot Records Improvement Act ("PRIA") request relating to Mr. Callaway. A PRIA request is a request on a federal form that a potential employer airline sends to an applicant's former airline seeking certain information. The air carrier name on the PRIA request appeared to correspond to the holding company for Polar Air (Atlas Air World Holding). (Affidavit of Jacqueline Nielsen, ¶ 9). Accordingly, SkyWest assumed the request was from Polar Air given that Polar Air was one of the company's listed by Mr. Callaway that had provided him a job interview. *Id.*

SkyWest's assumption was further supported by a letter from Mr. Callaway's counsel, Erik Strindberg. In an October 8, 2004 letter, Mr. Strindberg chastised SkyWest and its in-house counsel, Mr. Emerson, for allegedly failing to timely respond to "Polar Air's request under PRIA." (Letter from Eric Strindberg to Todd C. Emerson, dated October 8, 2004, attached as

Exhibit "B"). In a letter dated the same day, Mr. Strindberg informed SkyWest's outside counsel, Mr. Petersen, that Mr. Callaway "did not go for training [at his new job with Polar Air] because SkyWest never responded to the PRIA request. Therefore he was never extended a job offer." A copy of this October 8, 2004 letter is attached as Exhibit "C".

Shortly thereafter, SkyWest responded to the PRIA request by sending, via facsimile, the required information. (Nielsen Aff., ¶ 8). SkyWest also called Polar Air to confirm receipt of SkyWest's response. Polar Air responded that they did not have any information about Mr. Callaway, that they had not sent SkyWest the identified PRIA Request, and that Tiffany Cotter was not a Polar Air employee. (Nielsen Aff., ¶ 10). At this point, SkyWest noticed that although the Air Carrier Name on the PRIA request appeared to correspond to the holding company for Polar Air, Inc., the Air Carrier Certificate number was <u>not</u> that of Polar Air, Inc. (Nielsen Aff., ¶ 11).

To resolve the confusion, and to figure out why Mr. Callaway did not get the pilot position with Polar Air, SkyWest sought to subpoena Mr. Callaway's application and any related documents from Polar Air. Mr. Callaway filed a motion for protective order seeking to prevent SkyWest from contacting <u>any</u> potential future employer, including Polar Air. SkyWest opposed the motion and argued that although SkyWest denies any wrongdoing, SkyWest must be given the opportunity to defend itself against Mr. Callaway's damages claim by determining whether or not Mr. Callaway has properly mitigated his damages.

After a hearing on Mr. Callaway's motion, the Magistrate entered a protective order preventing SkyWest from contacting any potential future employer named by Callaway, including Polar Air. (Order Granting Callaway's Motion for Protective Order at ¶ 1). The

Magistrate suggested that there may be less intrusive ways for SkyWest to obtain the information it needed for its defense, including additional deposition testimony from Mr. Callaway, deposing Mr. Callaway's friend, Tiffany Cotter, and obtaining certain identified voicemail messages from Mr. Callaway. *Id.* However, the Magistrate invited SkyWest to file the appropriate motion to obtain the requested information if it could not get what it needed after taking the steps outlined above. *Id.*

SkyWest used the opportunity to depose Mr. Callaway about the issue. From the deposition, SkyWest learned that the PRIA request it had received was a falsified document prepared by Mr. Callaway and sent by his friend Tiffany Cotter, who does not work for Polar Air or any other airline. (Nielsen Aff., ¶¶ 3-5; Deposition of Andrew David Callaway at 293-95, attached as Exhibit "D", hereafter "Callaway Dep."). Also during his deposition, Mr. Callaway conceded that he had been offered pilot training from Polar Air, that he had turned it down, and that an offer of pilot training was a tentative job offer. (Callaway Dep. at 458).

Mr. Callaway further testified that he was unable to attend the training because he was in the middle of 737 training, and that Polar Air indicated they would give him another opportunity for pilot training. (Callaway Dep. at 475-76). Callaway testified that Polar Air never gave him a second opportunity for training and he has "absolutely no idea" why not. (Callaway Dep. at 462). Nonetheless, Mr. Callaway believes the reason he was not given a second opportunity is because either (1) SkyWest failed to properly respond to the PRIA request he claims Polar Air sent to SkyWest[1] (Callaway Dep. at 478-79; Letter from Eric Strindberg to Scott Petersen dated October

---

[1] Callaway testified that he was getting the runaround from Polar Air. (Callaway Dep. at 478-79). When asked why he believed he was getting the runaround, Callaway responded, "Well, the

8, 2004, attached hereto as Exhibit "C"), or (2) SkyWest contacted Polar Air by telephone to confirm receipt of SkyWest's response to what SkyWest believed at the time was an appropriate PRIA request. (Callaway Dep. at 482). SkyWest maintains that to the present, it has never received a PRIA request from Polar Air relating to Mr. Callaway. (Nielsen Aff., ¶ 4).

