overly broad and really distorts what occurred here.

BY MR. PETERSEN:

Q. Go ahead and answer.

A. I don't know.

Q. You don't have an opinion?

A. I don't have an opinion.

Q. Would it make a difference that somebody off the street that fills this out and sends it in and then follows it up with a letter saying, Where's the information? Does that change your opinion?

MR. STRINDBERG: Same objection. It's overly broad.

BY MR. PETERSEN:

Q. Go ahead.

MR. STRINDBERG: Facts--

THE WITNESS: I don't have an opinion on that.

MR. STRINDBERG: Facts of this hypothetical aren't set forth with specificity.

BY MR. PETERSEN:

Q. Okay. Go ahead.

A. I don't have an opinion on it. In this case, it was necessary.

Q. Necessary in what way?
A. Well, you never sent the records out.
Q. So that makes the PRIA request and the subsequent follow up letter necessary.
A. You still never sent the request out.
Q. Is that why--is that your testimony as to why it was necessary?
A. Yes.
Q. Okay. Are you aware as to whether Polar Air had any discussions with SkyWest about PRIA requests?
A. I believe you guys, you know, called Polar Air.
Q. Do you have any independent knowledge of any conversations of that nature?
A. What do you mean by independent knowledge?
Q. Well, I'm assuming you're giving your testimony based on testimony you've heard by the depositions we've had in this case.
A. Yes. Yeah.
Q. You haven't had any separate discussions with Polar Air about PRIA requests.
A. No.
Q. If Polar Air sent a PRIA request, you

wouldn't know it, would you?
A. Yes, I would, because I filled out the same section on their request form to have the documents sent to me.
Q. All right. And how would you know whether, in fact, they sent it?
A. I saw them fax it.
Q. But you don't recall the fax number they used.
A. I don't.
Q. You don't even remember the name of the lady who did it.
A. I don't.
Q. You can't even identify what she looked like.
A. No.
Q. All you recall is she's in Florida, right?
A. Yes, I was in Miami.
Q. But you didn't follow up with them to say, Hey, I thought you sent a PRIA request, and SkyWest claims they didn't get it. Would you make sure that you sent it? You didn't do anything like that.
A. I didn't do that, no.

Q. And they haven't sent you anything saying, We sent a PRIA request and not received anything back, have they?
A. No.
Q. So let's say that she punched in the wrong fax number and sent it off into la-la land. You wouldn't have any personal knowledge as to whether, in fact, that happened, right?
A. No.
Q. And nobody at Polar Air indicated to you that, Yeah, here's the fax confirmation sheet showing it went through.
A. No.
Q. In fact, did you even see--are you--can you testify with surety that what she put on that fax machine was the PRIA request, or you just saw her put a document on a fax machine and you assumed it was the PRIA request?
A. I'm pretty sure she faxed the PRIA request.
Q. All right. And you're sure because . . .
A. Because I filled it out. They collected them. And I saw them fax them. I don't know what--you know, I mean . . .

Q. Could it have been a fax to another department internally?
A. I'm sure anything could be possible. Yeah, maybe it was. Maybe it was sent to someone that was--to send it to you, to SkyWest. If they're going to hire someone, they're going to submit the request.
MR. PETERSEN: All right. Give me five minutes. And I may be done.
THE VIDEOGRAPHER: We're going off the record. The time is 3:00 p.m.
(Recess taken, 2:59-3:10 p.m.)
THE VIDEOGRAPHER: We're back on the record. The time is 3:10 p.m.
BY MR. PETERSEN:
Q. All right. Mr. Callaway, I want to know exactly how many discussions with Ms. Cotter you had since--you talked about one in October of 2004, right?
A. Yeah. She left a message in October 2004--or November. I don't remember--
Q. October, November. And the substance of that was . . .
A. She just said that she had received--finally received the--my background--my--I guess,

employee records. And she wanted to know what to do with them. And if I didn't call her back and--or if she didn't hear from me, she was just going to throw them out.

Q. Was your relationship with her--had it gone south by that time? Were you still friends?

A. I had decided after September to basically not talk to her.

Q. Why not?

A. There were some things that she'd just--her personality that I don't like, some attributes that I--and some things that she had done that really disturbed me.

Q. What were the things that she did to disturb you?

A. Just the way she acted and behaved towards myself and other friends on a trip to Spain, comments that she made about other people that I didn't care for.

Q. Was--were you dating her at any time?

A. Absolutely not. Never was.

Q. She just went to Spain with you.

A. About ten people did.

Q. She was one of those.

A. Yes.

Q. Stay in the same room with her?
A. The same house, not the same room. She had her own room.
Q. Did you pay her to prepare any of this information for you?
A. Absolutely not.
Q. Did she ask to be paid?
A. Nope.
Q. Who paid the long-distance--she didn't ask you to pay her for any long-distance telephone calls?
A. No.
Q. Or fax--
A. No.
Q. --information?
A. No.
Q. All right. We can have an exhibit to be marked.

Exhibit-49 marked

BY MR. PETERSEN:
Q. Now, you testified earlier that you have no idea why Polar Air hasn't asked--given you another training date. Is that right?
A. I don't know why.
Q. All right. I want to show you what's

been marked as Exhibit 49. Have you ever seen that document?

A. Yes, I've seen this document.

Q. It's a letter that was sent by your attorney to me sometime in October.

A. Uh-huh (affirmative.)

Q. Yes?

A. Yes.

Q. And the last sentence of the letter, do you see that?

A. Yes.

Q. It says, "For your information, Mr. Callaway did not go for 'training' because SkyWest never responded to the PRIA request."

A. Yeah.

Q. Is that true?

A. Seems likely. I don't know if that's the exact--you know, if that's the reason or not.

Q. It's not what you said earlier today, though, is it?

A. What did I say earlier today?

Q. I think we just covered that. You indicated that you didn't go for training because you were at 737 training, or 737 class, right?

A. Yes. And I was to be offered the next

training date.

Q. But the training that you did not attend had nothing to do with a PRIA request, in your understanding, correct?

MR. PETERSEN: Don't nod your head, please.

MR. STRINDBERG: He's not looking at me, Counsel.

MR. PETERSEN: Okay. Well, then I'd still appreciate it, then, if you didn't do that.

THE WITNESS: Say it again.

MR. PETERSEN: What was the question?

MR. STRINDBERG: And, Counsel, you're asking him about a letter that he didn't author. So you need to establish some background really if you're going to question him about it, such as, you know, did he review it before it went out, things like that. There's a lack of foundation.

