FILED
05 JUN 22 P 12: 00
U.S. DISTRICT COURT
DISTRICT OF UTAH

Todd C. Emerson, A8175
SkyWest Airlines, Inc.
444 S. River Road
St. George, UT 84790
Telephone: (435) 634-3530

Scott M. Petersen, A7599
David N. Kelley, A9137
FABIAN & CLENDENIN,
A Professional Corporation
215 South State Street, 12th Floor
P.O. Box 510210
Salt Lake City, Utah 84151
Telephone: (801) 531-8900

Attorneys for Defendant

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| ANDREW DAVID CALLAWAY<br><br>Plaintiff,<br><br>vs.<br><br>SKYWEST AIRLINES INC., a Utah Corporation,<br><br>Defendant. | Magistrate Samuel Alba<br><br>**OPPOSITION MEMORANDUM TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY**<br><br>Civil No. 2:04CV00179<br><br>Judge Ted Stewart |

Defendant SkyWest Airlines hereby submits its Opposition Memorandum to Plaintiff's Motion to Compel Discovery.

## INTRODUCTION

This is a simple case involving the alleged wrongful termination of a SkyWest employee. The plaintiff, David Andrew Callaway, claims he was terminated as a pilot for SkyWest in

violation of the Railway Labor Act ("RLA") and Utah public policy, in breach of an alleged implied employment contract, and in violation of federal wiretapping laws.

Discovery cutoff has passed and Callaway has conducted extensive discovery. Callaway has deposed thirteen people including his former supervisor and Chief Pilot Kelvin Hyatt, Mr. Hyatt's direct report Jim Breeze, and the person in authority over all of SkyWest's 2,000 plus pilots, Brad Holt. Callaway has also deposed the four people who served on a board that reviewed his termination, and certain employees of SkyWest's human resources department. Finally, Callaway has deposed certain co-workers, including pilots who worked with him or were otherwise involved with the circumstances surrounding his termination.

In addition to the thirteen depositions, Callaway has served on SkyWest two sets of interrogatories and requests for production of documents. Callaway's discovery requests have resulted in the production of over 1,000 pages of documents including Callaway's employee file and portions of the files of other SkyWest employees and former employees. Moreover, SkyWest has provided Callaway's counsel with the opportunity to review the employee files of over ten SkyWest employees identified by Callaway.

Pursuant to the scheduling order, on June 6, 2005, the deadline for filing dispositive motions, SkyWest filed its motion for summary judgment as to all of Callaway's claims.

Notwithstanding the extensive discovery already conducted, Callaway now asks the Court to compel SkyWest to produce tens of thousands of additional documents on the theory that SkyWest has some grand corporate scheme, directed by Jim Breeze, to terminate SkyWest pilots who engage in union organizing activity, including Callaway. There are multiple problems with Callaway's belated request.

First, after all of Callaway's extensive discovery there simply is no evidence of any illegal corporate scheme. Callaway cannot even identify who his alleged universe of "union" activists is, let alone in a way that provides any parameters for an illegal corporate scheme. There is no evidence of any SkyWest pattern and practice to terminate union activist pilots.

Second, even if Callaway could somehow demonstrate evidence of an illegal corporate scheme, he cannot show any nexus between his actual termination and any alleged SkyWest scheme. Rather, as is clear from SkyWest's motion for summary judgment, Callaway's termination was based upon his violation of company policy as well as his arrogant, disrespectful and abusive behavior toward SkyWest management and other employees.

Callaway's motion to compel is nothing more than an out-of-season fishing expedition designed to burden SkyWest, and an attempt to find some sort of larger illegal corporate practice that Callaway wishes existed, but in fact does not. Callaway's Amended Complaint "should serve to seek redress for a wrong, not to find one." *Segal v. Gordon*, 467 F.2d 602, 608 (2nd Cir. 1972).

## ARGUMENT

### I. CALLAWAY'S BROAD DISCOVERY IS IMPROPER.

From a general discovery standpoint, Rule 26(b)(1) provides for "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Callaway alleges four causes of action seeking redress for what Callaway claims was an illegal termination. Moreover, Callaway has conducted significant discovery into these causes of action, deposing nearly every person with any personal knowledge about his actual termination. In other words, Callaway has obtained more than enough information surrounding what took place relative to his employment termination.

Not satisfied with what he has found regarding the actual facts of his claims, Callaway now wants to conduct broad discovery in an effort to establish some larger SkyWest corporate scheme to terminate pilots who are union organizers. Callaway has no actual evidence of any such pattern and practice. Rather, he seeks to discover the evidence to create the scheme, all on his unsupported speculation that the scheme exists. Callaway's broad discovery requests are inappropriate and should be denied.

Conclusory allegations of a complaint, lacking any factual basis, do not provide the necessary support for broad discovery. "When, as is apparent here, a plaintiff brings an initial action without any factual basis evincing specific misconduct by the defendants and then bases extensive discovery requests upon conclusory allegations in the hope of finding the necessary evidence of misconduct, that plaintiff abuses the judicial process." *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1169 (10th Cir. 2000); *see Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1238 (10th Cir. 2000).

Callaway has obtained all the information relative to his termination. Yet, none of it supports a claim of an illegal corporate scheme. Consequently, the Court should preclude discovery in this area.

*Bean v. State Farm Fire & Casualty Ins. Co.*, 1977 U.S. Dist. LEXIS 16317 at *9-*10 (D. Kan. 1977) is instructive. (A copy of the *Bean* case is attached as Exhibit "A"). There, the plaintiff alleged fraudulent misrepresentation, outrage, and bad faith against the defendant insurer for denying her claim. Plaintiff further alleged that defendant's denial "was part of a larger scheme or pattern of conduct by defendant and its agents." The plaintiff had no evidence of "any pattern or scheme of conduct." *Id.* at *9. Nevertheless, the plaintiff sought through interrogatories to discover "evidence of this broader pattern of conduct" by requesting "similar situations involving other policyholders." *Id.* at *2.

The magistrate compelled the discovery, but limited it in geography and time. The district court, however, reversed that ruling. In making its decision, the court explained: "[W]e conclude that a proper determination . . . requires at least a cursory evaluation of the merits of the controversy as they appear in the allegations and the proof proffered by the interrogating party. This evaluation, it seems to us, is required so that unnecessary burdens will not be placed upon answering parties as a result of mere 'fishing expeditions.'" *Id.* at *8-*9. "We must remember that a complaint 'should serve to seek redress for a wrong, not to find one.'" *Id.* at *9 (quoting *Segal v. Gordon*, 467 F.2d 602, 608 (2nd Cir. 1972)). The court then held that seeking evidence of a pattern and practice without any initial evidence of the same constituted "a large fishing expedition" and was unjustified. *Id.*; *see Segan v. Dreyfus Corp.*, 513 F.2d 695, 696 (2nd Cir. 1975) (affirming denial of discovery regarding "course of conduct" theory where only evidence

was an "allegation of a single fraudulent transaction").

