# Exhibit "D"

Todd C. Emerson, A8175
SkyWest Airlines, Inc.
444 S. River Road
St. George, UT 84790
Telephone: (435) 634-3530

Scott M. Petersen, A7599
David N. Kelley, A9137
FABIAN & CLENDENIN,
A Professional Corporation
215 South State Street, 12th Floor
P.O. Box 510210
Salt Lake City, Utah 84151
Telephone: (801) 531-8900

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ANDREW DAVID CALLAWAY<br><br>Plaintiff,<br><br>vs.<br><br>SKYWEST AIRLINES INC., a Utah Corporation,<br><br>Defendant. | **AFFIDAVIT OF JACQUELINE NIELSEN**<br><br>Civil No. 2:04CV00179<br><br>Judge Ted Stewart |

STATE OF UTAH )
) ss.
COUNTY OF WASHINGTON )

JACQUELINE NIELSEN, having been duly sworn, deposes and says as follows:

1. I am a Manager in SkyWest's People Department. I have previously given my deposition in this matter and I am competent to testify about the facts contained herein.

2. It has been my job to review and respond to almost every PRIA request sent into SkyWest for the past three years. I have also reviewed the files where PRIA requests are kept, and specifically, the files where all PRIA requests for David Andrew Callaway are kept.

3. In June 2004 SkyWest received a PRIA request for David Andrew Callaway, a former SkyWest pilot.

4. SkyWest has received no other PRIA Requests for Mr. Callaway in the past twelve months.

5. The Callaway PRIA was prepared on a Federal Aviation Administration form. It identified Tiffany Cotter as the SIF Representative of AAWH, the air carrier. It also listed YEN789J as the air carrier's FAA certificate number.

6. I was instructed by Todd Emerson, SkyWest's General Counsel, to hold off on answering this PRIA request because Mr. Callaway and SkyWest were negotiating a settlement that might call for a change in Mr. Callaway's employment status.

7. On or about October 22, 2004, Mr. Emerson informed me that those negotiations had failed and instructed me to fax the PRIA information to A.A.W.H.

8. I used the fax number provided on the PRIA request form and faxed the information to Tiffany Cotter at A.A.W.H.

9. It was my belief that the information was going to Polar Air's parent company; Air Atlas World Holdings ("AAWH").

10. To ensure that the fax was received, I called Polar Air's HR department to confirm receipt of the information. Polar denied receiving a fax from SkyWest and informed me that they had not sent SkyWest the identified PRIA Request and that Tiffany Cotter was

not a Polar Air employee. Polar also verified that the mailing address provided on the PRIA did not correspond to Polar Air.

11. I then contacted the FAA and learned that AAWH is not a registered air carrier and that certificate number YEN789J did not match any known air carrier.

12. I then traced the fax number to a machine located at the Staples Corporate Headquarters in Framingham, Massachusetts. I called the reception desk for Staples and was told that Tiffany Cotter was a Staples employee.

13. I ended my investigation and reported my findings to Todd Emerson.

Dated this 27 day of December 2004.

JACQUELINE NIELSEN

SUBSCRIBED AND SWORN to before me this 27th day of December 2004.

JILL E JONES
Notary Public
State of Utah
My Commission Expires Oct. 10, 2008
3280 Inca Circle, St George, UT 84790

Notary Public

Page 293

saying is, if there's a better document than this, where is it? I don't--you didn't produce it to us.
A. Okay. Well, hold on. Now that I read this more, I believe this was my closing statement to the review board that I read--
Q. Okay.
A. --at the end of the review board.
Q. Look at the third--
A. So this was not a letter that was written. This was simply for my reference in the review board.
Q. So this is just--did you submit this to the review board, or is this just something you used to read from during your closing argument?
A. I used it to read from during my closing arguments.
Q. Okay.
Exhibit-47 marked
BY MR. PETERSEN:
Q. All right. I'm showing you now what's been marked as Exhibit 47. It's CAL0133. Do you recognize that document?
A. It appears to be a prior request page or document.

