Todd C. Emerson, A8175
SkyWest Airlines, Inc.
444 S. River Road
St. George, UT 84790
Telephone: (435) 634-3530

Scott M. Petersen, A7599
David N. Kelley, A9137
FABIAN & CLENDENIN,
A Professional Corporation
215 South State Street, 12th Floor
P.O. Box 510210
Salt Lake City, Utah 84151
Telephone: (801) 531-8900

Attorneys for Defendant

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

| | | |
|---|---|---|
| ANDREW DAVID CALLAWAY<br><br>Plaintiff,<br><br>vs.<br><br>SKYWEST AIRLINES INC., a Utah Corporation,<br><br>Defendant. | ) | **REPLY MEMORANDUM SUPPORTING MOTION TO STRIKE THE AFFIDAVIT OF DAVID ANDREW CALLAWAY**<br><br>Civil No. 2:04CV00179<br><br>Judge Ted Stewart |

Defendant SkyWest Airlines, Inc. ("SkyWest") files the following Reply Memorandum Supporting its Motion to Strike the Affidavit of David Andrew Callaway.

## ARGUMENT

### I. CALLAWAY CANNOT TESTIFY AS TO THE CONTENTS OF HIS ALLEGED 2000 SAPA POSTINGS BECAUSE HE FAILED TO PRODUCE THEM DURING DISCOVERY.

Callaway's arguments on this point are nonresponsive. Instead of addressing his failure to comply with Federal Rule of Evidence 1002 or this Court's scheduling order, Callaway simply

attaches copies of the never-produced documents to his memo—as if SkyWest were merely complaining about the failure to provide courtesy copies. He does not bother to authenticate, lay foundation for, or explain why these documents should be allowed into evidence now, one full year after the discovery deadline.

SkyWest asserted in its original memorandum that Callaway's testimony about the contents of his SAPA postings is inadmissible pursuant to Rule 1002. Amazingly, Callaway does not bother to address the best evidence rule, except to say that "Callaway has no dispute with the Rules of Evidence or the case law interpreting those rules." (Opp. Mem. at 4). Rather, he now submits copies of the phantom documents and concludes that SkyWest's complaint about "failure to attach" the exhibits is remedied. The issue is not about failing to attach exhibits, providing courtesy copies or other matters of form. It is about the substantive failure to produce the alleged pro-union postings on the SAPA site in 2000 and Callaway's subsequent attempt to testify about them. These are documents he claims he authored but were never produced in response to interrogatories and deposition questions. He does not dispute that Rule 1002 forbids his testimony; he simply tries to circumvent it by slipping unauthenticated and inadmissible documents in front of the Court.

SkyWest is highly prejudiced by this attempt to skirt the rules. These new documents, if they ever existed previously, should have been produced almost two years ago. Yet they were never produced nor identified for SkyWest despite (1) being specifically required by Fed. R. Civ. Pro. 26(a)(1)(B) as early as May 21, 2004 (*see* Scheduling Order, dated April 26, 2004 [Docket No. 9]); (2) SkyWest specifically requesting them in formal discovery requests in September 2004 (over 1 ½ years ago); (3) SkyWest asking Callaway specific questions about the substance

of the alleged SAPA postings during his deposition in 2004 (Callaway Dep. at 50-52, 54, attached as Exhibit "A"); and (4) filing its initial motion for summary judgment on June 6, 2005 in which SkyWest noted the following: "It is significant that Mr. Callaway cannot produce a copy of what he claims he posted in 2000, and when asked whether someone printed off his pro-union statements and gave them to SkyWest, he responded: 'I don't know.'" (Mem. Supporting Mot. for Summ. J. at 30, filed June 6, 2005). Callaway was not required to answer the summary judgment motion for eight months, yet still failed to produce the documents, or an excuse for their absence, in his recent opposition memorandum.

Callaway is using these new documents to create a sham issue of fact. *See Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986). With the discovery deadline long since past, SkyWest has no ability to examine or investigate these new documents. Neither should SkyWest be ordered now, after incurring substantial costs in the investigation and defense of this matter, to go back into discovery over documents offered in violation of this Court's previous scheduling orders and the rules of evidence. It is not SkyWest's burden to authenticate and provide foundation for Callaway's late documents. Neither should SkyWest be prejudiced by Callaway's blatant disregard for the rules of evidence, procedure, and this Court's direct orders.