It is SkyWest's position that the only way to know (1) whether Mr. Callaway actually applied for a position with Polar Air, (2) whether he was offered tentative employment, and (3) why Mr. Callaway was not hired by Polar Air, is to obtain answers from the source, Polar Air. SkyWest also contends that any telephone call from SkyWest to Polar Air to confirm receipt of a response to Mr. Callaway's false PRIA was a result of Mr. Callaway's fraudulent actions and that the telephone call did not hinder Mr. Callaway's chances for employment with Polar Air.

Pursuant to the Magistrate's order, SkyWest has made every reasonable attempt to obtain the information through other means, but has been unsuccessful in obtaining the needed information.

First, SkyWest has obtained the voicemail messages allegedly left by a Polar Air representative for Mr. Callaway. These voicemails, if true, simply point out that Mr. Callaway was offered pilot training. They beg the question: Why wasn't Mr. Callaway hired by Polar Air if they had already offered him pilot training?

Second, SkyWest took Mr. Callaway's deposition and questioned him at length regarding the PRIA request he created and sent to SkyWest, the alleged PRIA request he claims Polar Air faxed to SkyWest, his relationship with Tiffany Cotter, and his attempts, if any, to contact Polar

---

one – the PRIA request, if – if they sent the background records back to them, they would have put me in service." *Id.*

Air to follow up with the PRIA request or to continue to pursue employment with the company. Mr. Callaway testified that he instructed Tiffany Cotter to send the PRIA request with a falsified name and airline number to SkyWest. (Callaway Dep. at 435-36). Mr. Callaway also testified that he did not have a copy of his application to Polar Air, and that he had not even attempted to obtain a copy. (Callaway Dep. at 456).

Third, SkyWest prepared two separate subpoenas that it attempted to serve on Tiffany Cotter using two different process serving companies. However, in his deposition, Mr. Callaway admitted that after he learned that SkyWest wanted to depose Ms. Cotter, he sent her an e-mail suggesting to her that if she did not want to be deposed, she should not answer the door. (Callaway Dep. at 414-16). She has avoided service ever since.

Therefore, subsequent to the Magistrate's protective order, SkyWest filed a motion seeking Court approval to subpoena the appropriate records of Polar Air and, if necessary, to depose the Polar Air representative most knowledgeable regarding Mr. Callaway's employment efforts, if any. At the hearing, the Magistrate granted SkyWest's motion, but imposed severe limitations. The Magistrate indicated that,

> SkyWest may serve on Polar Air, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, a subpoena for deposition upon written questions to obtain valid responses to (a) why Polar Air has not provided Mr. Callaway any subsequent pilot training, and (b) why Polar Air has not hired Mr. Callaway for the position of pilot for which he applied at Polar Air.

(Order Regarding Defendant's Motion to Vacate Protective Order at 2).

While to some extent this order recognizes SkyWest's right to defend itself, it nevertheless substantially prohibits SkyWest from obtaining critical, relevant information and should therefore be modified to allow SkyWest to subpoena Polar Air's records relating to Mr.

Callaway's employment application and then, as necessary, to take a Polar Air deposition pursuant to Rule 30(b)(6) Fed. R. Civ. P. Without the opportunity to obtain the necessary information, SkyWest is denied the ability to defend itself against Mr. Callaway's damages claim.

## ARGUMENT

## I. THE STANDARD OF REVIEW IS CLEARLY ERRONEOUS OR CONTRARY TO LAW.

Rule 72(a), Federal Rules of Civil Procedure, sets the standard of review of a magistrate judge's order. Rule 72(a) states: "The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." (emphasis added). Applied to this case, Magistrate Alba's decision to restrict discovery was both clearly erroneous and contrary to law.

## II. THE MAGISTRATE HAS IMPROPERLY PREVENTED SKYWEST FROM OBTAINING DISCOVERY REGARDING MR. CALLAWAY'S APPLICATION FOR EMPLOYMENT WITH POLAR AIR.