MR. PETERSEN: I can ask those questions or I can do it in the order that I prefer. And what I'm asking is--well, I can't remember my question

(The following was read:

"Q But the training that you did not attend had nothing to do with a PRIA request, in

your understanding, correct?")

THE WITNESS: The training that I did not attend did not have anything to do with the PRIA request.

BY MR. PETERSEN:

Q. All right. I'll rephrase it.

A. Please.

Q. It's simple. You testified earlier that you did not go to training the first time it was offered to you because you were currently in a class to be certified for 737--

A. Yes.

Q. --flying.

A. Yes.

Q. That has nothing to do with a PRIA request, correct?

A. No.

Q. And so when you were going the second time for training, you indicated you had no idea why you had not been given a second training date. Isn't that what you said earlier today?

A. I have my suspicions, yes. But I don't--I've not been told specifically why I've not been, you know, selected. Like I said, I received e-mails saying--you know, giving me the

runaround, so . . .
Q. You received e-mails from Polar Air giving you the runaround.
A. I believe I'm getting the runaround, yes.
Q. All right. You testified earlier that you received one e-mail since--you've only received two e-mails from Polar Air entirely, correct?
A. That's right.
Q. One of which you've given us, and one that you have not.
A. Correct.
Q. All right. Are there any other communications that would lead you to conclude that there's a runaround, as you've said, going on?
A. No. That's it.
Q. So two e-mails.
A. Right.
Q. How about phone calls? You produced--your Counsel has produced two alleged voice mail messages from Polar Air.
A. Correct.
Q. Are there any other communications

other than those four?

A. No.

Q. And any phone calls or e-mails you have sent to them that you have not produced to us that you have copies of?

A. Well, I told you that last e-mail you don't have.

Q. That was from them to you, though, right?

A. Right.

Q. I'm talking about from you to them.

A. Well, it's--I sent them an e-mail asking when, you know, the next class is, what--you know, I forgot what exactly I asked. And they replied saying, We'll call you when we have something available for you.

Q. And it's your belief that they're giving you the runaround.

A. Yes. Because they're--from my knowledge, there have been classes and there are classes that have been, you know, conducted. And I have not been--you know, was not offered that class.

Q. What would your suspicions be, as you indicated?

A. Well, the one--the PRIA request, if that--you know, if-- sent the background records back to them, they would have put me in service.

Q. Why do you have that understanding?

A. That's what I understand.

Q. Are you aware that a--an airline can put you in service pending the receipt of PRIA information?

A. Pending receipt? Yes. They can't put you in service until they have it.

Q. That's your--no. My question was, are you aware that an airline can put you into service pending receipt of PRIA information?

A. Well, that might be what the regulation says. But why would an airline spend tons of money training someone without completing a background check. And then if something were to come back in that background check that disqualified the individual, then they've wasted all that money. So I don't believe that. I don't know any company that does that.

Q. It's not your understanding that that happens on a regular basis.

A. I don't know what--you know, I don't believe it does, no.

Q. Okay. Did you help Mr. Strindberg prepare this October 8 letter?
A. No.
Q. Do you have any idea why it says, "For your information, Mr. Callaway did not go for training"--quote/unquote--"because SkyWest never responded to the PRIA request"?
A. I have no idea. I didn't write that.
Q. Did you approve that?
A. I didn't see it.
Q. All right. Is that correct?
A. It's a belief. It's a possible belief.
Q. Whose belief?
A. Mine.
Q. And that belief has, as a factual basis, what?
A. It's what I believe.
Q. All right. I understand that. Tell me why you believe that. What facts do you have--
A. I just told you why I believe. An airline is not going to spend all the money training a pilot and then to be--you know, throw him out because the background check doesn't come back. That's why I believe that.
Q. You're assuming that if SkyWest didn't

send a PRIA response to Polar Air, that's why you have been given the runaround by Polar Air.
A. I believe the runaround from Polar Air is because you guys called them.
Q. That's why you believe it is.
A. I'm sure--you know, I'm trying to lay very low with Polar Air. And when you guys called them up, start asking questions, you know, trying to subpoena them and all that other garbage you were trying to do, yes.
Q. Do you know why they were called?
A. No. I don't know why you guys do half the stuff you do.
Q. Just answer the questions.
A. I don't.
Q. All right. You don't have an understanding that it was because we had received the false PRIA request that we called Polar Air to confirm receipt of a PRIA response.
A. No. Because when this was faxed in June, or whenever it was faxed to you, you had no idea that I interviewed at Polar Air.
Q. Okay.
A. And this letter's dated October 8.
MR. PETERSEN: All right. Mr.

Strindberg, I would like to question him about the statement that he volunteered earlier in his deposition today indicating that he has the opinion that 90-plus percent of his employee file has been fabricated. You made an objection. My basis for wanting to go there is simply, I'm showing him a summary so that we don't have all of the hassle of his entire file. I did not solicit that question from him--or that answer. He volunteered that question--or that response.

And over two days, we went through basically every document in his employee file in detail, both as to the validity of the substance of them, but also as to the procedures that he had received prior to his termination. And he indicated a time or two then that he believed certain events did not take place as were being characterized in his employee file. But at no time did he indicate that he believed that 90-plus percent of his employee file had been fabricated. So I believe I'm entitled to go into that with him at this time. If you are going to instruct him not to answer, I'll respect that and we'll file a motion.

MR. STRINDBERG: Well, I disagree with

# EXHIBIT "H"

RECEIVED CLERK
MAY 1 3 2005
U.S. DISTRICT COURT

Todd C. Emerson, A8175
SkyWest Airlines, Inc.
444 S. River Road
St. George, UT 84790
Telephone: (435) 634-3530

Scott M. Petersen, A7599
David N. Kelley, A9137
FABIAN & CLENDENIN,
A Professional Corporation
215 South State Street, 12th Floor
P.O. Box 510210
Salt Lake City, Utah 84151
Telephone: (801) 531-8900

Attorneys for Defendant

RECEIVED
MAY 23 2005
SAMUEL ALBA
U.S. MAGISTRATE

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ANDREW DAVID CALLAWAY<br><br>Plaintiff,<br><br>vs.<br><br>SKYWEST AIRLINES INC., a Utah Corporation,<br><br>Defendant. | **ORDER REGARDING DEFENDANT'S MOTION TO VACATE PROTECTIVE ORDER**<br><br>Civil No. 2:04CV00179TS<br><br>Judge Ted Stewart<br><br>Magistrate Samuel Alba |