Despite having already conducted extensive discovery, as in *Bean*, Callaway has provided no facts to support his corporate scheme claim against SkyWest. Yet Callaway seeks to conduct additional extensive discovery aimed at obtaining evidence he claims will support his baseless claim. Callaway's discovery requests constitute out-of-season fishing expeditions designed to create an alleged corporate scheme, which is not implied by the facts the parties have discovered to date.

Callaway's method of discovery, however, is backward. Callaway must start with his own termination and work up from there, not the other way around. Otherwise, every garden variety employment termination would be turned into a pattern and practice claim involving broad, burdensome discovery with no evidence that such discovery has anything to do with the underlying individual termination. Accordingly, the Court should deny Callaway's motion to compel discovery.

## II. SKYWEST HAS PROPERLY RESPONDED TO EACH OF CALLAWAY'S DISCOVERY REQUESTS.

As indicated above, Rule 26(b)(1) provides for "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Here, Callaway's discovery requests are inappropriate, and his motion should be denied.

### A. Interrogatory Nos. 1 & 2; Request No. 2.

These discovery requests seek information and documents surrounding formal or informal, oral or written complaints about Jim Breeze as well as an alleged investigation into Mr. Breeze by a Ms. Jasmine. The specific discovery requests and SkyWest's responses are as follows:

**INTERROGATORY NO. 1**: Identify all complaints that have been made by anyone at SkyWest which either pertains to, or which is about, Jim Breeze.

**ANSWER:** SkyWest objects to this interrogatory as it is overly burdensome and overbroad in time, scope, and application. SkyWest further objects on the basis that it is vague, ambiguous and unintelligible. SkyWest does not know what is meant by the term "complaint," or the phrase "pertains to, or which is about." SkyWest further objects that the information sought by this interrogatory is irrelevant to the parties' claims or defenses.

**INTERROGATORY NO. 2**: Please indicate if anyone at SkyWest is investigating any complaints against, or the conduct of, Jim Breeze. If so, what is the outcome of that investigation?

**ANSWER**: SkyWest objects to this interrogatory as it is overly burdensome and overbroad in time, scope, and application. SkyWest further objects on the basis that it is vague, ambiguous and unintelligible. SkyWest does not know what is meant by the term "investigating," or the term "complaints against." SkyWest further objects that the information sought by this interrogatory is irrelevant to the parties' claims or defenses. Without waiving these objections, SkyWest responds that it is not conducting any formal investigation into the actions of Mr. Breeze.

**REQUEST NO. 2**: Please produce all documents pertaining to or referencing any investigation into Jim Breeze.

**RESPONSE**: SkyWest objects to this request as it is overly burdensome and overbroad in time, scope, and application. SkyWest further objects on the grounds that the information sought by this request is irrelevant to the parties' claims or defenses. Without waiving these objections, SkyWest responds that it does not possess or control any documents from 1999 to the present that are responsive to this request.

SkyWest's responses to these discovery requests are appropriate.

1. These discovery requests seek irrelevant information.

These discovery requests are irrelevant and do not advance Callaway's claims. Mr. Breeze is SkyWest's System Chief Pilot. As indicated in the attached chart (*See* Exhibit "B"), Callaway reported to his Chief Pilot, Kelvin Hyatt, who reported to the System Chief Pilot, Jim Breeze. Mr. Breeze reported to Brad Holt, SkyWest's Vice President of Flight Operations. The decision to terminate Callaway's employment started with Kelvin Hyatt, was passed through Jim

Breeze, and was ultimately approved by Brad Holt. Thereafter, Callaway was provided a review board in which four other SkyWest employees; two from management (Jon Tenpas and Bill Dykes) and two peers (John Wangensteen and Robert Donohoe) reviewed the termination decision. The review board upheld the decision, but offered a modified solution (resignation in lieu of termination) that Callaway refused.

Asking for "all complaints" relating to Jim Breeze does not advance Callaway's claims. If there are complaints about Jim Breeze, they do not make it more or less likely that SkyWest terminated Callaway based on his alleged union activity. Jim Breeze neither began the process to terminate Callaway, nor was he the final decision-maker in Callaway's termination. Seeking all complaints about Jim Breeze appears to be nothing more than an attempt to harass or embarrass Mr. Breeze.

In addition, Callaway has deposed all three individuals who were in the chain of command, including Mr. Breeze, and Callaway has deposed all four members of the review board. He knows exactly the steps that were followed and the issues that were considered leading up to his termination. A complaint about Mr. Breeze does not aid in this investigation.

Finally, Callaway has deposed Kelly Jasmine, the SkyWest employee Callaway believes would conduct such an investigation into Mr. Breeze if one were being performed. Ms. Jasmine testified that SkyWest was not performing an investigation into Mr. Breeze. Thus, SkyWest's objections are appropriate and the Court should deny Callaway's motion.

2. These discovery requests are overbroad.

In addition to being irrelevant, Interrogatory No. 1 is overbroad. First, it is not limited in time. Mr. Breeze has worked for SkyWest since August 4, 1986. (Breeze Dep. at 9). Yet it is

obvious that SkyWest should not have to produce complaints about Mr. Breeze dating that far back. Second, the interrogatory does not limit complaints to those related to Callaway's complaint. For example, and only for the sake of argument, if someone complained that they did not like Mr. Breeze's handwriting, such a complaint would not be the type SkyWest should have to produce. Yet Interrogatory No. 1 on its face would seek the identification of these types of complaints. Third, the interrogatory makes no distinction between written and oral complaints, formal or informal complaints. It is not limited to complaints from pilots, and it does not specify to whom the "complaint" has to be made in order to constitute the type of "complaint" Callaway wants to see. SkyWest employs literally thousands of people in several parts of the country. SkyWest does not keep a record of each time an employee might complain about something another SkyWest employee (including Mr. Breeze) says or does. Interrogatory No. 1 is simply too broad.

3. <u>SkyWest fully responded to the requests.</u>

Notwithstanding SkyWest's objections, SkyWest provided appropriate answers to Callaway's discovery requests. First, SkyWest answered Interrogatory No. 2 by stating that it is not conducting a formal investigation into the actions of Jim Breeze. The answer is complete. Second, as to Document Request No. 2, SkyWest responded that it did not have any documents responsive to the request. This answer is also complete. Third, as to Interrogatory No. 1, in his motion to compel, Callaway appears to limit Interrogatory No. 1 to alleged behavior by Jim Breeze involving "unfair or discriminatory conduct towards other employees resulting in complaints against him." (Pl.'s Mem. in Supp. of Mot. to Compel discovery at 5). While the modified request is still overly broad, the original discovery requests served on SkyWest are not

so limited. Nonetheless, SkyWest has learned in the last two weeks that an "egrievance" was filed by Greg Mossup in December 2004 referencing Mr. Breeze. The "egrievance" is irrelevant as it was filed over a year after Mr. Callaway's termination. Notwithstanding, SkyWest is willing to produce it to satisfy Callaway's requests.