Page 294

Q. Okay. There's a Part I and a Part II in there. Do you see that? First box says, "Part I: Air Carrier and Other Records Request (PRIA); Part II: Airman Consent to Release of Records." Is that your signature in Part II?
A. Yes, it is.
Q. Dated 6/12/2004, correct?
A. That's correct.
Q. And did you prepare Part II?
A. Yes, I did.
Q. The Part I, do you know who prepared that?
A. Yes, I do.
Q. Who is it?
A. Tiffany Cotter.
Q. Who is Tiffany Cotter?
A. Tiffany Cotter is a friend of mine.
Q. All right. And who does she work for?
A. She works for a company in Boston.
Q. What's the company called?
A. I don't know.
Q. Does she work for Polar Air?
A. No.
Q. Do you see where it says "AAWH" under--over the "Air Carrier Name"?

Page 295

A. Yes, I do.
Q. What is that in reference to? Do you know?
A. I don't know. I did not fill out Part I.
Q. Does Tiffany Cotter work for an airline at all?
A. No, she does not.
Q. Okay. That's the 64 dollar question, then, why would you have your friend Tiffany Cotter fill out an air carrier request?
A. Because I had not received my PRIA records from Polar Air. They had not received PRIA records that were requested during an interview I had. And I wanted to see why and if I would be able to obtain my own records, which I am allowed to do.
Q. So you had her falsify a PRIA request.
MR. STRINDBERG: Objection. It's argumentative.
MR. PETERSEN: Okay. Go ahead. Answer.
MR. STRINDBERG: Just a second. Give me a moment.
THE VIDEOGRAPHER: We're going off the record. Time is 5:08 p.m.

Page 296

(Recess taken 5:08-5:11 p.m.)
THE VIDEOGRAPHER: We're back on the record. Time is 5:11 p.m.
MR. PETERSEN: Could I get you to read back the question?
(The last question was read.)
MR. STRINDBERG: And I'm going to--before he answers, I have advised him that he has a constitutional right not to answer that question. The reason I've advised him is because Mr. Emerson in prior conversations has gone on and on about submitting some kind of a PRIA application if your not a member of an airline as a criminal offense.
So, I don't know whether it is or not, but I think under those circumstances it's apparent to me that SkyWest wants to make some issue out of it. So I've told Mr. Callaway he doesn't have to answer if he doesn't want to based on his Fifth Amendment right.
BY MR. PETERSEN:
Q. Do you want me to ask the question again?
MR. STRINDBERG: It's up to you.
THE WITNESS: I'm going to abide by

# Exhibit "E"

PLEASE FAX:

Form Approved: OMB No. 2120-0607

US Department of Transportation
Federal Aviation Administration

# AIR CARRIER AND OTHER RECORDS REQUEST (PRIA)

Pilot Records Improvement Act Of 1996
Title 49 U.S.C. § 44703(h), Records of Employment of Pilot Applicants, As Amended

## NOTICE

*Request will not be deemed received or valid unless Parts I and II are completed as specified in the instructions.*

*Pursuant to 49 U.S.C. § 44703(h)(5), a person who receives a request for records under 49 U.S.C. § 44703(h)(1) shall furnish a copy of all such requested records maintained by the person not later than 30 days after receiving the request.*

## PART I: *AIR CARRIER AND OTHER RECORDS REQUEST (PRIA)*

To: Skywest Airlines
444 S. River Rd.
St. George, UT 84709

AAWH (Air Carrier Name), YEN789J (Air Carrier Certificate #), hereby requests copies of records as required under 49 U.S.C. § 44703(h)(1)(B), as amended, pertaining to the airman consenting in Part II below.