Interestingly, Callaway did produce about 185 pages of private "SAPA postings" from February 2001 through June 2003. Although irrelevant to his claims[1] his counsel explained they were produced to illustrate the content and manner in which the missing 2000 postings were made—as a "string of e-mails". (Callaway Dep. at 346-50). These copies do not include

[1] Callaway has never asserted that SkyWest had knowledge of, or disciplined him for, any SAPA posting after the year 2000.

drawings or graphs of the type that Callaway now alleges are the "postings" he made on the SAPA site in 2000. (*See* Exhibit "B"). Of course, his subsequent posting do not authenticate the newly offered cartoons and graphs. Neither are the exhibits self-authenticating. They are accompanied by no foundation that would indicate when they were prepared, how they were posted or their accompanying text. The documents themselves provide no indicia that they were ever posted on an electronic message board or as an attachment to an e-mail that was submitted to an electronic message board.[2]

Finally, although Callaway testified that his 2000 SAPA postings included "arguments as to why we should unionize" (Callaway Dep. at 52), the proffered documents do not discuss a union or union organizing. Without the text of the alleged postings, we are left to imply a message from the graphics: there is a disparity in pay between top executives and frontline workers at SkyWest. Of course, this implication does not identify Callaway as a union organizer. Complaining that your boss makes more money than you do is not an act of union organizing. These cartoons are nothing more than apparent complaints about pay. The RLA does not protect complaints an employee may have about his pay or working conditions as union organizing activity. Rather, it protects employees who engage in activity designed to promote either the organization or the dissolution of a union. *See Herring v. Delta Air Lines, Inc.*, 894 F.2d 1020, 1023 (9th Cir. 1990); *Rachford v. Evergreen Intern. Airlines, Inc.*, 596 F. Supp. 384, 386 (N. D. Ill. 1984); *see* 45 U.S.C. § 152 (Fourth). Even if the Court were to ignore all the

---

[2] Callaway testified: "The SAPA Web site was a message forum, message board that the pilots could use to communicate and discuss issues." (Callaway Dep. at 50). Furthermore, Callaway described his postings as follows: "I would provide, you know, opinions, research, statistics regarding our contract or lack thereof compared to other airlines and issues that affected the pilots and arguments as to why we should unionize." (Callaway Dep. at 52).

evidentiary defects with these three documents, they still provide no evidence that SkyWest knew Mr. Callaway was a union organizer or disciplined him for attempting to organize a union.

## II. CALLAWAY CANNOT TESTIFY AS TO WHY OTHER PILOTS WERE DISCIPLINED BECAUSE HE HAS NO PERSONAL KNOWLEDGE.

The remainder of Callaway's opposition memorandum confuses the applicable rules of evidence, incorrectly characterizes SkyWest's arguments, and flatly ignores many of the bases SkyWest relies on for striking Callaway's affidavit. Therefore, to simplify the analysis, SkyWest addresses each applicable paragraph in order, first providing the Court the actual language from each paragraph, and then explaining why each one must be stricken or otherwise not considered by the Court.

> **Paragraph 5:** Through my involvement in the organizing campaigns I knew what other pilots were active in the campaigns and I also could observe the postings made on the SAPA website by others. I also learned which of those pilots were having problems as a result of their involvement in the organizing campaigns.

Callaway's observations of other people's postings are hearsay. The posts themselves are not offered. Callaway does not explain what "problems" other pilots were having, who the pilots are or how he got the information. He simply has no personal knowledge of the facts he asserts.

The Tenth Circuit has stated that a district court may not consider hearsay evidence to defeat summary judgment. *Bateman v. United Parcel Service, Inc.*, 31 Fed. Appx. 593, 597 (10th Cir. 2002) (unpublished opinion, a copy of which is attached hereto as Exhibit "C"). In *Bateman,* the court affirmed a district court's ruling that the plaintiff had failed to establish a prima facie case because her evidence was "either speculative or based on inadmissible evidence." *Id.* The court further stated: "Plaintiff's testimony regarding the different treatment

of her male co-workers was not based on personal knowledge but on what she was told by others." *Id.*

Similarly, Callaway testifies that he learned "which pilots were having problems as a result of their involvement." However, he does not indicate how he learned of pilots having problems, what those problems were, whether those problems came from SkyWest or elsewhere, and how it is he knows that those problems were a "result" of their involvement in the organizing campaigns. Unless he had personal knowledge of the foregoing, his testimony is hearsay and must be stricken.

> **Paragraph 7:** Sometime after I was called to St. George in late 2000, where I was threatened by Brad Holt and Jim Breeze for my postings, Steve Kanuch called me and told me that he too had been told to report to St. George to meet with Jim Breeze. It had been made clear to him that he would be questioned about his pro-union postings and therefore he and I discussed what had happened at my "meeting" and how he could best handle his meeting.