### A. Polar Air Has Information Relevant to this Case.

Rule 26(b)(1) provides for "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Fed. R. Civ. P. 26(b)(1). "'(t)he scope of discovery has been made very broad and the restrictions imposed upon it are directed chiefly at the use of, rather than the acquisition of, the information discovered.'" *Clayton Brokerage Co., Inc. of St. Louis v. Clement,* 87 F.R.D. 569, 571 (D. Md. 1980) (quoting 8 Wright & Miller, Federal Practice and Procedure § 2001). The burden of limiting the scope of discovery is on the party seeking the protective order. *See Grundberg v. Upjohn Co.*, 137 F.R.D. 372, 389 (D. Utah

1991). "[T]he party seeking the protective order must show good cause by demonstrating a particular need for protection. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 23(c) test." *Grundberg,* 137 F.R.D. at 189 (quoting *Cipollone v. Liggett Group, Inc.* 785 F.2d 1108, 1121 (3rd Cir. 1986)). "[F]ederal courts have been reluctant to limit pretrial discovery when there is a need to search for the truth of allegations." *Berniger v. Denver and Rio Grande Western R.R. Co.,* 139 F.R.D. 175, 177 (D. Colo. 1991) (citing *Univ. of Penn. v. E.E.O.C.,* 493 U.S. 182, 110 S.Ct. 577 (1990)).

Despite reasonable efforts, SkyWest has been unable to procure information about Mr. Callaway's application for employment with Polar Air through alternative methods; in part due to Mr. Callaway's actions.

First, there is a dispute as to whether Polar Air actually sent a PRIA request to SkyWest. Mr. Callaway claims he witnessed one being sent by a Polar Air representative to SkyWest. SkyWest's testimony, however, is that the only PRIA request it received at the time relating to Mr. Callaway was a false request that Mr. Callaway prepared and intended SkyWest to believe was from Polar Air, but in fact was not from any airline. Given this dispute, the only way to know whether Polar Air sent a PRIA request to SkyWest is to ask Polar Air itself, and to inquire as to the details. This is precisely the situation where discovery of the truth requires the testimony of a third party, Polar Air.

Second, there is a dispute as to whether alleged SkyWest behavior impeded Mr. Callaway's job opportunities with Polar Air. Mr. Callaway admitted he was offered a training session at Polar Air, and that when a pilot receives a training offer, he has essentially been given a tentative pilot position. Mr. Callaway also admitted, however, that he declined the training

session with Polar Air allegedly because he was receiving 737 training. Mr. Callaway claims Polar Air said it would offer him another opportunity for training, but that it has not done so for reasons Mr. Callaway cannot explain. However, Callaway blames SkyWest for his failure to obtain employment with Polar Air either (1) because SkyWest failed to timely respond to the PRIA request[2] (that SkyWest alleges it never received) or (2) because SkyWest contacted Polar Air to confirm receipt of a PRIA response that it turns out was bogus and sent by Callaway himself. Given these allegations, the only way to know whether SkyWest had anything to do with Polar Air's decision not to hire Mr. Callaway is to ask Polar Air.

Consequently, the Court should modify the Magistrate's order and allow SkyWest to subpoena Polar Air and conduct any other similar discovery (including a 30(b)(6) deposition) to obtain the truth about Mr. Callaway's testimony regarding the PRIA request or his allegations that SkyWest has somehow "poisoned the well."

### B. SkyWest Is Entitled to Conduct Discovery on Whether Mr. Callaway has Attempted to Mitigate his Alleged Damages.

One of SkyWest's affirmative defenses is that Mr. Callaway has not made reasonable attempts to mitigate his damages by seeking and obtaining other employment. "Unquestionably, wrongfully discharged claimants have an obligation to use reasonable efforts to mitigate their damages." *E.E.O.C. v. Sandia Corp.*, 639 F.2d 600, 627 (10th Cir. 1980); *see also Dilley v. Supervalu, Inc.*, 296 F.3d 958, 966 (10th Cir. 2002) (holding/noting that any back pay award must

[2] In an October 8, 2004 Letter from Eric Strindberg to Scott Petersen, Mr. Strindberg wrote, "[Callaway] did not go for training [at his new job] because SkyWest never responded to the PRIA request. Therefore he was never extended a job offer." In his deposition Callaway indicated he did not approve the language of this letter. Nonetheless, he later asserted that he agreed with the statement. (Callaway Dep. at 481).

be reduced by alternative sources of income that would reasonably have been available to plaintiff). As the Tenth Circuit has stated, "[a] plaintiff's ability to replace some of the income lost by virtue of the wrongful discharge certainly affects how much lost income he is due." *Dilley*, 296 F.3d at 967.