Defendant SkyWest Airlines, Inc.'s ("SkyWest") Motion to Vacate Protective Order (Docket No. 36) came on for hearing before the Honorable Samuel Alba on May 5, 2005. Plaintiff was represented by Ralph Chamness and Eric Strindberg of Strindberg, Scholnick, & Chamness, LLC. Defendant Sky West Airlines, Inc. was represented by Scott M. Petersen and David N. Kelley of Fabian & Clendenin. Based upon the arguments presented at the hearing,

careful consideration of the memoranda and exhibits filed by both parties, and good cause appearing therefor,

IT IS HEREBY ORDERED that SkyWest's Motion to Vacate the Protective Order dated March 18, 2005 is hereby granted in part as follows: SkyWest may serve on Polar Air, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, a subpoena for deposition upon written questions to obtain valid responses to (a) why Polar Air has not provided Mr. Callaway any subsequent pilot training and (b) why Polar Air has not hired Mr. Callaway for the position of pilot for which he applied at Polar Air. SkyWest is to provide Mr. Callaway with its proposed questions, allowing sufficient time for Mr. Callaway to object, prior to serving Polar Air with the questions.

DATED this 25th day of May 2005.

BY THE COURT:

Honorable Samuel Alba
United States Magistrate

Approved as to form:

Erik Strindberg
Ralph E. Chamness
Attorneys for Callaway

# EXHIBIT "I"

LEXSEE 2002 U.S. DIST LEXIS 12958

**JAMES STEWART, et al., Plaintiffs, v. MITCHELL TRANSPORT, et al., Defendants.**

**CIVIL ACTION No. 01-2546-JWL**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS**

***2002 U.S. Dist. LEXIS 12958***

**July 11, 2002, Decided**

**PRIOR HISTORY:** *Stewart v. Mitchell Transp., 2002 U.S. Dist. LEXIS 10332.*

**DISPOSITION:** [*1] Defendants' motions to quash denied in part and granted in part, defendants' motions for protective order denied; Associates Insurance Company's motion to quash subpoena granted in part and denied in part; Associates Insurance Company's motion for protective order granted.

**LexisNexis(R) Headnotes**

**COUNSEL:** For JAMES STEWART, GLORIA STEWART, plaintiffs: Lawrence D. Flick, Prairie Village, KS.

For MITCHELL TRANSPORT, INC., LARRY [*2] G RAMSEY, INSURANCE CORPORATION OF HANNOVER, INSURANCE CORPORATION OF HANOVER, defendants: Roger W. Warren, Jeffrey C. Baker, Sanders Conkright & Warren LLP, Kansas City, MO.

For ASSOCIATES INSURANCE COMPANY, movant: Michael D. Matteuzzi, Michael L. Belancio, Niewald, Waldeck & Brown, P.C., Kansas City, MO.

**JUDGES:** David J. Waxse, U.S. Magistrate Judge.

**OPINIONBY:** David J. Waxse

**OPINION:**

MEMORANDUM AND ORDER

This matter is before the Court on the following Motions: (1) Renewed Motion to Quash Subpoenas and/or Motion for Protective Order filed by Defendants Mitchell Transport, Inc., Larry G. Ramsey, and Insurance Corporation of Hannover (hereinafter referred to collectively as "Defendants") (doc. 43); (2) Motion to Quash, or in the Alternative, for Protective Order, filed by Associates Insurance Company (doc. 24); and (3) Motion to Quash Second Subpoena, or in the Alternative, for Protective Order, filed by Associates Insurance Company (doc. 51).

I. Nature of the Matter Before the Court

This is a personal injury action arising out of the collision between a pickup truck driven by Plaintiff James Stewart and a tractor-trailer driven by Defendant Larry Ramsey ("Ramsey").

[*3] According to Plaintiffs' Complaint, the tractor-trailer was operated by Defendant Mitchell Transport, Inc. ("Mitchell Transport") and insured by Defendant Insurance Corporation of Hannover ("Hannover"). Plaintiffs assert claims against Mitchell Transport and Ramsey for violations of the Interstate Transportation Act. Plaintiffs also assert claims against Mitchell Transport and Ramsey for negligence and reckless conduct. In addition, Plaintiffs assert a claim against Hannover for breach of the insurer's duty to act in good faith.

Plaintiffs have served six subpoenas n1 on various entities that are not parties to this action, including Associates Insurance Company ("AIC"). AIC is located in Texas, while the other entities served are located in Kentucky, Tennessee, and Wisconsin.

n1 In their reply brief, Defendants state that Plaintiffs later served a seventh subpoena on AXA Global Risks US Insurance Company ("AXA subpoena"). *See* Ex. L, attached to doc. 52. The AXA subpoena was signed by Plaintiffs' counsel on May 15, 2002 and apparently served some time thereafter, which was at least more than eight days after Defendants' Renewed Motion to Quash was filed. There is no indication that counsel for the parties have ever conferred regarding the AXA subpoena, as required by D. Kan. Rule 37.2. Because the document request contained in the AXA subpoena differs from the document requests contained in the other six subpoenas at issue, and because Defendants' counsel has failed to satisfy the duty to confer as to the AXA subpoena, the Court will decline to entertain Defendants' Motion to Quash as it applies to the AXA subpoena.

[*4]

II. Defendants' Renewed Motion to Quash and/or Motion for Protective Order (doc. 43)

A. Defendants' Standing to Move to Quash the Subpoenas

Before the Court analyzes the merits of Defendants' objections to the subpoenas and their arguments in support of their Renewed Motion to Quash, the Court must first determine whether Defendants have standing to move to quash the subpoenas. These subpoenas were not served on Defendants but rather on various third parties. Generally speaking, a party to the lawsuit does not have standing to quash a subpoena served on a nonparty. *Johnson v. Gmeinder, 191 F.R.D. 638, 640 n. 2 (D. Kan. 2000); Hertenstein v. Kimberly Home Health Care, Inc., 189 F.R.D. 620, 635 (D. Kan. 1999).* A motion to quash a subpoena "may only be made by the party to whom the subpoena is directed except where the party seeking to challenge the subpoena has a personal right or privilege with respect to the subject matter requested in the subpoena." *Id.* (quoting *Smith v. Midland Brake, Inc., 162 F.R.D. 683, 685 (D. Kan. 1995)).*

Thus, for Defendants to bring this motion, each must have a personal right [*5] or privilege with respect to the subject matter of the documents requested in the subpoenas. The subpoenas directed at Ramsey's former employers (Boyd Brothers Transportation, Mayfield Printing, and General Tire and Rubber) and his present employer (Goodyear Tire and Rubber) seek "all records, documents or information . . . regarding Larry G. Ramsey, including, but not limited to your complete personnel file, job application, job description and performance evaluations." Exs. A-D, attached to doc. 44.