**B. Interrogatory No. 3; Request Nos. 1 & 3.**

These discovery requests seek information on disciplinary actions against all pilots from 1999 to the present. The requests are responses are as follows:

> **INTERROGATORY NO. 3**: Set forth the details of any formal or informal disciplinary action (this should include but not be limited to verbal warnings, counseling statements, letters of instructions, IORs, suspensions, demotions, terminations) that has been taken against any pilot of SkyWest from 1999 to the present, including but not limited to discipline against Steve Kanuch, Randy Chappell, Ben Palmer, Tony Thompson, John Minardi, Phil Alford, Gary Green, Greg Mossop, Dave Bandli, Andy Bharath, Mark Rasmussen, Kelly Dixon, Dave Moxham, Scott Carnevale, Harlan Munger, Preston Davis, and Chip Drane. For each incident, please provide the name of the pilot, the position he or she held, the incident that led to the discipline, the date of the discipline, and the type of discipline levied.
>
> **ANSWER**: SkyWest objects to this interrogatory as it is overly burdensome and overbroad in time, scope, and application. SkyWest has employed literally thousands of pilots since 1999. SkyWest further objects on the basis that this interrogatory is vague, ambiguous and unintelligible. SkyWest does not know what is meant by the phrase "formal or informal disciplinary action." SkyWest does not keep records of each incident in which a pilot is counseled by his or her superior and therefore is unable to respond to this interrogatory in any event. Moreover, this interrogatory seeks information that is cumulative to Callaway's prior discovery requests wherein he sought, and his counsel was provided, with access to the employee files for Stephen G. Kanuch, Randy T. Chappel, Ben Palmer, Anthony D. Thompson, Charles P. Alford, Gary R. Green, David M. Bandli, Andy T. Bharath, Hiram M. Drane, and Daniel G. Ence. SkyWest further objects to this interrogatory on the basis that it irrelevant to the parties' claims or defenses.
>
> **REQUEST NO. 1**: Please produce the employment files of each of the individuals included in your response to Interrogatory No. 3.
>
> **RESPONSE**: SkyWest objects to this request as it is overly burdensome and overbroad in time, scope, and application. SkyWest has employed literally thousands of pilots since

1999. SkyWest further objects on the basis that this request is vague, ambiguous and unintelligible. SkyWest does not know what is meant by the phrase "formal or informal disciplinary action" as stated in the applicable interrogatory. SkyWest does not keep records of each incident in which a pilot is counseled by his or her superior and therefore is unable to respond to this request in any event. Moreover, this request seeks information that is cumulative to Callaway's prior discovery requests wherein he sought, and his counsel was provided, with access to the employee files for Stephen G. Kanuch, Randy T. Chappel, Ben Palmer, Anthony D. Thompson, Charles P. Alford, Gary R. Green, David M. Bandli, Andy T. Bharath, Hiram M. Drane, and Daniel G. Ence. SkyWest further objects to this request on the basis that it seeks documents irrelevant to the parties' claims or defenses.

**REQUEST NO. 3**: Produce all documents which refer to or which reference the disciplinary actions listed in your response to Interrogatory No. 3.

**RESPONSE**: SkyWest objects to this request as it is overly burdensome and overbroad in time, scope, and application. SkyWest has employed literally thousands of pilots since 1999. SkyWest further objects on the basis that this request is vague, ambiguous and unintelligible. SkyWest does not know what is meant by the phrase "formal or informal disciplinary action" as stated in the applicable interrogatory. SkyWest does not keep records of each incident in which a pilot is counseled by his or her superior and therefore is unable to respond to this request in any event. Moreover, this request seeks information that is cumulative to Callaway's prior discovery requests wherein he sought, and his counsel was provided, with access to the employee files for Stephen G. Kanuch, Randy T. Chappel, Ben Palmer, Anthony D. Thompson, Charles P. Alford, Gary R. Green, David M. Bandli, Andy T. Bharath, Hiram M. Drane, and Daniel G. Ence. SkyWest further objects to this request on the basis that it seeks documents irrelevant to the parties' claims or defenses.

There are multiple problems with these requests.

First, although Callaway now claims that the discovery requests are "limited to those pilots who were actually disciplined during the period when Union organization of SkyWest's pilots was underway" (Pl's. Mem. in Supp. Of Mot. To Compel Discovery at 8), his requests make no such limitation. Rather, on their face, they seek information on any disciplinary actions against all pilots from 1999 to the present. Such broad requests are inappropriate.

Second, the information sought is irrelevant to the parties' claims and defenses. The basis for Callaway's broad discovery appears to be his theory that he was terminated as part of a

larger corporate "pattern and practice" to terminate pilot union organizers. Yet, as indicated in detail in SkyWest's motion for summary judgment, there is no evidence of any SkyWest pattern and practice relative to union activity, let alone one to terminate pilots that are engaged in union activity. More importantly, Callaway has provided no evidence that any such alleged scheme had any nexus to his own termination, and Callaway has deposed every person related to that termination.

Third, the information sought is highly personal employee information. Callaway claims he needs the information to show an alleged practice by SkyWest to treat union organizer pilots less favorably than non-union organizer pilots. However, SkyWest has no central location for records of pilot discipline. Rather, the disciplinary information related to an individual pilot is located in each pilot's employee file that is kept in hard copy. In total volume, SkyWest approximates that the approximately 2,500 pilot files comprise some 50,000 or more pages of documents. The only way to compile such disciplinary information would be to analyze each file, page by page. These files contain private and personal information that may include a pilot's Social Security information, pilot qualification information, flying records and test scores, medical certifications, direct deposit and bank account information, immigration and I-9 information, copies of drivers licenses, bonus information and any wage garnishment information or lien information. The Court should not expose these people to the review of Mr. Callaway or his counsel given the tangential relevance of the information to the issues in the case. Nor should the Court require SkyWest to undertake such a burdensome task.

Fourth, the information contained in the employee files will not help Callaway's claims as he has no way to present it to a trier of fact. Presumably, Callaway will attempt to divide all

2,500 SkyWest pilots into two groups: union organizers and those who are not union organizers. Thereafter, it is expected that Callaway will try to compare statistically the number of disciplinary actions against the union organizers verses those who are not. All of this analysis is fraught with problems, both in terms of validity and reliability. Moreover, discovery cutoff has long-since passed and Callaway has identified no expert witnesses from which he might obtain legitimate statistical results of such an analysis.