Name: Tiffany Cotter (Print – Air Carrier Representative) Title: SJF Representative (Print—Title of Air Carrier Representative)

Signature: Tiffany Cotter (Air Carrier Representative) Date: 6/17/04

Mail Records To: ACS - Verification Department
510 E. 3rd St.
Boston, MA 02127

Telephone: ______ FAX: (508) 253-8885

## PART II: *AIRMAN CONSENT TO RELEASE OF RECORDS*

I DAVID ANDREW CALLAWAY (Print – Airman's First, Middle, and Last Name), consent to and authorize my current or previous employer SKYWEST AIRLINES (Print – Employer Name) to release records pertaining to me as required under 49 U.S.C. § 44703(h)(1)(B) to the air carrier named in Part I above.

Airman Certificate Number(s): 127522247

Signature: [signature] (Not valid unless signed and dated) Date: 6/17/04

*Mailing address: 581 W. CAPITOL ST.
(*Indicates required information. See Instructions: Part II, item 4)
SALT LAKE CITY, UT 84103

Telephone: 801-699-0849

FAA Form 8060-11 (5-04)

CAL 0133

# Exhibit "F"

# SkyWest/Callaway Voicemail
# (First Message)
# Telephone Message
# from
# Denise Cambah (spelling?)
# to
# David Callaway

Date Not Given

Hi, this message is for David Callaway. David, this is Denise Cambah from Polar Cargo. I'm calling in regard to your interview you had the other day with Polar. We'd love to give you some information and off the top of our next step we were rather impressed with you and again we'd like to talk to you as soon as possible. My number is 914-701-8443 and my name is Denise Cambah, and I'd like to talk to you about your Polar Cargo interview the other day. Thanks a lot. Bye-bye.

# SkyWest/Callaway Voicemails
# (Second Message from CD)
# Telephone Message
# for
# David Callaway
# from
# Denise Cambah (?)

Date Not Given

Hi, this message is for David. David, this is Denise Cambah from Polar Cargo. I'm giving you a call back regarding your message. I did leave you a message regarding your interview. Again, I'm not sure if I left all the pertinent information here, but we were rather impressed with you and we'd like to invite you to a July 19th class in Denver, Colorado. Please do give me a call back as soon as possible at 914-701-8443. Hope [to hear from you soon (inaudible)]. Bye-bye.

# Exhibit "G"

**H**
NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA4 Rule 36 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
William F. BURBANK, IV, d/b/a Sure Fire Distributing, Inc., Defendant-Appellant.
**No. 88-5634.**

Argued May 12, 1989.
Decided June 12, 1990.

Appeal from the United States District Court for the Western District of North Carolina, at Asheville. Robert D. Potter, Chief District Judge. (CR-88- 10-A)

Joseph Blount Cheshire, V, Purser, Cheshire, Parker, Hughes & Manning, Raleigh, N.C., argued for appellant; George B. Currin, Purser, Cheshire, Parker, Hughes & Manning, Raleigh, N.C., on brief.

Thomas Ernest Booth, United States Department of Justice, Washington, D.C. (argued), for appellee; Thomas J. Ashcraft, United States Attorney, Jerry Miller, Assistant United States Attorney, Asheville, N.C., on brief.

W.D.N.C.

VACATED AND REMANDED.

Before WILKINSON and WILKINS, Circuit Judges, and CHARLES H. HADEN, II, Chief United States District Judge for the Southern District of West Virginia, sitting by designation.

PER CURIAM:

****1** William F. Burbank, IV, was convicted by a jury on five counts of mail fraud and five counts of wire fraud in violation of 18 U.S.C. § § 1341 and 1343. Burbank challenges the convictions claiming that the admission into evidence of the written deposition of Daniel Cammaert De Vos violated his Sixth Amendment right to confront the witness and also violated the Federal Rules of Evidence.

After a thorough review of the evidence and the law, we find the deposition testimony did not possess circumstantial guarantees of trustworthiness or adequate indicia of reliability. We conclude that its admission under the Federal Rules of Evidence was prejudicially erroneous and in violation of Burbank's Sixth Amendment right to confrontation. Accordingly, the judgment of conviction is vacated and the case remanded for a new trial.