Callaway's testimony of what Steve Kanuch told him is hearsay. In order to defeat summary judgment, Callaway must present evidence that would be admissible at trial. *See* Fed. R. Civ. P. 56. Callaway does not have personal knowledge that Kanuch was called to St. George to meet with Jim Breeze. Neither does he have personal knowledge of what Kanuch would be questioned about. Glaring in its omission is an affidavit from Steve Kanuch or another party to these alleged conversations and discipline. Accordingly, the Court should strike paragraph seven of Callaway's affidavit.

> **Paragraph 8:** After he returned from St. George, I spoke again with Steve and we discussed what he had gone through. It was apparent that he had gone through much the same haranguing and threats that I had experienced. Shortly thereafter, Steve lost his check airman status, which earned him about $15.00 per hour in additional wages.

Paragraph eight contains more hearsay and should be stricken. As in *Bateman,*

Callaway's testimony is not based on personal knowledge. Rather, Callaway is again repeating out of court statements allegedly made by Steve Kanuch about having "gone through much of the same haranguing and threats" allegedly experienced by Callaway. In *Bateman*, the Tenth Circuit stated that knowledge based upon what the plaintiff was "told by others" is inadmissible, and cannot defeat summary judgment. *Bateman*, 31 Fed. Appx. at 597. Despite having Mr. Kanuch's complete employment file at his fingertips, he does not bother to lay any foundation for his knowledge of how or when Kanuch lost his check airman status.

> **Paragraph 9:** I also know about some of the problems that Ben Palmer, another SkyWest pilot, went through. Ben was also very involved in union organizing. In approximately 2003 he was accused by Jim Breeze of demanding that pilots who were going to ride in the cockpit jumpseat had to first sign union cards. Although Ben told Breeze that this was untrue (and although SkyWest had no proof that it occurred) he was initially fired by the company and then rehired after he filed an appeal to get his job back.

Callaway has not established that he has personal knowledge that Palmer was "accused by Jim Breeze of demanding that pilots who were going to ride in the cockpit jumpseat had to first sign union cards." He does not know this. Rather, this is something that Callaway allegedly heard through another person and is therefore hearsay. Furthermore, unless Callaway was present when Palmer allegedly "told Breeze that this was untrue," his affidavit testimony is inadmissible. Furthermore, Callaway has not stated how he knows that Palmer was fired and then rehired after he filed an appeal. Again, we have no affidavit from Palmer or any documents from his previously produced employment file, just hearsay and speculations from Mr. Callaway. Accordingly, paragraph nine should be stricken.

> **Paragraph 10:** Another pilot, John Manardi, got into trouble for refusing to fly a Comair plane into a Comair station, Des Moines, Iowa. The Comair pilots were on strike and for some reason SkyWest ended up with some of their planes and began to fly into Des Moines from Salt Lake City. A number of us were concerned about making such flights unless the ALPA union representing the Comair pilots said it was okay. Brad Holt

> told the pilots that if they did not want to fly into a Comair station they could simply put their name on a list and they would not be required to make the flight.

Callaway testifies that Manardi "got into trouble for refusing to fly a Comair plane into a Comair station." However, Callaway does not demonstrate that he has personal knowledge of this. Callaway does not have personal knowledge that Manardi refused to fly a Comair plane into a Comair station, or that Manardi "got into trouble" for such a refusal. Nor does Callaway indicate when this happened, how he knew that a number of pilots were concerned about making flights, or who those pilots were. Furthermore, Callaway's affidavit attempts to introduce what Brad Holt allegedly told pilots without providing any basis. Callaway took Brad Holt's deposition and never asked him about the alleged statement made by Mr. Holt. Rather, Callaway is attempting to proffer testimony of statements and information held by others as his own testimony. As in nearly every other paragraph in his affidavit, Callaway simply makes statements which are not based upon personal knowledge, but which are instead hearsay. Such testimony is inadmissible and cannot be used to defeat summary judgment, and should accordingly be stricken.

> **Paragraph 11:** When the flight came up John asked that he not be required to take the flight. SkyWest refused to make a change in the schedule and John was fired. His job was not reinstated until it went up to one of the top managers, Ron Reber, at SkyWest.

This paragraph contains the same defects as outlined above. Callaway has not testified that he was present when Manardi allegedly "asked that he not be required to take the flight." Rather, this is more likely something Callaway heard second or third hand. Furthermore, Callaway does not know that SkyWest refused to make a scheduling change. Again, we are deprived of the direct testimony of Mr. Minardi or any document from his file as foundation or

support for these claims. Callaway's testimony is not based on personal knowledge and should therefore be stricken.