Here, Mr. Callaway admits he had a conditional offer of employment with Polar Air at some point when Polar Air offered him pilot training. (Callaway Dep. at 458). If Callaway had gone to training and started working, SkyWest's potential liability for future wages would have ended. However, Mr. Callaway declined the training date offered by Polar Air, and Mr. Callaway has not been contacted by Polar Air to schedule new dates for training. (Callaway Dep. at 462). SkyWest believes that Mr. Callaway has not been contacted again by Polar Air due to his failure to attend the offered training. It is similar to what took place when Mr. Callaway failed to attend the first pilot training scheduled for him by SkyWest. (Callaway Dep. at 31 & 41). When Mr. Callaway did not present himself for training, many SkyWest employees did not want to hire Mr. Callaway. Nevertheless, Jim Breeze decided to give him another chance, which resulted in Mr. Callaway being hired. (Deposition of Jim Breeze at 23, attached as Exhibit "E").

There is good reason to assume that when Mr. Callaway declined Polar Air's pilot training, Polar Air made the decision not to hire him—an extremely relevant factor in SkyWest's mitigation of damages defense. The severe limitations the Magistrate has placed on SkyWest regarding the scope and method of questioning Polar Air prevent SkyWest from properly defending itself in this action. Therefore, the Court should modify the order and allow SkyWest an opportunity to subpoena relevant documents and fully depose Polar Air as necessary pursuant to Federal Rule 30(b)(6).

## III. MR. CALLAWAY HAS INTERFERRED WITH SKYWEST'S ATTEMPTS TO CONDUCT DISCOVERY.

SkyWest has made reasonable efforts to obtain by other means, the relevant information surrounding Mr. Callaway's application for employment with Polar Air. However, Mr. Callaway testified that he did not have a copy of his application to Polar Air, and that he has made no attempts to obtain the application from them. (Callaway Dep. at 456). Thus, SkyWest cannot obtain the needed information from Mr. Callaway. In fact, SkyWest has been unable to obtain any documentation related to Mr. Callaway's application with Polar Air.

Furthermore, Mr. Callaway has interfered with SkyWest's efforts to subpoena Tiffany Cotter, who sent the false PRIA request to SkyWest with the intent that SkyWest believe it was from Polar Air. This false PRIA request is the only request SkyWest had received at the time that Mr. Callaway claimed SkyWest interfered with his opportunity to obtain subsequent employment with Polar Air. SkyWest attempted to contact Tiffany Cotter regarding her involvement in the falsified PRIA request. Callaway testified that he told Cotter by e-mail that SkyWest intended to depose her and that if she did not want to be deposed, she should not answer the door. (Callaway Dep. at 414-16). Mr. Callaway testified that he sent this email to Tiffany Cotter in January 2005. *Id.* He said, "I just gave her a heads-up of what might be happening I did not know if the subpoena was being issued or not. This was after the last deposition." *Id.* Counsel for SkyWest asked, "Did you tell her to avoid answering her door at her apartment?" *Id.* Callaway responded, "Yes, I believe in the e-mail I said if you do not wish to be served, you don't have to answer your door." *Id.*

In one breath Mr. Callaway told the Magistrate that there are less intrusive methods for SkyWest to obtain information than directly contacting Polar Air, and in the other he told Cotter

that she could avoid service of SkyWest's deposition subpoena. Mr. Callaway cannot have it both ways. Therefore, the Court should modify the Magistrate's order thereby allowing SkyWest to contact Polar Air directly regarding Mr. Callaway's employment application, the alleged PRIA request sent by Polar Air, and Polar Air's reasons for not scheduling Mr. Callaway for training or otherwise formally hiring him as a pilot.

## CONCLUSION

Mr. Callaway seeks back pay and front pay damages. He has a duty to mitigate these damages by seeking other employment. He claims he has properly mitigated by seeking another pilot position with, among other carriers, Polar Air, but that after being offered a tentative position with the company, was never given training and therefore not actually hired. SkyWest is entitled to discover whether Mr. Callaway ever applied for a position with Polar Air, whether Polar Air ever sent a PRIA request to SkyWest, and why Mr. Callaway has not been hired by Polar Air. Only Polar Air knows exactly why it has apparently rescinded the tentative offer made to Mr. Callaway. SkyWest should not be denied access to this information as it is a critical component of its defense to Mr. Callaway's claim for damages.

For the foregoing reasons, the Court should modify the Magistrate's Order and allow SkyWest to subpoena records from Polar Air and depose Polar Air pursuant to the Federal Rules of Civil Procedure.

DATED this 3rd day of June, 2005.

Scott M. Petersen
David N. Kelley
FABIAN & CLENDENIN,
A Professional Corporation

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of June, 2005, I caused to be mailed, by first-class mail, postage prepaid, a true and correct copy of the **OBJECTIONS TO MAGISTRATE ORDER GRANTING ONLY LIMITED DISCOVERY FROM POLAR AIR** to:

Erik Strindberg
Ralph Chamness
STRINDBERG SCHOLNICK & CHAMNESS, LLC
44 Exchange Place
Salt Lake City, UT 84111