The Court finds that Ramsey clearly has a personal right with respect to the information contained in his personnel files, job applications, and performance evaluations. Thus, the Court holds that Ramsey has standing to move to quash the subpoenas served on his employers and to assert objections to the document requests contained therein. *See Beach v. City Olathe, Kansas, 2001 U.S. Dist. LEXIS 16214,* No. 99-2210- *GTV, 2001 WL 1098032,* at *1 (D. Kan. Sept. 17, 2001) (defendant "clearly has a 'personal right' in his personnel file and applications for employment that would give him standing to move to quash the subpoenas."). In contrast, the Court finds that neither Mitchell Transport nor Hannover [*6] has any personal right or privilege with respect to the personnel files and other employment-related records sought. The Court thus rules that neither Mitchell Transport nor Hannover has standing to move to quash the subpoenas served on Ramsey's employers.

The subpoenas served on AIC and Sentry Select Insurance Company ("Sentry") request "all insurance applications, your complete underwriting file, and complete claims files regarding all collisions or incidents that trucks operated by Mitchell Transport or any driver employed by Mitchell Transport were involved in from July 1, 1997 through the present." Exs. E-F, attached to doc. 44. Mitchell Transport asserts that these documents contain proprietary information

such as Mitchell Transport's client lists, routes of travel, and net worth. It also contends that these documents likely contain privileged communications and materials protected by the work product doctrine.

The Court finds that Mitchell Transport has a personal right with respect to these requested documents. Accordingly, the Court holds that Mitchell Transport has standing to move to quash the subpoenas served on AIC and Sentry. In contrast, Ramsey and Hannover [*7] have presented no information or argument that would lead the Court to believe that they too have any personal right in any of the information contained in the documents requested by these subpoenas. The Court therefore holds that neither Ramsey nor Hannover has standing to move to quash the subpoenas served on AIC and Sentry.

In light of the above, the Court will deny the Renewed Motion to Quash to the extent it is brought by Ramsey and Hannover to quash the subpoenas served on AIC and Sentry. The Court will also deny the Renewed Motion to Quash to the extent it is brought by Mitchell Transport and Hannover to quash the subpoenas served on Ramsey's employers, Boyd Brothers Transportation, Mayfield Printing, General Tire and Rubber, and Goodyear Tire and Rubber.

B. Ramsey and Mitchell Transport's Procedural Objections to the Subpoenas

Ramsey and Mitchell Transport object to all of the subpoenas on procedural grounds, arguing that each of the entities upon which these subpoenas were served is outside the 100-mile geographical limitation provided for in Rule 45(b)(2). That provision allows a subpoena to be served "at any place within the district of the court by [*8] which it is issued, or at any place without the district *that is within 100 miles of the place of the deposition, hearing, trial, production, or inspection* specified in the subpoena . . . ." *Fed.R.Civ.P. 45(b)(2)* (emphasis added). Ramsey and Mitchell Transport contend that the subpoenas should be quashed pursuant to Rule 45(c)(3)(A), which states that the court from which a subpoena was issued shall quash the subpoena if it requires a third party "to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person." Ramsey and Mitchell Transport argue that these subpoenas should be quashed because they require the subpoenaed parties, who are located in Kentucky, Tennessee, Texas, and Wisconsin, "to travel outside the 100 mile limit allowed by Rule 45." Doc. 44 at p. 4.

The Court disagrees. The subpoenas do not require the attendance of any witnesses. They only require the production of documents. n2 The documents are required to be produced at Plaintiffs' counsel's law firm in Prairie Village, Kansas. In other words, the place of production is in Prairie Village, Kansas. The entities subpoenaed are merely [*9] required to mail the documents, or have them delivered, to Plaintiffs' counsel's office in Kansas. No representative is required *to travel* to Kansas. Furthermore, Rule 45(a)(2) expressly states that such document subpoenas *must* issue from the district in which the production is to take place. It provides:

> n2 Rule 45 expressly provides that a subpoena may be issued to compel a nonparty to produce documents independent of any deposition, hearing, or trial. *See Fed.R.Civ.P. 45(c)(2)(A)* ("A person commanded to produce . . . designated books, papers, documents or tangible things . . . need not appear in person at the place of production . . . unless commanded to appear for deposition, hearing or trial.") *See also Fed.R.Civ.P. 45(a)(1)* (setting forth procedure for issuance of subpoena for production of documents that is "separate from a subpoena commanding the attendance of a person").

If separate from a subpoena commanding the attendance of a person, a subpoena for production or inspection [*10] *shall* issue from the court for the district in which the production or inspection is to be made.

*Fed.R.Civ.P. 45(a)(2)* (emphasis added).

In light of the above, the Court holds that the subpoenas were properly issued from this district, where the production was to take place, and that the subpoenas do not require any of the entities served to travel in violation of the Rule's 100-mile limitation. The Court thus declines to quash the subpoenas based on this procedural objection.

C. Ramsey's Substantive Objections to the Subpoenas Served on His Employers

Ramsey objects to the subpoenas directed to three former employers and to his current employer. The subpoenas request:

All records, documents or information in your possession regarding Larry G. Ramsey, including, but not limited to, your complete personnel file, job application, job description and performance evaluations.

Exs. A-D, attached to doc. 44.

Ramsey objects to the subpoenas on the basis that the document request contained therein is overly broad and seeks irrelevant documents. He also objects on the basis that the subpoenas seek confidential documents, including some that contain [*11] confidential medical information about himself.