SkyWest has no idea who Callaway even claims to be "union organizers." Callaway gives no definition. For example, is a union organizer one who is on a formal union organizing committee? If so, Callaway is not one as it is undisputed he was not part of any such formal group. Moreover, is the definition of union organizer in reference to a particular union drive, multiple drives, or perhaps a range of time? These questions are not answered by Callaway. In fact, Callaway provides no direction as to how he would characterize one pilot as a "union organizer" and another not.

In addition, it is not acceptable simply to compare the number of disciplinary actions of each group even assuming you could make a reliable division among the pilots. SkyWest's program of progressive discipline is not contractual and therefore does not have to be followed the same way, or at all. Each disciplinary act, moreover, is based on its own unique set of facts and employment history and therefore cannot be used to make broad statements about SkyWest as a whole. For example, a pilot who is terminated for mistreatment of other employees is not in the same category as a pilot who is terminated for alcohol or drug use. Nonetheless, it is presumed that both would be considered in the same category of "termination." Disciplinary actions simply do not lend them selves to easy statistical comparison.

Finally, making statistical comparisons that both measure what they claim to measure (validity) and are capable of being reproduced under similar circumstances (reliability) without the aid of an expert is inappropriate as a matter of law. *Wingfield v. United Technologies Corp.*, 678 F. Supp. 973, 980-81 (D. Conn. 1988) ("[S]tatistics describing the number of promotions are meaningless in the absence of expert interpretation as to the extent that the result documented . . . differs from the result one would expect had promotions been made at random."); *Martincic v. The Urban Redevelopment Authority of Pitt.*, 844 F. Supp. 1073, 1075-76 (W. D. Penn. 1994). Neither Callaway nor his counsel are qualified in the social science of statistics to testify regarding the statistics and mathematical formulae necessary for the comparison Callaway apparently wants to make, nor are they qualified to testify regarding the results. In sum, Callaway has no expert, so the statistical analysis Callaway seeks to make based on his broad discovery requests would be entirely inappropriate.

Fifth, Callaway cites a Tenth Circuit case that he alleges supports his demand that SkyWest identify and provide the circumstances of every instance of disciplinary action taken against SkyWest pilots from 1999 to the present. This case, however, does not advance Callaway's argument, but in fact undermines it.

In *Coletti v. Cudd Pressure Control,* 165 F.3d 767 (10Th Cir. 1999), the plaintiff sought to introduce at trial the testimony of two other discharged employees regarding the circumstances of their discharge. The trial court sustained the employer's objection that the evidence was either irrelevant or unfairly prejudicial. In affirming the trial court's ruling, the Tenth Circuit began by observing that

> Fed. R. Evid. 404(b) generally excludes evidence of other acts for the purpose of proving a person acted similarly on other occasions. This rule applies to both civil and criminal

> proceedings, and is based on the assumption that such evidence is of slight probative value yet very prejudicial.

*Id.,* 165 F.3d at 776 (citations omitted). The Commentary to Rule 404(b) warns: "Trial Courts have been instructed to be careful to ensure that the purpose for which the evidence is offered is more than just a sham for introducing the evidence and using it as proof of character." This cautionary language is pertinent to the present case, for Callaway would unquestionably use evidence of disciplinary actions taken against other pilots not to prove SkyWest's motive in terminating plaintiff, but to try to prove allegedly bad character on the part of SkyWest.

The court in *Coletti* did note that the Tenth Circuit has modified the general rule of 404(b) "somewhat" in employee discharge cases requiring proof of discriminatory intent, stating that testimony of other employees about their treatment by the employer may be relevant to the issue of the employer's discriminatory intent "*if* the testimony establishes a pattern of retaliatory behavior or tends to discredit the employer's assertion of legitimate motives." *Id.* (Emphasis added.) Here, despite the considerable discovery that already has occurred, there is no showing that Callaway can establish a pattern of retaliatory behavior of any kind, let alone retaliation based on purported union activity.

Moreover, even assuming plaintiff could show evidence of a pattern of retaliatory behavior, the Tenth Circuit renewed its call for caution in such situations by stating that

> [i]n order for the court to find such character testimony relevant, however, the plaintiff must show the circumstances involving the other employees are such that their statements can "logically or reasonably be tied to the decision to terminate [the plaintiff]."

*Id.* at 777 (citation omitted). Again, despite substantial discovery by Callaway, there is nothing in the record to show that disciplinary acts by SkyWest against other pilots are "logically or

reasonably tied" to SkyWest's decision to terminate him. In the absence of such a showing, discovery by Callaway of *all* disciplinary acts against *all* SkyWest pilots from 1999 to the present is not permissible.[1]

### C. Interrogatory No. 4; Request No. 4.

These requests seek information related to "other" lawsuits and administrative claims against SkyWest. The requests and responses are as follows.

> **INTERROGATORY NO. 4**: Set forth all litigation or administrative actions (including Federal, State and local actions, but excluding claims for workers' compensation benefits or unemployment claims) that SkyWest has been involved in against employees or former employees from 1999 to the present. For each litigation or administrative action, set forth the date it was filed, the names of the parties to the action, the court or forum the action was filed in, the case number, the nature of the claim (e.g., a claim under the Railway Labor Act for unfair employment practices), and the outcome of the action.
>
> **ANSWER**: SkyWest objects to this interrogatory as it seeks information that is irrelevant to the parties' claims or defenses. Notwithstanding this objection, SkyWest responds that there has been no litigation or administrative actions since 1999 by any SkyWest pilot asserting violations of the Railway Labor Act, termination in violation of Utah's public policy, or violations of the Wire and Electronic Communication Interception and Interception of Oral Communications Act.
>
> **REQUEST NO. 4**: Produce all documents which refer to or which reference the litigation or administrative actions listed in your response to Interrogatory No. 4.
>
> **RESPONSE**: SkyWest objects to this request as it is overbroad in scope and seeks information that is irrelevant to the parties' claims or defenses. Notwithstanding this objection, SkyWest responds that it does not possess or control any documents from 1999 to the present that are responsive to this request.

First, there are no other claims involving the Railway Labor Act, federal wiretapping laws or termination in violation of Utah's public policy. Thus, SkyWest fully responded to these

---

[1] It should be noted as well that "the burden or expense of the proposed discovery outweighs its likely benefit" (*See* Fed. R. Civ. P. 26(b)(2)), particularly where, as here, there has been no showing of a logical nexus between the sought after discovery and plaintiff's termination, and a jury is likely to use any such evidence for purposes prohibited by Fed. R. Evid. 404(b).

discovery requests.