I

Burbank served as Vice President of Sure Fire Distributing, Inc., a corporation engaged in the distribution and sales of motorcycle parts and accessories. Sure Fire was owned by Burbank's father, William F. Burbank, III, and the corporation maintained its office and warehouse in Asheville, North Carolina. Sure Fire was a party to an accounts receivable financing agreement with Chase Commercial Corporation, wherein Chase agreed to advance working capital to Sure Fire in amounts commensurate with Sure Fire's level of inventory and accounts receivable. All advances made by Chase were secured by this collateral.

The indictment charged that during 1984 Burbank devised a scheme or artifice to defraud Chase by creating false invoices and accounts receivable reflecting fictitious sales to Commercial Interamericana, an entity located in Colombia, South America. It charged that during December 1984 Burbank reported $213,000 of accounts receivable from Commercial and R.W. Smith and Company, an exporter and the purported middleman in the transactions. Based upon the alleged sales, Chase advanced Sure Fire amounts exceeding $166,000.

In late December 1984, a fire destroyed Sure Fire's business property. Burbank's father instituted a civil action on behalf of Sure Fire to recover proceeds under the company's fire policy. Burbank was not a party in the civil action. The alleged sales from Sure Fire to Commercial were at issue in the civil litigation. During the course of discovery, the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

insurer notified Sure Fire of its intention to depose on written examination Daniel Cammaert De Vos, a Colombian citizen and executive of Commercial. On October 24, 1986, De Vos appeared before the Twenty-Ninth Civil Municipal Court of Bogota, Colombia, and gave sworn testimony in response to propounded direct and cross-examination questions. De Vos testified that Commercial did not transact business with Burbank, Burbank's father, Sure Fire, or R.W. Smith in 1984. He specifically denied that Commercial placed any orders with Sure Fire during the relevant period. He explained that Commercial did not import goods from the United States in 1984 due to import restrictions imposed by the Colombian government.

****2** At trial, the United States relied heavily upon the De Vos deposition to establish Burbank's deceptive scheme to obtain money from Chase fraudulently. The government, however, did not attempt to have De Vos present at trial to testify regarding these matters. Instead, eight days prior to trial, it notified Burbank of its intention to introduce a translated version of De Vos's civil deposition as evidence. The deposition was read into evidence, the Court concluding that it was admissible under the residual hearsay exceptions provided in Rules 803(24) and 804(b)(5) of the Federal Rules of Evidence. The court ruled, *inter alia,* that the deposition was trustworthy and that De Vos was adequately cross-examined in the matter.

II

Burbank claims that the admission of the deposition testimony violated his Sixth Amendment right to confront his accuser and also violated the Federal Rules of Evidence.

It should be noted that the traditional hearsay exception governing former testimony of unavailable witnesses, Rule 804(b)(1), was not available to the government under the factual situation at hand. Under 804(b)(1), former testimony is admissible in criminal cases only when the party against whom the testimony is offered had an opportunity to cross-examine or otherwise develop the witness's testimony. Obviously, in the present case, the 804(b)(1) exception does not apply to De Vos's deposition because Burbank was not a party in the civil action and, therefore, was not afforded an opportunity to challenge or expand the deposition testimony at the time it was taken.

In admitting the deposition, the court relied upon the residual hearsay exceptions provided in Rules 803(24) and 804(b)(5). The language of these rules is identical with one difference: the unavailability of the declarant is not a necessary prerequisite for admissibility under 803(24). In *United States v. Mandel,* 591 F.2d 1347, 1368 (4th Cir.1979), *conviction affirmed en banc,* 602 F.2d 653 (4th Cir.1979), *further rehearing en banc denied,* 609 F.2d 1076 (4th Cir.1979), *cert. denied,* 445 U.S. 961 (1980), Judge Widener stated that the residual rules were "designed to fill in omissions of other exceptions and to allow for the development of new general exceptions to the rule." (Citations omitted.) He warned, however, that the residual rules were not to be interpreted as broad exceptions which "give the trial judge unfettered discretion to admit otherwise inadmissible hearsay." *Id. See also United States v. Bailey,* 581 F.2d 341 (3d Cir.1978); *Huff v. White Motor Corp.,* 609 F.2d 286 (7th Cir.1979). *Mandel* thus instructs that the residual rules are to be construed in light of the limited purposes intended by Congress.