> **Paragraph 12:** I also know that Phil Alford, another RJ Canadair Captain, lost his check airman status because he stood up for John Manardi by writing to Kelvin Hyatt, asking that the company not fire John. Phil was also very involved in the numerous organizing campaigns that have taken place.

Callaway has failed to provide any basis for his testimony of how he knows that Alford stood up for Manardi, or that Alford wrote a letter to Hyatt asking the company not to fire Manardi. Callaway failed to provide any information regarding when this occurred. Callaway does not state how he knows that Alford was involved in organizing campaigns or when those campaigns took place. As before, there is no affidavit from Phil Alford or document offered from his personnel file, only hearsay and conspiracy theories.

> **Paragraph 13:** I know of other pilots who have been involved in campaigns that have also been harassed and threatened by SkyWest. A typical pattern is that SkyWest will wait until the pro-union pilot has been involved in a relatively minor incident and then blow it out of proportion and threaten the pilot with suspension or termination. Those who have been involved in organizing are also often labeled as having a bad attitude, or trying to tear down the company, or attacking management. In fact, in most instances those pilots are simply expressing their opinions as to why a union would be beneficial.

Paragraph thirteen of Callaway's affidavit may be the worst offender of all and should therefore be stricken. Callaway states that he knows of other pilots who have been involved in campaigns who have also been harassed and threatened by SkyWest. There is simply no basis of personal knowledge for this statement. Callaway does not say who was involved in organizing campaigns. He does not state who was threatened, or that he ever personally witnessed harassment or threatening of these unnamed pilots by SkyWest. Callaway does not state when these threats took place, who at SkyWest made the threats, the substance of the threats, or who

was threatened. Rather, his testimony consists of self-serving conjecture and is therefore inadmissible.

## III. RULE 406 CANNOT TRUMP THE REMAINING FEDERAL RULES OF EVIDENCE.

Finally, Callaway's argument that Federal Rule of Evidence 406 makes his hearsay statements admissible is misguided. Rule 406 is a rule of relevance and not reliability. Contrary to Callaway's assertion, Rule 406 has not been used to make hearsay admissible. Rule 406 simply provides an exception to the general rule that prior bad acts are not admissible to show action in conformity therewith.[3]

Callaway suggests that *Perrin v. Anderson*, 784 F.2d 1040, 1045 (10th Cir. 1986) supports his position that Rule 406 makes hearsay evidence admissible. However, in *Perrin*, the court held that otherwise admissible witness testimony of a person's prior acts would not be excluded on relevance grounds as they were used to establish habit and action in conformity therewith. *Id.* at 1045-1046. Additionally, in *Perrin*, the testimony the plaintiff sought to exclude had been offered by witnesses who had personal knowledge of the events establishing the habit or ordinary practice. *Id.*

Here, Callaway seeks to introduce only his own speculations as testimony, none of which are based on personal knowledge. Prior to making a Rule 406 determination, the Court must first find that a party has presented otherwise admissible evidence. Here Callaway has not.

[3] "Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice." Fed. R. Evid. 406.

## CONCLUSION

Mr. Callaway offers no excuse for his missing and late documents. Neither does he offer foundation or attempt to authenticate them. They are not properly before this Court and should be stricken. His testimony about his 2000 SAPA postings violates Rule 1002 and must be stricken. The remaining hearsay and conjecture he offers is not admissible evidence. For the foregoing reasons, the Court should grant SkyWest's Motion to Strike the Affidavit of David Andrew Callaway.

DATED this 27th day of March, 2006.

/s/ Scott M. Petersen
Scott M. Petersen
David N. Kelley
FABIAN & CLENDENIN,
a Professional Corporation
Attorneys for Defendant SkyWest Airlines

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing **REPLY MEMORANDUM SUPPORTING MOTION TO STRIKE THE AFFIDAVIT OF DAVID ANDREW CALLAWAY** to be hand-delivered this 27th day of March, 2006, to the following:

Erik Strindberg, Esq.
Lauren I. Scholnick, Esq.
Ralph Chamness, Esq.
STRINDBERG SCHOLNICK & CHAMNESS, LLC
426 North 300 West
Salt Lake City, UT 84103

/s/ Scott M. Petersen

Exhibits to this Reply Memorandum Supporting Motion to Strike the Affidavit of David Andrew Callaway have been filed with the court in the form of hard copies.