*1. Overbreadth and irrelevance*

Overbreadth and irrelevance are not contained within Rule 45's list of enumerated reasons for quashing a subpoena. It is well settled, however, that the scope of discovery under a subpoena is the same as the scope of discovery under Rules 26(b) n3 and 34. *See* Advisory Committee Note to the 1970 Amendment of Rule 45(d)(1) (the 1970 amendments "make it clear that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules."). *See also* 9A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure,* § 2459 at p. 42 (2d ed.) (scope of discovery through a subpoena is "exceedingly broad" and incorporates the provisions of Rules 26(b) and 34). Thus, the court must examine whether a request contained in a subpoena duces tecum is overly broad or seeks irrelevant information under the same standards as set forth in Rule 26 (b) and as applied to Rule 34 requests for production. *See Phalp v. City of Overland Park, Kan., 2002 U.S. Dist. LEXIS 9684,* No. 00-2354- *JAR, 2002 WL 1162449,* at *3-4 (D. Kan. May 8, 2002) (applying general principles [*12] of overbreadth and irrelevance to subpoena duces tecum).

n3 *Fed.R.Civ.P. 26(b)* provides that "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

a. Overbreadth

The Court will first turn to Ramsey's objection that the request is overly broad. A party objecting to a discovery request on the grounds that the request is overly broad has the burden to support its objection, unless the request is overly broad on its face. *Etienne v. Wolverine Tube, Inc., 185 F.R.D. 653 at 656; Hilt v. SFC Inc., 170 F.R.D. 182, 186 (D. Kan. 1997).* Here, the subpoenas request "all records, documents or information in your possession *regarding* Larry G. Ramsey, including, but not limited to, your complete personnel file, job applications, job description and performance [*13] evaluations." Exs. A-D, attached to doc. 44 (emphasis added). The Court finds that the use of the term "regarding" makes this request overly broad on its face. *See Bradley v. Val-Mejias, 2001 U.S. Dist. LEXIS 25278,* No. 00-2395- *GTV, 2001 WL 1249339,* *6 (D. Kan. Oct. 9, 2001) (use of the term "pertaining to" rendered document request overly broad on its face); *Mackey v. IBP, Inc., 167 F.R.D. 186, 197 (D. Kan.1996)* (same). The use of such omnibus phrases as "regarding" or "pertaining to" requires the answering party "to engage in mental gymnastics to determine what information may or may not be remotely responsive." *Id.*

The Court also finds the request overly broad on its face to the extent it commands the employers to produce "all . . . information" regarding Ramsey. Rule 45 expressly provides that a subpoena may require the production of "designated books, documents or tangible things" in the possession, custody, or control of the subpoenaed individual or entity. *Fed.R.Civ.P. 45(a)(1).* There is no provision for a subpoena that seeks "information."

The Court does not, however, find that the request is overly broad on its face to the extent it asks the employer to [*14] produce discrete documents, *i.e.,* Ramsey's personnel file, job application, job description, and performance evaluations. Moreover, the Court does not find that Ramsey has satisfied his burden to show how the request for these particular documents is overly broad. The Court will therefore overrule his overbreadth objection to the extent the subpoena

requests each employer to produce Ramsey's personnel file, job application, job description, and performance evaluations.

b. Irrelevance

The Court will now turn to Ramsey's relevance objections to the requested personnel files, job applications, job descriptions, and performance evaluations. Relevancy is broadly construed, and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party. *Sheldon v. Vermonty, 204 F.R.D. 679, 689-90 (D. Kan. 2001)* (citations omitted). A request for discovery should be allowed "unless it is clear that the information sought can have no possible bearing" on the claim or defense of a party. *Id.* (citations omitted). When the discovery sought appears relevant on its face, the [*15] party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Rule 26(b)(1), or (2) is of such marginal relevance that the potential harm the discovery may cause would outweigh the presumption in favor of broad disclosure. *Scott v. Leavenworth Unified School Dist. No. 453, 190 F.R.D. 583, 585 (D. Kan. 1999).* Conversely, when relevancy is not apparent on the face of the request, the party seeking the discovery has the burden to show the relevancy of the request. *Steil v. Humana, Inc., 197 F.R.D. 442, 445 (D. Kan. 2000).*

Applying these principles, the Court finds that the request for Ramsey's personnel file, job application, job description, and performance evaluations appears relevant on its face, and Ramsey has failed to convince the Court otherwise. The Court is unable to find that there is "no possibility" that the documents requested could have a "possible bearing" on a claim or defense of the parties. Ramsey's safety record, work history and performance issues--while employed as a truck driver or even in some [*16] other capacity--may reveal that Ramsey has a history of other accidents or safety violations. The Court therefore overrules Ramsey's relevancy objections to these subpoenas to the extent they request his personnel files, job applications, job descriptions, and performance evaluations.

*2. Confidentiality*

Ramsey also objects to the subpoenas on the grounds they seek private and confidential information about himself, including some medical information that he contends should remain private. Ramsey does not elaborate on the confidential nature of the requested documents.

Ramsey fails to recognize that a party may not rely on the confidential nature of documents as a basis for refusing to produce them, because "confidentiality does not equate to privilege." *Hill v. Dillard's, Inc., 2001 U.S. Dist. LEXIS 24450,* No. 00-2523- *JWL, 2001 WL 1718367,* *4 (D. Kan. Oct. 9, 2001) (quoting *Folsom v. Heartland Bank, 1999 U.S. Dist. LEXIS 7814,* No. 98-2308- *GTV, 1999 WL 322691,* *2 (May 14, 1999)). *See also Federal Open Mkt. Comm. v. Merrill, 443 U.S. 340, 362, 61 L. Ed. 2d 587, 99 S. Ct. 2800 (1979))* ("there is no absolute privilege for . . . confidential information"). Thus, the Court will [*17] overrule Ramsey's confidentiality objection to the subpoenas.

Apparently recognizing the fact that the Court might overrule his confidentiality objection, Ramsey asks the Court, in the event it enforces the subpoenas, to enter a protective order to prevent the disclosure of the documents to third parties. Although documents are not shielded from discovery on the basis of confidentiality, it is true that a party may request the court to enter a protective order pursuant to *Fed.R.Civ.P. 26(c)* as a means to protect the confidential information from disclosure to individuals or entities not connected with the litigation. *Hill, 2001 WL 1718367,* at *4. The decision whether to enter a protective order is within the court's discretion. *See Thomas v. Int'l Bus. Mach., 48 F.3d 478, 482 (10th Cir. 1995).* Rule 26(c) nevertheless requires that the party seeking the protective order establish "good cause" for the protective order. *Johnson v. Gmeinder, 191 F.R.D. 638, 642 (D. Kan. 2000).* In determining whether good cause exists for the court to issue a protective order that prohibits partial or complete dissemination of documents or other materials [*18] obtained in discovery to non-parties, "the initial inquiry is whether the moving party has shown that disclosure of the information will result in a 'clearly defined and very serious injury.' " *Zapata v. IBP, Inc., 160 F.R.D. 625, 627 (D. Kan. 1995)* (quoting *Koster v. Chase Manhattan Bank, 93 F.R.D. 471, 480 (S.D. N.Y. 1982))* (internal quotations omitted).

Although Ramsey has asked the Court to enter such a protective order, he has failed to show how disclosure of the alleged confidential and medical information to any non-parties would result in a "clearly defined" or "serious injury."