Second, any federal or state court or agency claims based, for example, on Title VII, the ADA, or the ADEA, are simply irrelevant, and the type of evidence squarely precluded by Federal Rule of Evidence 404(b). There can be no other use of the evidence sought except to inappropriately suggest that if other employees have brought unrelated claims against SkyWest, SkyWest is somehow a bad company and therefore must have discriminated against Callaway based on his alleged union activity.

Third, these requests are too broad in that they are not limited to pilots. The gravamen of Callaway's complaint is that he was treated differently than similarly situated pilots who did not engage in union activity. Unrelated claims by employees that are not pilots, and therefore not similarly situated to Callaway, have nothing to do with this case and do not advance Callaway's claims.

**D. SkyWest Properly Responded to Request No. 8.**

Callaway's motion to compel a more complete response to Document Request No. 8 is confusing. The request and response is as follows.

> **REQUEST NO. 8**: Produce all documentation of Callaway's training records while he was employed by SkyWest. These records should include, but not be limited to, certificates of completion, awards, notes made by instructors, and flight check documents.
>
> **RESPONSE**: SkyWest has already produced all documents responsive to this request.

SkyWest produced the documents responsive to this request and told Callaway that what it produced was all it had. Counsel for Callaway suggested that SkyWest might have other documents responsive to this request such as Callaway's "check ride" documents. Counsel for

SkyWest voluntarily agreed to follow up on this request. The result was the same. SkyWest had nothing more to produce.

## III. PLAINTIFF HAS NOT COMPLIED WITH FEDERAL RULE OF CIVIL PROCEDURE 37.

Callaway did not object to the remaining discovery requests to which he now claims SkyWest inadequately responded. If the Court compares the February 23, 2005 letter from Mr. Strindberg with the March 7, 2005 response letter from Mr. Petersen, the Court will note that neither letter references Interrogatory Nos. 5, 9-11, or Document Request No. 6. The reason they are not mentioned is that they were never discussed between counsel. Callaway is required by Rule 37 of the Federal Rules of Civil Procedure to meet and confer with counsel for Defendant prior to moving the Court to compel additional responses.

Here, it is clear from the certification filed by Callaway that he has not complied with Rule 37(a)(2)(B) as to each item of discovery discussed in his Motion to Compel. Rule 37(a)(2)(B) requires a moving party to meet and confer or attempt to meet and confer "in good faith," prior to bringing a motion to compel. "The duty to confer generally requires counsel to converse, confer, compare views, consult, and deliberate." *City of Wichita v. Aero Holdings, Inc.*, 2000 WL 33179895 (D. Kan. 2000) (citations omitted) (a copy of the *Wichita* case is attached hereto as Exhibit "A"). Furthermore, "[w]hen the dispute involves objections to requested discovery, parties do not satisfy the conference requirements simply by requesting or demanding compliance with the requested discovery." *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456, 459 (D. Kan. 1999). The court in *Cotracom* also stated that the parties, "must make genuine efforts to resolve the dispute by determining precisely what the requesting party is actually seeking; what responsive documents or information the discovering party is reasonably capable of producing; and what specific, genuine objections or other issues, if any, cannot be resolved without judicial intervention." *Id.*

Here, Callaway has failed to take such steps with respect to the interrogatories and document request identified above. In fact, SkyWest was completely unaware that there was any dispute relative to those discovery request until receiving Callaway's latest motion. Thus, the Court should deny Callaway's motion to compel additional responses to these requests.

Also, Callaway's Motion identifies document request number 6, which was not part of the parties' prior discussions. *See February 23, 2005 letter from Erik Strindberg to Scott Petersen.* It is clear from the February 23 letter that SkyWest's responses to this document request was simply not discussed. Accordingly, SkyWest believed that Callaway was satisfied with the responses provided by SkyWest. Before moving to Court to compel SkyWest to respond, Callaway must meet and confer with SkyWest in an attempt to resolve the parties' concerns and his Motion to Compel with respect to these discovery requests must be denied.

## IV. FEES AND COSTS SHOULD NOT BE AWARDED TO CALLAWAY.

Callaway's request for fees and costs is inappropriate and should be denied. As indicated by the depth and detail of SkyWest's response letter to Mr. Strindberg, SkyWest has attempted to cooperate in all reasonable respects. It has provided documents, responses, and supplementation as Callaway has narrowed and clarified the scope of his requests. Thus, SkyWest's behavior has not been inappropriate. Furthermore, "Rule 37 provides that sanctions are available only on the basis of failure to comply with a discovery *order*." *S.E.C. v. Thomas*, 116 F.R.D. 230, 233 (D. Utah 1987) (emphasis in original). Here, there is no discovery "order" to be violated.

## CONCLUSION

For the foregoing reasons, the Court should deny Callaway's Motion to Compel Discovery and For Attorney's Fees and Costs.

DATED this 22nd day of June, 2005.

Scott M. Petersen
David N. Kelley
FABIAN & CLENDENIN,
a Professional Corporation
Attorneys for Defendant SkyWest Airlines

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing **OPPOSITION MEMORANDUM TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY** to be mailed, postage prepaid, this 22nd day of June, 2005, to the following:

Erik Strindberg, Esq.
Lauren I. Scholnick, Esq.
Ralph Chamness, Esq.
STRINDBERG SCHOLNICK & CHAMNESS, LLC
44 Exchange Place, 2nd Floor
Salt Lake City, UT 84111

LEXSEE 1977 US DIST LEXIS 16317

**VIRGINIA L. BEAN, Plaintiff, vs. STATE FARM FIRE & CASUALTY INSURANCE COMPANY, Defendant and Third Party Plaintiff, vs. NORTHWESTERN NATIONAL INSURANCE COMPANY, Third Party Defendant.**

**Case No. 75-21-C5**

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS**

*1977 U.S. Dist. LEXIS 16317*

**April 18, 1977**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff insured brought an action against defendant insurer. The insured filed a motion to compel discovery for the insurer's failure to respond to interrogatories concerning the insured's theory that the insurer's failure to adequately satisfy her claim was part of a larger pattern of conduct.

**OVERVIEW:** The insurer objected to answering 11 of the insured's interrogatories aimed at uncovering similar situations involving other policyholders. The court rejected insurer's contention that the information was not relevant and could not lead to admissible evidence. The court concluded that a proper determination of a motion to compel required at least a cursory evaluation of the merits of the controversy. The court found that the insurer did not have to answer some of the interrogatories where the insured had absolutely no evidence to indicate a pattern or scheme by the insurer, the cost of answering the interrogatory would be substantial, and the interrogatory was no more than a fishing expedition. However, the court found that the insurer had to answer interrogatories about complaints that were limited to Kansas because the insurer was required to keep that information under state law. The insurer was also ordered to answer interrogatories that were limited to the specific agent who dealt with the insured.