For hearsay evidence to be admissible under the residual exceptions, it must satisfy five requirements. The proponent must establish: (1) that the proffered evidence has "circumstantial guarantees of trustworthiness" equivalent to evidence admitted under established hearsay exceptions; (2) that the statement is "offered as evidence of a material fact;" (3) that "the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts;" (4) that "the general purposes of [the] rules and the interest of justice will best be served by admission of the statements into evidence;" and (5) that the opposing party was given adequate notice of the proponent's intention to invoke the exception, "including the name and address of the declarant." Fed.R.Evid. 803(24) and 804(b)(3).

****3** Burbank claims that De Vos's testimony was not trustworthy and that the government did not make reasonable efforts to obtain evidence more probative than the deposition. We address these two contentions in resolving the issue.

A. *Trustworthiness*

Our review of the trial court's finding that the deposition possessed guarantees of trustworthiness is governed by the "clearly erroneous" standard. *United States v. Workman,* 860 F.2d 140, 144 (4th Cir.1988); *United States v. Smith,* 792 F.2d 441, 443-44 (4th Cir.1986), *cert. denied,* 479 U.S. 1037 (1987). The

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

government claims that the trial court was justified in its finding of trustworthiness because the deposition was taken before a judicial officer, under oath, and subject to cross-examination. Although these characteristics generally militate strongly in favor of trustworthiness, the circumstances under which De Vos testified decreased the propensity for truthfulness. As recognized in *United States v. Bailey, supra,* "the trustworthiness of a statement should be analyzed by evaluating not only the facts corroborating the veracity of the statement, but also the circumstances in which the declarant made the statement and the incentive he had to speak truthfully or falsely."

The facts in the instant case are unlike those in *United States v. Workman, supra,* where we held circumstantial degrees of trustworthiness justified admission of a deceased co-defendant's tape-recorded statement. In the tape the declarant confessed his role in the crimes charged and inculpated the defendant. In assessing the trustworthiness of the hearsay, we considered that the statement was given voluntarily and in the presence of declarant's counsel; that the declarant cooperated with authorities subsequent to the statement; and that the declarant's statement qualified as a statement against interest under Rule 804(b)(3). Under those circumstances, we held the statement to have satisfied the trustworthiness requirement of Rule 804(b)(5).

A primary factor which reduces our confidence in the trustworthiness of De Vos's testimony is the effect of the Colombian embargo on United States imports for the period relevant to the indictment. Under the embargo, Colombians were prohibited from importing luxury items, including motorcycle parts and accessories, from United States entities. Consequently, for Commercial to have purchased and imported the merchandise in question, it must have acted through illegal channels, *i.e.,* the black market, and under pain of criminal sanctions if such activities later were discovered.

We thus believe that the Colombian import restrictions may have provided De Vos with incentive to be less than forthright when confronted with written questions on the subject of "luxury" purchases from foreigners. Certainly an admission by De Vos before a member of the Colombian judiciary of his involvement in the relevant business transactions would be tantamount to a direct admission of guilt for violations of the Colombian embargo. We conclude that the potentially self-serving denials made under these circumstances were not of an equivalent nature to evidence admissible under established hearsay exceptions, such as statements against interest. *See* Fed.R.Evid. 804(b)(3). Indeed, De Vos's testimony favored his penal interest.