Without such information, the Court is not in a position to determine whether the requisite good cause exists to issue a protective order prohibiting dissemination of Ramsey's personnel files and other requested job-related documents. The Court does, however, recognize that at least the potential for injury exists if the alleged confidential documents, and, in particular, documents containing medical information about Ramsey, are disclosed to non-parties. In the interest of justice, the Court will direct the parties to submit an agreed protective order prohibiting [*19] disclosure of the alleged confidential documents/information to non-parties and prohibiting the use of these documents/information outside of this lawsuit. *See Hill, 2001 WL 1718367,* at *5 (directing parties to attempt to draft a protective order to prevent disclosure of requested documents to non-parties).

Within ten (10) days of the date of filing of this Order, counsel for the parties shall confer and attempt to agree upon such a protective order. If the parties are unable to reach an agreement, the Court will allow Ramsey five (5) days thereafter to move for a protective order prohibiting the disclosure of these documents to non-parties and prohibiting the use of these documents outside of this lawsuit. Plaintiffs shall file their response to the motion for protective order within five (5) days after service of the motion.

*3. Annoyance, harassment, and embarrassment*

Ramsey also urges the Court to quash the subpoenas on the basis that "Plaintiffs [through the subpoenas] are simply attempting to annoy, harass and embarrass" him. Doc. 44 at 2. Rule 45 does not provide for the quashing of a subpoena on this basis. [*20] Rule 26(c), however, does allow a court to enter a protective order to protect a party from annoyance, embarrassment or oppression. The Court will therefore treat Ramsey's request as a Rule 26(c) motion for protective order to prevent the discovery from being had.

As noted above, the moving party has the burden to show good cause for granting a protective order. *Johnson v. Gmeinder, 191 F.R.D. 638, 642 (D. Kan. 2000).* To establish good cause, that party must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard, 452 U.S. 89, 102 n. 16, 68 L. Ed. 2d 693, 101 S. Ct. 2193 (1981).* Ramsey has made nothing more than conclusory statements that Plaintiffs seek to annoy, harass, and embarrass him through these subpoenas. These conclusory statements are insufficient to satisfy Ramsey's Rule 26(c) burden. The Court therefore declines to enter a protective order on this basis.

B. Mitchell Transport's Substantive Objections to the Subpoenas Served on AIC and Sentry

The subpoenas served on AIC and Sentry command them to produce the following:

Any and [*21] all information, documents or records in your possession regarding Mitchell Transport, Inc., including but not limited to all insurance applications, your complete underwriting file, and complete claims files regarding all collisions or incidents that trucks operated by Mitchell Transport or any driver employed by Mitchell Transport were involved in from July 1, 1997 through the present.

Exs. E-F, attached to doc. 44.

Apparently, Mitchell Transport applied for, or obtained, liability insurance from these entities at one time. Mitchell Transport objects to the document request contained in the subpoenas on the grounds that it is overly broad and does not seek relevant information. It also objects on the basis that "the information contained in the insurance applications and underwriting files is proprietary in nature in that it contains information such as client lists, routes of travel, net worth, etc." Doc. 44 at p. 3. Finally, it asserts that any underwriting or claims files produced "will likely contain" privileged information. Doc. 52 at 5.

*1. Overbreadth and irrelevance*

Mitchell Transport argues that the request is overly broad in its scope and time frame [*22] (July 1, 1997 n4 to the present) and that any records relating to any other accidents or claims involving Mitchell Transport drivers have no bearing on the issue in this case, *i.e.,* whether *Ramsey* negligently caused the accident involving Plaintiff James Stewart. Plaintiffs do not directly respond to these overbreadth and relevance arguments, and instead assert that irrelevance and overbreadth are not proper grounds for quashing a subpoena.

n4 The collision in this case occurred on July 1, 1997.

As discussed above, a court may quash a subpoena duces tecum that is overly broad or that seeks irrelevant documents. The Court will thus examine the merits of Mitchell Transport's objections. The Court finds the request to be relevant on its face and can easily conceive how the requested documents might reveal information about other accidents and safety violations that would be relevant to Plaintiffs' punitive damages claims. At the same time, however, the Court finds the time period covered to be overly [*23] broad. The Court will therefore limit the subpoena to the time frame July 1, 1997 through June 30, 1998, which is the one-year period following the collision in this case.

In addition, for the same reasons discussed above in Part II.C.1.a, the Court finds the request to be overly broad to the extent the subpoenas command AIC and Sentry to produce (1) "information," and (2) all documents and records "regarding" Mitchell Transport. The Court therefore quashes the subpoenas served on AIC and Sentry to the extent they request this information and these documents.

*2. Proprietary nature of the documents*

The Court will next address Defendants' objection that the subpoenaed documents contain "proprietary information" such as "client lists, routes of travel, net worth, etc." *See* Doc. 44 at p. 3. Defendants contend that this proprietary information falls within the scope of Rule 45(c)(3)(B)(1), which requires the Court to quash a subpoena that will result in "disclosure of a trade secret or other confidential research, development, or commercial information." *Fed.R.Civ.P. 45(c)(3)(B)(1).*

The Federal Rules of Civil Procedure do not define the term "trade secret" or [*24] "confidential research, development, or commercial information." Case law, however, has defined these terms to mean "information, which, if disclosed would cause substantial economic harm to the competitive position of the entity from whom the information was obtained." *In re S3 LTD, 242 B.R. 872, 876 (Bankr. E.D. Va. 1999)* (quoting *Diamond State Ins. Co. v. Rebel Oil Co., 157 F.R.D. 691, 697 (D. Nev. 1994)).*

The party moving to quash a subpoena under Rule 45(c)(3)(B)(1) has the burden to establish that the information sought is confidential and that its disclosure will work a clearly defined and serious injury to the moving party. *Heat & Control, Inc. v. Hester Indus., Inc., 785 F.2d 1017, 1025 (Fed. Cir. 1986); Composition Roofers Union Local 30 Welfare Trust Fund v. Graveley Roofing Enter., Inc., 160 F.R.D. 70, 72 (E.D. Pa. 1995).* The claim "must be expressly made and supported by a sufficient description of the nature of the documents, communications, or things not produced so as to enable the demanding party to contest the claim." *Diamond State Ins., 157 F.R.D. at 697-98.*

Mitchell Transport [*25] has not satisfied this burden. It has failed to show that any specific or serious injury would result from the disclosure of this alleged "proprietary" information. In addition, it has failed to describe the documents with sufficient particularity so as to enable Plaintiffs to contest its claim. The Court will therefore decline to grant the motion to quash under Rule 45(c)(3)(B)(1). Mitchell Transport asks the Court--in the event it denies the motion to quash--to enter a protective order preventing disclosure of this alleged proprietary information to non-parties and prohibiting the use of these documents outside of this lawsuit. For the same reason discussed above with respect to Ramsey's request for a protective order (*see* Part II.C.2, *supra*), the Court will direct counsel for the parties to work together with AIC and Sentry to submit an agreed protective order guarding the confidentiality of the alleged proprietary documents/information.