**OUTCOME:** The court ordered the insurer to answer some interrogatories that were more specific and relevant to the insured's cause of action, ordered that the insurer did not have to answer interrogatories that were mere fishing expeditions, and limited the scope of other interrogatories.

**CORE TERMS:** interrogatory, discovery, answering, policyholder, substantially similar, fishing expedition, oral argument, present time, burdensome, insurer, expenditure, resisted, lawsuit, outrage, balancing process, excessive, hiding, insurance policies, punitive damages, actual damages, third party, misrepresentation, reconsider, expedition, balancing, answered, fishing, insured, unfair, admits

**LexisNexis(R) Headnotes**

***Civil Procedure > Discovery Methods > Interrogatories***
***Civil Procedure > Discovery Methods > Motions to Compel***
***Civil Procedure > Disclosure & Discovery > Undue Burden***

[HN1] The courts have great discretion in ruling upon discovery matters. A diligent exercise of this discretion

Exhibit A

requires a careful balancing decision. On the one hand, the courts do not wish to foreclose a plaintiff from pursuing avenues of discovery, which should be left open. This is especially true when an individual plaintiff sues a large corporate defendant. On the other hand, when the plaintiff's actual damages are only a few thousand dollars, the courts do not wish to allow a plaintiff to unjustifiably claim damages of millions, attempt discovery which is only tangential to the basic claim and that would cost hundreds of thousands of dollars to complete and thereby bludgeon a defendant insurance company into settlement. The problem is to permit a litigant to obtain whatever information he may need to prepare adequately for the issues that may develop, without imposing an onerous burden of information gathering on his adversary. An objection will be sustained if either a particular interrogatory or a set of interrogatories is thought to be so broad and all-inclusive as to be burdensome. In making that determination, the court must balance the burden on the interrogated party against the benefit that having the information would provide to the party submitting the interrogatory.

***Civil Procedure > Discovery Methods > Interrogatories***
***Civil Procedure > Disclosure & Discovery > Undue Burden***

[HN2] All interrogatories are "burdensome" in that they require an expenditure of time and effort by the answering party. It is not a valid objection that the compilation of answers to the interrogatory will necessitate large expenditures of time and money if in other respects the information sought is a proper object of discovery. The test is whether the "burdensomeness" is "excessive or oppressive." A balancing process must occur before the issue of whether "excessiveness" or "oppressiveness" exists may be resolved. One factor is the need for broad discovery under the Rules of Civil Procedure, which are liberally construed. The days of surprise tactics at trial and the hiding of relevant evidence are past, and no legitimate avenue of discovery should be closed. However, the liberality of the rules of discovery is not unlimited. Another factor is the need to prevent discovery costs from soaring to intolerable levels. Normally, a defendant routinely produces information that is at its disposal, but is not required to do extensive research and compilation of data that is not known. On the other hand, in some instances the information sought is not available, but should be. Defendants may not avoid their fair burden of discovery by hiding behind an inadequate record-keeping system that makes retrieval of information unnecessarily burdensome. Another factor is the posture of the case.

***Civil Procedure > Discovery Methods > Interrogatories***
***Civil Procedure > Discovery Methods > Motions to Compel***

[HN3] A proper determination of a motion to compel discovery requires at least a cursory evaluation of the merits of the controversy as they appear in the allegations and the proof proffered by the interrogating party. This evaluation is required so that unnecessary burdens will not be placed upon answering parties as a result of mere "fishing expeditions." A complaint should serve to seek redress for a wrong, not to find one.

***Insurance Law > Regulation of Insurance > Insurance Company Operations***

[HN4] An insurer is required by state law to keep a registry of complaints. Kan. Stat. Ann. § 40-2404(10) indicates that the following are defined as unfair methods of competition and unfair or deceptive acts or practices in the business of insurance: Failure of any person, who is an insurer on an insurance policy, to maintain a complete record of all the complaints which it receives since the date of its last examination under Kan. Stat. Ann. § 40-222. This record must indicate the total number of complaints, their classification by line of insurance, the nature of each complaint, the disposition of these complaints, the date each complaint is originally received by the insurer, and the date of final disposition of each complaint. For purposes of this subsection, "complaint" means any written communication primarily expressing a grievance related to the acts and practices set out in this section.

**COUNSEL: [*1]**

Fred Phelps, 3701 W. 12th, Topeka, Kansas (Plt.) For Plaintiff

Eugene Ralston, 1400 Topeka Avenue, Topeka, Kansas (Def. & 3rd pty. plt.)

Larry Pepperdine, 1st National Bank Tower, Topeka, Kansas (Third-Party Defendant) For Defendant

**OPINIONBY:**

ROGERS

**OPINION:**

MEMORANDUM AND ORDER

On February 13, 1975, plaintiff held a homeowner's policy with defendant State Farm. On that date, her house was accidentally filled with soot allegedly because of the actions of employees of Carlson Plumbing, which is insured by third party defendant Northwestern National. On February 18, 1975, plaintiff filed suit

against State Farm, which later brought a third party complaint against Northern National.

The complaint alleged actual damages of $10,000 and punitive damages of $5,000,000 (although cost of cleaning up the house was not over $1200). The causes of action alleged included fraudulent misrepresentation, outrage, and "bad faith".

It is apparently plaintiff's theory that defendant's failure to satisfy her claim adequately was part of a larger scheme or pattern of conduct by defendant and its agents. Seeking evidence of this broader pattern of conduct, plaintiff has filed interrogatories aimed **[*2]** at uncovering similar situations involving other policyholders. As originally phrased, the interrogatories would have required massive expenditures by defendant. The interrogatories have been "pared down" by the Magistrate, but defendant has submitted evidence which indicates that to obtain an adequate answer to all the interrogatories would still require a large investment of time and money.

The interrogatories are eleven in number, and were served on March 12, 1976. Defendant objected to answering the interrogatories on March 29, 1976. (Doc. #23). Plaintiff filed a motion to compel. (Doc. #25). In an Order and Supplement Order (Docs. #29 and #30), the Magistrate limited the interrogatories somewhat, but ordered the defendant to answer them in the restricted form.Defendant filed a motion for review of the Orders of the Magistrate. (Doc. #13). It is this motion we decide today. We held oral argument on this issue last fall, but decided that insufficient information was before us. Defendant has recently supplied more information, and oral argument was held on April 12, 1977.