**4 The government claims that cross-examination in the civil action was sufficient to protect the trustworthiness of the deposition testimony. The government urges that Burbank's interest in cross-examining De Vos was similar to that pursued by Sure Fire in the civil action. The government argues that criminal defendant Burbank and the civil litigant Sure Fire had a common interest either to establish the existence of the relevant business transactions or to discredit De Vos's testimony in the event he denied involvement. We reject this contention for reasons which follow.

The government's argument fails to take into account the purpose and role of the deposition in the respective actions. In the litigation concerning fire insurance proceeds, the insurance company apparently used the deposition to develop information regarding Sure Fire's preparation and/or motive to destroy its business. The deposition thus concerned a collateral issue in the litigation and played a relatively minor role. On the other hand, the significance of the deposition in this criminal case was paramount. Its content supported the allegations of the indictment and provided vital evidence at trial. Indeed the government acknowledged at argument the importance of the written deposition to the ultimate convictions.

Depositions upon written questions are one of the least effective means of challenging a declarant's credibility. The predictable and cumbersome nature of interrogatories makes it difficult for one to conduct searching examination of a hostile or reluctant witness. Wright & Miller, *Federal Practice & Procedure, Civil,* § 2131. Likewise, this method is ineffective for the party attempting to put credibility in issue because the jury is unable to observe the declarant's demeanor.

The shortcomings inherent with this method are illustrated by the fact that Burbank was not afforded an opportunity to cross-examine or otherwise elicit relevant information regarding De Vos's credibility. Instead, Burbank was forced to rely upon questions propounded prior to his indictment, in an action to which he was not a party, and taken at a time when

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

his reputation and liberty were not in jeopardy. Considering the significance of De Vos's credibility to the issues at hand, and his potential motive to be less than forthright when confronted with the relevant business transactions, we conclude that the written cross-examination questions were insufficient to provide the deposition testimony with circumstantial guarantees of trustworthiness.

Accordingly, we hold that the trial court's finding that De Vos's testimony possessed "circumstantial guarantees of trustworthiness" was clearly erroneous.

B. *Reasonable Efforts to Obtain Other Evidence*

An additional requirement of Rules 803(24) and 804(b)(5) is that the hearsay statement be "more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts." Obviously, the most probative evidence the government could have offered on the issue of whether Sure Fire or Burbank engaged in sales with Commercial would have been the live testimony of De Vos. De Vos, however, was unavailable to testify because he was beyond the court's compulsory process. *Mancusi v. Stubbs*, 408 U.S. 204, 212-13 (1972); *United States v. Rivera*, 859 F.2d 1204, 1206-07 (4th Cir.1988). Burbank nevertheless contends that the government could have employed reasonable efforts to procure evidence more probative than the existing deposition. The government made no showing that it attempted to produce any evidence, other than the civil deposition, concerning the alleged dealings between Sure Fire and Commercial.

****5** Burbank claims that the government could have arranged for a subsequent written deposition, thus providing Burbank and his counsel an opportunity to cross-examine De Vos. Burbank urges that the opportunity to cross-examine and inquire into matters relevant to the trustworthiness and credibility issues would have resulted in evidence more probative than the existing statement. Had Burbank been afforded this opportunity, the statement likely would have qualified for admission under the former testimony exception, Rule 804(b)(1), and would have obviated any potential confrontation clause issues. We, therefore, agree that a subsequent written deposition would have been more probative than the existing statement and that the government failed to establish that it made reasonable efforts to obtain the more probative evidence.

III

Having concluded that De Vos's deposition does not possess circumstantial guarantees of trustworthiness equivalent to evidence admitted under established hearsay exceptions, it logically follows that the government failed to establish that the deposition possessed adequate "indicia of reliability" to satisfy the requirements of the confrontation clause. *Ohio v. Roberts*, 448 U.S. 56 (1980); *United States v. Workman, supra*, at 144.

The final judgment of the district court is vacated and the case remanded for a new trial.

*VACATED AND REMANDED.*

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.