*3. Claim of privilege*

Finally, Mitchell Transport alleges that the requested underwriting and claims files "will likely contain information which is protected by the attorney/client privilege, work product doctrine and/or insurer/insured [*26] privilege." Doc. 52 at 5. Mitchell Transport seeks to quash the subpoenas pursuant to Rule 45(c)(3)(A)(3), which requires a court to quash a subpoena that will result in "disclosure of privileged or other protected matter [where] no exception or waiver applies."

This Court recently summarized the rules regarding subpoenas and privilege as follows:

Parties objecting to [a subpoena] on the basis of . . . privilege bear the burden of establishing that it applies. To carry the burden, they must describe in detail the documents or information to be protected n5 and provide precise reasons for the objection to discovery. A blanket claim as to the applicability of a privilege does not satisfy the burden of proof.

n5 Rule 45 (d)(2) expressly provides that "when information subject to a subpoena is withheld on a claim that such information is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications or things not produced that is sufficient to enable the demanding party to contest the claim."

[*27]
*Phalp v. City Of Overland Park, Kan., 2002 U.S. Dist. LEXIS 9684,* No. 00-2354- *JAR, 2002 WL 1162449,* at *2 (D. Kan. May 8, 2002) (citations and internal quotations omitted).

Mitchell Transport has failed to satisfy these requirements with respect to its privilege and work product objections. The Court therefore does not possess sufficient information to enable it to determine whether each element of the asserted privilege/protection has been satisfied. Given Mitchell Transport's failure to provide the required information, the Court could deny the motion to quash to the extent it is based on Mitchell Transport's assertion of privilege and work product protection. The Court, however, will decline to do so at this time. Instead, the Court will grant the motion to quash as to the alleged privileged/protected documents, and AIC and Sentry shall not be required to produce, at least at this time, the requested documents that Mitchell Transport contends are privileged/protected. Notwithstanding the above, however, the Court will direct Mitchell Transport to provide to Plaintiffs a privilege log containing "a detailed description of the materials in dispute and specific and precise reasons [*28] for its claim of protection from disclosure." *See id.* (citation omitted) (requiring party moving to quash on privilege grounds to provide privilege log). The log should, at a minimum, include the following for each document that Mitchell Transport contends is privileged or protected by the work product doctrine:

1. A description of the document (i.e., correspondence, memorandum, etc.);

2. Date prepared or date notations made;

3. Date of document (if different from # 2);

4. Who prepared the document or made notations on the document;

5. For whom the document was prepared and to whom it was directed;

6. Purpose of preparing the document or making the notations;

7. Number of pages of each document; and

8. Basis for withholding discovery.

*See id* (setting forth minimum requirements for privilege log).

Mitchell Transport shall provide this privilege log to Plaintiffs within ten (10) days from the date of filing of this Memorandum and Order. n6 Plaintiffs may then request production of any document for which the claim of privilege/protection appears inadequate or waived, and, if Mitchell Transport objects as provided for under [*29] Rule 45(c)(2)(B), Plaintiffs may file a motion to compel pursuant to that same rule.

n6 In Part III.B.1, below, the Court grants in part AIC's motion to quash the second subpoena served on it. The Court recognizes that its rulings with respect to AIC's motion to quash may render Mitchell Transport's privilege concerns moot.

III. AIC's Motions to Quash, or in the Alternative, for Protective Order (doc. 24 and 51)

A. AIC's Motion to Quash First Subpoena, or in the Alternative, for Protective Order (doc. 24)

Plaintiffs have served, or have attempted to serve, two subpoenas on AIC. AIC moves to quash the first subpoena, arguing that it was not properly served on AIC. Although Plaintiffs do not concede that the first subpoena was improperly served, they do state in their response that they have re-served the subpoena on AIC. By serving the second subpoena, Plaintiffs effectively withdrew the first subpoena, thereby rendering moot the issues raised in this first motion to quash.

B. AIC's [*30] Motion to Quash Second Subpoena, or in the Alternative, for Protective Order (doc. 51)

AIC moves to quash the second subpoena on numerous grounds. In the event the Court denies the motion to quash, AIC requests that the Court enter a protective order to guard the confidentiality of any documents AIC produces pursuant to this subpoena.

*1. Irrelevance*

AIC raises much the same argument as Mitchell Transport regarding the lack of relevance of the subpoenaed documents. For the same reasons discussed above in Part II.B.1, the Court will limit the second subpoena to the time period July 1, 1997 to June 30, 1998 and will quash the second subpoena to the extent it commands AIC to produce documents outside of that time frame.

The Court also notes that its ruling above with respect to the overly broad nature of the subpoena (*see* Part II.C.1.a, *supra*), applies equally to AIC. The Court thus grants AIC's motion to quash to the extent the second subpoena commands AIC to produce (1) "information," and (2) all documents and records "regarding" Mitchell Transport.

*2. Privacy rights of other drivers*

AIC also moves to quash the second subpoena on the basis [*31] that the subpoena requires AIC to divulge information about the driving records of thirty-six drivers who are not parties to this action. AIC asserts that disclosure of this information would violate Tennessee and federal law protecting against the disclosure of such information. *See* Tenn. Code Ann. § 55-25-107; *18 U.S.C. § 2721*. As Plaintiffs correctly point out, however, those laws allow the disclosure of such information "for use in connection with any civil . . . proceeding." *See Tenn. Code Ann. § 55-25-107*; *18 U.S.C. § 2721*.

Accordingly, the Court will decline to quash the second subpoena based on AIC's privacy objections. n7 The Court will, however, grant AIC's motion for protective order to guard against disclosure of these documents to non-parties and to prohibit use of these documents outside of this litigation. Counsel for AIC shall work together with counsel for the parties to agree to a protective order prohibiting the disclosure of these documents to non-parties and prohibiting the use of these documents outside of this lawsuit. In the event an agreement cannot be reached, AIC shall, within ten (10) days [*32] from the date of filing of this Order, submit to the Court a proposed protective order for the Court's review.

n7 The Court recognizes that ten drivers whose records are covered by the second subpoena were not even hired by Mitchell Transport until 2002. Given the Court's ruling as to the relevant time period of the second subpoena, those drivers' records need not be produced.