We believe that the discovery issues before us are both difficult to resolve and important. **[*3]** We have other cases before us which present the same issues, and expect to see more. For example, in conjunction with the oral argument in this action, we held oral argument in the case Miller v. Mutual of Omaha, No. 74-214-C5, which presented very similar questions. Both cases involved the new tort concept of "bad faith" and outrage stemming from an insurer's actions towards its own insured. We shall not discuss in this opinion our prior holding that it is our belief that the Kansas Supreme Court would, if squarely faced with the question, follow the trend that is occurring in the case law by accepting the independent tort of "bad faith" under appropriate circumstances. See Kircher, Insurer's Mistaken Judgment--A New Tort? 17 F.T.D. 157 (Dec. 1976). If such claims are allowed to proceed, we shall frequently face discovery questions such as those we face in this case. It seems clear to us that a plaintiff's claim for outrage, "bad faith" or punitive damages is strengthened if she can demonstrate more than the denial of her individual claim. If she can show an inference of intent by showing a pattern of activity, her chances of recovery on these theories increase.Any activity **[*4]** between the defendant insurance company and a policyholder other than plaintiff must be carefully scrutinized for relevancy. However, we reject defendant's contention that such information could not be relevant and could not lead to admissible evidence. F.R.D. 404(b). See also *Culp v. Bloss, 203 Kan. 714, 457 P.2d 154, 157-158 (1969).*

Before we analyze individually the interrogatories that are at issue in this case, we feel some background discussion of the factors which must be considered is required. We shall, therefore, quote extensively from our opinion in Miller v. Mutual of Omaha, supra.

It is clear that [HN1] we have great discretion in ruling upon discovery matters. *H. K. Porter Co., Inc. v. Goodyear Tire & Rubber Co., 536 F.2d 1115 (6th Cir. 1976); Paramount Film Distributing Corp. v. Civic Theatre, Inc., 333 F.2d 358 (10th Cir. 1964).*

A diligent exercise of the discretion which we hold requires a careful balancing decision. On the one hand, we do not wish to foreclose a plaintiff from pursuing avenues of discovery which should be left open. This is especially true when, as here, an individual plaintiff sues a large corporate defendant. On the other hand, when, as **[*5]** here, the plaintiff's actual damages (measured by the policy) are only a few thousand dollars, we do not wish to allow a plaintiff to unjustifiably claim damages of millions, attempt discovery which is only tangential to the basic claim and that would cost hundreds of thousands of dollars to complete and thereby bludgeon a defendant insurance company into settlement.

One formulation of this balancing problem comes from Judge Palmieri in *K.S. Corp. v. Chemstrand Corp., 203 F.Supp. 230, 232 (S.D.N.Y. 1962):*

[The] problem is to permit a litigant to obtain whatever information he may need to prepare adequately for the issues that may develop, without imposing an onerous burden of information gathering on his adversary.

At 8 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL, § 2174, p. 548 (1970), the authors speak to the same situation:

An objection will be sustained if either a particular interrogatory or a set of interrogatories is thought to be so broad and all inclusive as to be burdensome. In making that determination the court, of course, must balance the burden on the interrogated party against the benefit that having the information would provide to the party **[*6]** submitting the interrogatory.

[HN2] All interrogatories are "burdensome" in that they require an expenditure of time and effort by the answering not successfully object on the sole grounds that the answering of an interrogatory would be "burdensome." As noted by the court in *Adelman v. Nordberg Mfg. Co., 6 F.R.D. 383, 384 (E.D. Wis. 1947):*

It is not a valid objection that the compilation of answers to the interrogatory will necessitate large expenditures of time and money by defendant if in other respects the information sought is a proper object of discovery.

See also *Carlson Companies, Inc. v. Sperry & Hutchinson Co., 374 F.Supp. 1080, 1088 (D. Minn. 1974); Klausen v. Sidney Printing & Publishing Company, 271 F.Supp. 783, 784 (D. Kan. 1967); Flood v. Margis, 64 F.R.D. 59, 61 (E.D. Wis. 1974); Kainz v. Anheuser-Busch, Inc., 15 F.R.D. 242, 247-248 (N.D. Ill. 1954); Chenault v. Nebraska Farm Products, 9 F.R.D. 529, 532 (D. Neb. 1949).*

Therefore, the key test is whether the "burdensomeness" of the interrogatories is "excessive or oppressive." *Caldwell-Clements, Inc. v. McGraw-Hill Pub. Co., 12 F.R.D. 531, 538 (S.D.N.Y. 1952).* See also *Pilling v. General Motors Corporation, 45 F.R.D.* **[*7]** *366, 369 (D. Utah 1968); Wirtz v. Capitol Air Service, 42 F.R.D. 641, 643 (D. Kan. 1967); Fischer & Porter Company v. Sheffield Corporation, 31 F.R.D. 534, 538 (D. Del. 1962).*Again a balancing process must occur before the issue of whether "excessiveness" or "oppressiveness" exists may be resolved.

One of the factors which we feel must go into the balance is the need for broad discovery as recognized in the modern Rules of Civil Procedure, which are to be liberally construed. *Wirtz v. Capitol Air Service, Inc., supra, 42 F.R.D. at 642.* The days of surprise tactics at trial and the hiding of relevant evidence during discovery are surely past, and no legitimate avenue of discovery should be closed to a party. *Metal Foil Prod. Mfg. Co. v. Reynolds Metals Co., 55 F.R.D. 491, 493 (E.D. Va. 1970).* Nonetheless, the liberality with which the rules of discovery are to be read is not unlimited. *Klausen v. Sidney Printing & Publishing Company, supra, 271 F.Supp. at 784; Jones v. Goldstein, 41 F.R.D. 271, 274,* (D. Md. 1966).

Another factor which must be figured into the equation is the need to prevent discovery costs from soaring to intolerable levels. Normally, a defendant routinely **[*8]** produces information which is at its disposal, but is not required to do extensive research and compilation of data that is not known. *Riss & Company v. Association of American Railroads, 23 F.R.D. 211, 213 (D.D.C. 1959); Dusek v. United Air Lines, 9 F.R.D. 326, 328 (N.D. Ohio 1949); Cinema Amusements v. Loew's, Inc., 7 F.R.D. 318, 321 (D. Del. 1947).* On the other hand, it may well be in some instances that the information sought is not available, but should be. Defendants should not be allowed to avoid their fair burden of discovery by hiding behind an inadequate record-keeping system that makes retrieval of information unnecessarily burdensome. *Kozlowski v. Sears, Roebuck & Co., 73 F.R.D. 73 (D. Mass. 1976).*

Yet another factor to be considered in the balancing process is the posture of the case. With some reluctance, we conclude that [HN3] a proper determination of a motion, such as the one before us, requires at least a cursory evaluation of the merits of the controversy as they appear in the allegations and the proof proffered by the interrogating party. This evaluation, it seems to us, is required so that unnecessary burdens will not be placed upon answering parties as a result **[*9]** of mere "fishing expeditions."