*3. Proprietary and trade secret information*

AIC objects to producing certain documents that "contain numbers, dollars and codes used by AIC in calculating premiums" (doc. 51 at p. 2) on the basis that they contain proprietary and trade secret information. Plaintiffs respond that they are not interested in these documents. The Court will therefore grant the motion to quash to the extent it commands AIC to produce documents containing such information.

AIC also objects to producing a "Fleet Safety Evaluation" on the basis that it too contains proprietary and trade secret information. AIC states that the Fleet Safety [*33] Evaluation was conducted in September 2001. Because the Court has already ruled that the only relevant time period is July 1, 1997 to June 30, 1998, AIC is not required to produce the Fleet Safety Evaluation and the Court need not address AIC's trade secret argument regarding the Evaluation.

*4. Claim of privilege as to AIC's claims files*

AIC states that it has already provided Plaintiffs with the claims file relating to Plaintiff James Stewart's accident. AIC objects to producing privileged documents from any other claims files, because those files all relate to other accidents. According to AIC, those accidents occurred after September 2001. Because these other claims files fall outside the relevant time period, AIC is not required to produce them, and the Court need not address AIC's privilege objection.

IT IS THEREFORE ORDERED that Defendants' Renewed Motion to Quash (doc. 43-1) is denied to the extent it is brought by Defendants Larry G. Ramsey and Insurance Corporation of Hannover to quash the subpoenas served on Associates Insurance Company and Sentry Select Insurance Company.

IT IS FURTHER ORDERED that Defendants' Renewed Motion to Quash (doc. [*34] 43-1) is denied to the extent it is brought by Defendants Mitchell Transport, Inc. and Insurance Corporation of Hannover to quash the subpoenas served on Boyd Brothers Transportation, Mayfield Printing, General Tire and Rubber, and Goodyear Tire and Rubber.

IT IS FURTHER ORDERED that the Court declines to entertain Defendants' Renewed Motion to Quash (doc. 43-1) to the extent it seeks to quash the subpoena served on AXA Global Risks US Insurance Company.

IT IS FURTHER ORDERED that Defendants' Renewed Motion to Quash (doc. 43-1) is granted to the extent it is brought by Defendant Larry G. Ramsey to quash that portion of the subpoenas served on Boyd Brothers Transportation, Mayfield Printing, General Tire and Rubber, and Goodyear Tire and Rubber which commands them to produce "all records, documents or information in [their] possession regarding Larry G. Ramsey." The Renewed Motion to Quash (doc. 43-1) is denied in all other respects as it applies to the subpoenas served on Boyd Brothers Transportation, Mayfield Printing, General Tire and Rubber, and Goodyear Tire and Rubber.

IT IS FURTHER ORDERED that the Motion for Protective Order (doc. 43-2) brought [*35] by Larry G. Ramsey to protect the confidentiality of documents subpoenaed from Boyd Brothers Transportation, Mayfield Printing, General Tire and Rubber, and Goodyear Tire and Rubber is denied. However, within ten (10) days of the date of filing of this Order, counsel for the parties shall confer and attempt to agree upon a protective order guarding the confidentiality of any private or medical information about Ramsey contained in any documents subpoenaed from Boyd Brothers Transportation, Mayfield Printing, General Tire and Rubber, and Goodyear Tire and Rubber. If the parties are unable to reach an agreement, the Court will allow Ramsey five (5) days thereafter to move for a protective order protecting the confidentiality of the documents/information. Plaintiffs shall respond to the motion for protective order within five (5) days after service of the motion. If neither an agreed-upon protective order nor a motion for protective order is filed within the time period specified, production of the documents requested in the subpoenas served on Boyd Brothers Transportation, Mayfield Printing, General Tire and Rubber, and Goodyear Tire and Rubber. shall proceed [*36] without the protection of any such order.

IT IS FURTHER ORDERED that Defendants' Renewed Motion to Quash (doc. 43-1) is granted in part and denied in part, as set forth herein, to the extent it is brought by Defendant Mitchell Transport, Inc. to quash the subpoenas served on Associates Insurance Company and Sentry Select Insurance Company.

IT IS FURTHER ORDERED that Mitchell Transport, Inc. shall, within ten (10) days from the date of filing of this Order, serve on Plaintiffs a privilege log as set forth herein. Plaintiffs may then request production of any document for which the claim of privilege/protection appears inadequate or waived, and, if Mitchell Transport, Inc. objects as provided for in Rule 45(c)(2)(B), Plaintiffs may file a motion to compel pursuant to that same rule.

IT IS FURTHER ORDERED that the Motion for Protective Order (doc. 43-2) brought by Mitchell Transport, Inc. to protect the confidentiality of alleged proprietary information contained in the documents subpoenaed from Associates

Insurance Company and Sentry Select Insurance Company is denied. However, within ten (10) days of the date of filing of this Order, [*37] counsel for the parties, in conjunction with Associates Insurance Company and Sentry Select Insurance Company, shall confer and attempt to agree upon such a protective order. If an agreement is not reached, the Court will allow Mitchell Transport five (5) days thereafter to move for a protective order protecting the confidentiality of the alleged proprietary documents/information. Plaintiffs shall respond to the motion for protective order within five (5) days after service of the motion.

IT IS FURTHER ORDERED that Associates Insurance Company's Motion to Quash Subpoena, or in the Alternative, for Protective Order (doc. 24) is denied as moot.

IT IS FURTHER ORDERED that Associates Insurance Company's Motion to Quash Second Subpoena (doc. 51-1) is granted in part and denied in part as set forth herein.

IT IS FURTHER ORDERED that Associates Insurance Company's Motion for Protective Order (doc. 51-2) is granted as to the records of those drivers that Associates Insurance Company is required to produce pursuant to this Order. Counsel for Associates Insurance Company shall work together with counsel for the parties to agree to a protective [*38] order protecting the confidentiality of these documents. In the event an agreement cannot be reached, Associates Insurance Company shall, within ten (10) days from the date of filing of this Order, submit to the Court a proposed protective order for the Court's review.

IT IS SO ORDERED.

Dated in Kansas City, Kansas on this 11th day of July, 2002.

David J. Waxse

U.S. Magistrate Judge

Page 11

2002 U.S. Dist. LEXIS 12958, *