We must remember that a complaint "should serve to seek redress for a wrong, not to find one." *Segal v. Gordon, 467 F.2d 602, 607-608 (2d Cir. 1972).* See *Segan v. Dreyfus Corporation, 513 F.2d 695, 696 (2d Cir. 1975).*

With this background material presented, we may proceed to a discussion of the specific interrogatories in question:

The first interrogatory reads as follows:

1. Identify by name and address each of your homeowner insurance policyholders whose claim you denied or resisted under circumstances substantially similar to plaintiff's claim herein from February 21, 1973 to the present time.

The Magistrate ordered defendant to answer this interrogatory, but limited the answer to the State of Kansas for the years 1974 and 1975. Even with this limitation, we believe that defendant should not be required to answer this interrogatory. Defendant has indicated that it will cost about $3,000 to answer this interrogatory. In light of defendant's financial resources, this might not appear to be an excessive amount. However, plaintiff has indicated that it has absolutely no evidence to indicate that there is any pattern or scheme of conduct. **[*10]** Therefore, this interrogatory constitutes a large fishing expedition. To force defendant to go to this expense, before requiring plaintiff to utilize more limited means of discovery to determine that there may be some basis for this question, is unjustified. If through other interrogatories and other means of discovery plaintiff can demonstrate that this is not a mere fishing expedition, we shall reconsider our ruling as to this interrogatory.

The second interrogatory requests:

2. Identify by name and address each policyholder who has filed a claim for loss with you from February 21, 1973, to the present time for damage claimed to have been caused to real property by smoke or fire and whose claim you have denied or resisted taking the position that someone else was liable for such damage.

Again, the Magistrate ordered defendant to answer this interrogatory, but restricted its scope to the State of Kansas for the years 1974 and 1975. The cost of answering this interrogatory is $1,760. Plaintiff admits that it is nothing more than a fishing expedition. The same considerations applied to interrogatory #1 apply here. Defendant need not answer this interrogatory.

The **[*11]** third interrogatory asks:

3. Has any lawsuit been filed against you by any policy holder or claimant whose claim you denied or resisted under circumstances substantially similar to plaintiff's claim herein within the past five years?

Interrogatory #4 requests relevant details concerning such litigation. Defendant has not broken down the cost of answering these two interrogatories, which the Magistrate has limited to the State of Kansas for the years 1974 and 1975. An insurance company should certainly retain complete records as to the litigation in which it is involved. We doubt seriously that answering these two interrogatories would place a serious bruden upon defendant. We concur in the Magistrate's ruling that these two interrogatories, as limited, must be answered.

The fifth interrogatory asks defendant to:

5. Identify by name and address all persons, whether policyholders or not, who have filed written complaints concerning the denial of claims under circumstances substantially similar to plaintiff's claim herein with your company as to their treatment by your company from February 21, 1973 to the present time.

The sixth interrogatory is similar:

6. Identify **[*12]** by name and address all persons, whether policy holders or not, who have filed written complaints concerning the denial of claims under circumstances substantially similar to plaintiff's claim herein with the Insurance Department of the State of Kansas from February 21, 1973 to the present time.

The Magistrate limited both of these questions to Kansas, to the period of 1974 and 1975, and to complaints filed by policyholders only (not "all persons").

Since both of these interrogatories are limited to the State of Kansas, we believe they should be answered, because defendant should already have this information available. [HN4] Defendant is required by state law to keep a registry of complaints such as these. *K.S.A. § 40-2404* indicates:

The following are hereby defined as unfair methods of competition and unfair or deceptive acts or practices in the business of insurance:

. . .

(10) Failure to maintain complaint handling procedures. Failure of any person, who is an insurer on an insurance policy, to maintain a complete record of all the complaints which it has received since the date of its last examination under *K.S.A. 40-222*; but no such records shall be required for **[*13]** complaints received prior to the effective date of this act. This record shall indicate the total number of complaints, their classification by line of insurance, the nature of each complaint, the disposition of these complaints, the date each complaint was originally received by the insurer, and the date of final disposition of each complaint. For purposes of this subsection, "complaint" shall mean any written communication primarily expressing a grievance related to the acts and practices set out in this section.

Defendant should answer interrogatories #5 and #6 as they were limited by the Magistrate.

Interrogatory #7 reads:

7. How many insurance policies has your agent Ed Pinnick sold which are similar to the policy involved in this lawsuit?

The remaining interrogatories also deal specifically with Ed Pinnick, defendant's agent who sold to plaintiff her policy.

8. Identify by name and address all persons who have filed written complaints, either with your company or with the Insurance Department of the State of Kansas, concerning denial of claims under those insurance policies sold by your agent Ed Pinnick, and under circumstances substantially similar to plaintiff's **[*14]** claim herein.

9. Has your agent Ed Pinnick ever been a party to any lawsuit involving fraud or misrepresentation, other than the present one.

10. If so, please state the title of the suit, Pinnick's status therein, the court where it was filed, the date it was filed, and the present status or outcome thereof.

11. Identify by name and address all persons who have filed a complaint, either with your company or with the Insurance Department of the State of Kansas, concerning any fraud or misrepresentation on the part of your agent, Ed Pinnick.

The Magistrate ordered defendant to answer interrogatories #7-11, although he limited #8 to the State of Kansas for the years 1974 and 1975.

These interrogatories are more relevant than some of the others because they are limited to the specific agent who dealt with plaintiff. Plaintiff has alleged at least one case of "bad faith" involving this agent, but admits no evidence involving any other agent. Thus, these interrogatories do not represent such a large fishing expedition as is embodied in interrogatory #1. Further, defendant has not detailed the cost of answering these interrogatories, and we do not believe that such cost **[*15]** would be excessive. Defendant shall answer interrogatories #7 through #12. Interrogatories #8 and #11 are limited from "all persons" to policyholders.

We hope that we have reached a reasonable compromise as to the scope of discovery in this action. Should the answers to the interrogatories which we have ordered defendant to answer turn up new information, or should other discovery devices present information which would justify broader discovery, we shall reconsider our ruling as to interrogatories #1 and #2. At present, those interrogatories are mere fishing expeditions, and we have no reason to believe that they would provide any useful information. This Court, by Judge O'Connor, has recently reaffirmed its resolution to fulfill its duty to "keep the inquiry within reasonable bounds." Seiffer v. Topsy's International, Inc., No. KC-3435 (D. Kan., 11/24/76), citing *Amherst Leasing Corporation v. Emhart Corporation, 65 F.R.D. 121, 126 (D. Conn. 1974),* and *Foremost Promotions, Inc. v. Pabst Brewing Co., 15 F.R.D. 128, 129 (N.D. Ill. 1953).*

IT IS THEREFORE ORDERED that the Magistrate's Order and Supplemental Order, as modified, be affirmed.

Dated this 18th day of April, 1977, **[*16]** at Topeka, Kansas.

RICHARD D. ROGERS / United States District Judge

# Flight Operations Organization
## October 2003




Exhibit B