IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ANDREW DAVID CALLAWAY,<br><br>        Plaintiff,<br><br><br><br><br><br><br><br><br><br>                vs.<br><br><br>SKYWEST AIRLINES INC., a Utah corporation,<br><br>        Defendant. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STRIKE, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND DISMISSING CASE<br><br><br><br><br>Case No. 2:04-CV-179 TS |

        This matter comes before the Court on Defendant's Motion to Strike and Defendant's Motion for Summary Judgment.  The Court heard oral argument on these motions on March 28, 2006, and took the motions under advisement at the conclusion of the hearing.   Having considered the arguments of counsel and the materials in the file, the Court will grant, in part, and deny, in part, Defendant's Motion to Strike, will grant Defendant's Motion for Summary Judgment, and will dismiss this case.

## I.  INTRODUCTION

Plaintiff's Complaint originally contained four causes of action: (1) Violation of the Railway Labor Act; (2) Violation of the Wire and Electronic Communication Interception and Interception of Oral Communications Act; (3) Wrongful Termination in Violation of Public Policy; and (4) Breach of an Implied Contract.[1]  Plaintiff voluntarily dismissed his third and fourth causes of action.[2]  Defendant submitted a Revised Memorandum Supporting Motion for Summary Judgment[3] addressing the two remaining causes of action.  Plaintiff has now stated that he will not contest SkyWest's Motion for Summary Judgment on his second cause of action,[4] alleging a violation of the Wire and Electronic Communication Interception and Interception of Oral Communications Act, and agrees that it should be dismissed.[5]  Thus, the only remaining issue before the Court is Plaintiff's first cause of action.

## II.  FACTUAL BACKGROUND

Plaintiff Callaway applied for a job as an airline pilot with Defendant SkyWest in 1996. SkyWest interviewed Callaway for a position in January 1998.  As part of the hiring process, Callaway was scheduled to attend pilot training in February 1998.  Callaway missed that training.  Callaway states that he missed this training because he needed to be with his father, who was ill at the time.  It is disputed as to whether Callaway informed SkyWest of this.

---

[1]Docket No. 1, at 6–9.

[2]Docket No. 68.

[3]Docket No. 78.

[4]Docket No. 87, at xiv n.3.

[5]*Id*. at xv.

Callaway was later given a second chance to attend training after he submitted a second application to SkyWest.  Callaway began working as a pilot for SkyWest on January 13, 1999.

On or about December 7, 2000, Kelvin Hyatt, a Chief Pilot at SkyWest and Callaway's immediate supervisor, was informed by the Director of Crew Scheduling, that Callaway had mistreated certain SkyWest schedulers.[6]  The Director stated that Callaway was verbally harassing her crew schedulers over certain scheduling issues.

Hyatt arranged a meeting with Callaway on December 11, 2000.  The meeting was also attended by Jim Breeze, the System Chief Pilot, and Brad Holt, the Vice President of Flight Operations.  The meeting was held to discuss with Callaway the complaints about his behavior to the crew schedulers and his postings on a website.[7]  Callaway has alleged that he posted a number of things on the SAPA website dealing with work-related issues, including pro-union comments.[8]  Holt has denied that he ever saw any pro-union postings from Callaway and has stated that he did not know that Callaway was a union organizer until this lawsuit.[9]  Breeze has

---

[6]Plaintiff objects to these statements arguing that they contain inadmissible hearsay.  These statements are not hearsay since they are not being offered for the truth of the matter asserted.  Rather, the relevance of these statements, in the context of this motion, are that those who made the decision to terminate Callaway were told that the scheduling crew had complained about him and that these complaints were taken into account in the termination decision.

[7]Callaway had made certain comments on the SkyWest Airline Pilots Association ("SAPA") website, not the official SkyWest website.  The SAPA website is an independently owned and operated website which is maintained and used by SkyWest pilots to discuss work and work-related issues.

[8]While Callaway has stated that most of his posts were union-related, few have been produced.  Callaway's statements to this effect are the subject of a Motion to Strike, addressed herein.

[9]Docket No. 92, Exhibit F, at 118–21.

stated that he cannot remember the specifics of these postings.[10]   Callaway has stated that he cannot remember whether the postings were actually discussed at the meeting.[11]  Hyatt has stated that he did not know that Callaway was involved with union activity until after this lawsuit was filed.[12]  At the meeting, Callaway was given a verbal warning.

In October 2001, SkyWest Customer Service Relations received a phone call from an individual who was the owner and landlord of property neighboring Callaway's residence.[13]  The neighbor stated that his tenants had complained about loud parties, unbearable noise, and property damage caused by Callaway.  The neighbor also stated that his tenants had told him that they saw drugs being used at Callaway's home.  The neighbor knew that Callaway was a SkyWest pilot and asked SkyWest to do something.  An employee in SkyWest's Human Resources Department called the neighbor about these issues and also called an employee with the Salt Lake City Police Department.  The Salt Lake City Police Department employee informed the SkyWest employee about the complaints made by neighbors.  Kelvin Hyatt then contacted Callaway about these complaints.  Callaway informed Hyatt that he had sued the neighbor and the city because of these complaints.

Prior to November 2001, Callaway was required to attend, and did attend, classroom instruction and testing related to SkyWest's regional jets.  The instructor of this course stated, in

---

[10]*Id.*, Exhibit H, at 40–41.

[11]Docket No. 78, Exhibit A, at 54–55.

[12]*Id.*, Exhibit G, at 175.

[13]Plaintiff again objects to such statements on hearsay grounds.  But, as noted in footnote 6, such statements are not being offered to determine the truth of the matter asserted.  Rather, what is important here is whether those who made the decision to terminate Plaintiff knew of these complaints and that they were a part of the decision-making process.

4

a written summary prepared in November 2001, that Callaway exhibited a poor attitude during the training.[14]

On or about November 13, 2001, SkyWest received complaints from the airport in Butte, Montana that Callaway had exhibited inappropriate behavior toward agents and security personnel.[15]  Shortly after this, Callaway met with Brad Holt, Bill Boice, Tony Thompson, Kelvin Hyatt, Dave Faddis, and Mike Eisenstat regarding this incident.  Callaway was given a Counseling Statement[16] citing his "extremely inappropriate behavior" and was placed upon administrative leave.  The Counseling Statement of November 30, 2001, also mentioned Callaway's previous verbal warning in reference to Callaway's abusive treatment of crew support personnel and the posts he authored on the web boards.[17]  Callaway requested and was provided a Review Board concerning the Counseling Statement.  The Review Board upheld the Counseling Statement, but removed the word "extremely" from the Statement.

On March 26, 2002, Callaway was given a Scheduled Assignment Deviation ("SAD")[18] as a result of being unable to work because he was recovering from a cold.  On June 30, 2003,

---

[14]Docket No. 78, Exhibit U.  Plaintiff disputes that he exhibited a poor attitude.  This dispute, however, is irrelevant because the issue is not whether he actually exhibited a poor attitude, but whether those who made the decision to terminate him were told that he exhibited a poor attitude and whether this was a part of their consideration.

[15]Plaintiff again disputes that he exhibited inappropriate behavior while in Butte.  But again, it is irrelevant whether he actually exhibited inappropriate behavior.  What is relevant is whether SkyWest was informed of this and that it was used in their determination to terminate Plaintiff.

[16]Docket No. 78, Exhibit L.

[17]*Id*.

[18]SADs are not disciplinary in nature, but simply state that an event took place.

Callaway received another SAD because he failed to respond to calls from crew scheduling while he was on reserve.

On August 12, 2003, Kelvin Hyatt was approached by a SkyWest flight attendant.  The flight attendant told Hyatt that she had received threatening emails from Callaway concerning money Callaway said she owed him.[19]  Callaway had invited the flight attendant on a trip to Spain to take the place of another woman who had cancelled at the last minute.  The flight attendant stated that she believed that she did not have to reimburse Callaway for the costs of the trip, but Callaway asserts that she did agree beforehand to pay her share of the expenses. Beginning in the summer of 2003, Callaway began sending the flight attendant emails through the SkyWest network and her "hotmail" account asking that she pay him the money.  One of these emails sent by Callaway stated: "Come on . . . I'm tired of this.  I need my money now or I'll get it the hard way.  Thanks.  Andy."  Callaway alleges that "the hard way" meant that he would take the flight attendant to small claims court, which he eventually did.  The flight attendant has stated that she thought Callaway meant that he might do something to physically harm her.  The flight attendant approached Mr. Hyatt and asked if he could take care of the situation and get it to stop.  Mr. Hyatt investigated the incident and sent an email to Callaway asking him to explain the situation.  Callaway responded to Hyatt's email with an explanation of what had occurred and provided Hyatt with the emails that he and the flight attendant had

---

[19]Plaintiff disputes that he ever sent any threatening emails.  He states that he was merely attempting to collect money which the flight attendant owed to him.  Plaintiff does not dispute that the flight attendant approached Mr. Hyatt concerning these emails.

exchanged.[20]  Callaway told Hyatt that it was a personal matter that did not involve SkyWest in

any form whatsoever.[21]

During September 2003, Mr. Hyatt received a call from the Denver Assistant Chief Pilot.

He told Hyatt that he overheard Callaway say certain negative things about SkyWest and its

management.[22]  The Denver Assistant Chief Pilot later produced a written statement.[23]

Callaway was terminated by SkyWest on October 1, 2003.  The termination notice stated:

> Mr. Callaway is being terminated due to a pattern of attitudinal and interpersonal
> conflicts with supervisors and other SkyWest employees.  He has repeatedly
> declared his dissatisfaction with SkyWest and his desire to work elsewhere.
> Although he has been counseled on these issues, he has not made a good faith
> effort to change and avoid conflict.  As a pilot, he occupies a high-profile position
> and represents SkyWest wherever he travels.  His hostile attitude and repeated
> conflicts with SkyWest employees, supervisors and security personnel make him
> a tremendous liability to the company.[24]

Callaway requested and received a Review Board hearing.  A hearing was held on

October 24, 2003.  As part of the Review Board hearing, Mr. Hyatt prepared a summary of the

reasons for Mr. Callaway's termination, which included a list of previous disciplinary actions

---

[20]Docket No. 78, Exhibit O.

[21]*Id*.

[22]Callaway disputes this claim and states that he was not in the hotel when he was alleged
to have made these statements.  Whether Callaway actually made these statements is not
relevant.  What is relevant is whether Mr. Watkins informed Mr. Hyatt of those statements and
whether the statements were considered in the termination decision.  Plaintiff further alleges that
Mr. Watkins' statements could not have been considered because Mr. Watkins' write-up of the
incident was dated three weeks after he was terminated.  While this is true, Mr. Watkins did tell
Mr. Hyatt what he had heard before Callaway was terminated.

[23]Docket No. 78, Exhibit P.

[24]*Id*., Exhibit Q.

taken against Callaway.[25]  Part of this summary mentioned the December 2000 meeting where Callaway met with Hyatt, Jim Breeze, and Brad Holt concerning the messages he posted on the website and the reports of abusive treatment of crew schedulers.[26]  The Review Board upheld Callaway's termination, but gave him the option of resigning and being eligible for rehire. Callaway turned down this option and opted for termination.

### III.  DEFENDANT'S MOTION TO STRIKE

Defendant's Motion to Strike seeks to strike: (1) various portions of Plaintiff's deposition testimony which discuss the contents of the SAPA web postings; (2) paragraph 4 of Plaintiff's Affidavit which discusses three postings Plaintiff made on the SAPA website; and (3) paragraphs 5–13 of Plaintiff's Affidavit, which touch on Plaintiff's statements concerning SkyWest's actions toward other pilots engaged in union activities.  For the reasons stated below, the Court will grant Defendant's Motion to Strike, in part, and deny it, in part.

First, Defendant seeks to strike various portions of Plaintiff's deposition testimony wherein Plaintiff discussed his postings on the SAPA website.  Defendant has offered no reason to have this testimony stricken.  As a result, Defendant's Motion to Strike is denied as it relates to Plaintiff's deposition testimony.

Second, Defendant seeks to strike paragraph 4 of Plaintiff's Affidavit.  The primary ground for the Motion is Defendant's argument that Plaintiff's testimony about the postings violates Federal Rule of Evidence 1002, since Plaintiff has failed to produce these postings.  In response, Plaintiff has produced three items which he mentions in paragraph 4 of his Affidavit.

---

[25]Docket No. 87, Exhibit 13.

[26]*Id.*

These include: (1) a chart showing the disparity between SkyWest's top three management salaries and those of SkyWest's Captains and First Officers; (2) a cartoon showing a small blimp entitled "Pilot Pay Proposal" running into a larger blimp entitled "Management Pay & Bonuses"; and (3) a drawing entitled "Comair + 1."[27]

Since Plaintiff has now produced the three items discussed in paragraph 4 of his Affidavit, the Court will not strike that paragraph.  However, the Court notes that it is extremely troubled that Plaintiff did not produce these items during discovery and waited until its response to Defendant's Motion to Strike to produce them.  Despite this, the Court will not strike paragraph 4.

Third, Defendant's Motion to Strike seeks to strike certain portions of Plaintiff's Affidavit which discuss actions taken by SkyWest against other pilots for union activity. SkyWest argues that these statements are speculative, lack foundation, are not based on Plaintiff's personal knowledge, and contain inadmissible hearsay.  Plaintiff states that such evidence is admissible under Federal Rule of Evidence 406.

Rule 406 provides: "Evidence of the . . . routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitness, is relevant to prove that the conduct of the . . . organization on a particular occasion was in conformance with the . . . routine practice."  Plaintiff claims that it is Defendant's routine practice to chastise a pilot and create a reason to discipline that pilot once they learn the pilot is engaged in union activity.  Plaintiff alleges that his personal knowledge of SkyWest's activities toward certain pilots shows such a routine practice.

---

[27]The copy of the Comair + 1 cartoon that was provided to the Court only seems to be a depiction of the Comair logo.

Callaway's statements in paragraphs 5–13 are inadmissible on a number of grounds. First, they contain inadmissible hearsay.[28]  Second, Plaintiff has failed to establish an appropriate foundation for these statements and has not provided any affidavits from the pilots who were allegedly disciplined because of union activities.  These statements are not saved by Plaintiff's claims that his statements show a routine practice under Rule 406.  Rule 406 is a rule of relevance.  It does not make hearsay considerations moot.  More is required to show that it is SkyWest's routine practice to discipline pilots who engage in union activity than has been presented here.  Therefore, paragraphs 5–13 of Plaintiff's Affidavit will be stricken.

### IV.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

A.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[29]  In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[30]  The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[31]

---

[28]*See Bateman v. United Parcel Service, Inc.*, 31 Fed. Appx. 593, 597–98 (10th Cir. 2002) (unpublished opinion).

[29]Fed. R. Civ. P. 56(c).

[30]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[31]*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986);  *Wright v. Southwestern Bell Tel. Co.,* 925 F.2d 1288, 1292 (10th Cir. 1991).

B.     ANALYSIS

Plaintiff's sole remaining cause of action alleges a violation of the Railway Labor Act ("RLA").[32]  The RLA prohibits "interference, influence, or coercion by either party over the designation of representatives by the other."[33]  It also states that "it shall be unlawful for any carrier to interfere in any way with the organization of its employees, or to use the funds of the carrier in maintaining or assisting or contributing to any labor organization, labor representative, or other agency of collective bargaining . . . ."[34]

The burden-shifting method employed in unlawful discharge claims brought under the National Labor Relations Act has also been applied to claims brought under the RLA.[35]  Under this analysis, "the employee bears the burden of 'proving by a preponderance of evidence that . . . [his] protected conduct was a substantial or motivating factor in [his] discharge.'"[36]  "If the employee does so, 'the burden shifts to the employer to prove by a preponderance of the evidence that the employee would have been fired anyway for a valid reason.'"[37]

Thus, in order to establish that an anti-union animus was a substantial or motivating factor in his discharge, an employee must show the following: (1) he engaged in union activities;

---

[32]45 U.S.C. §§ 151 *et seq*.

[33]*Id*. § 152 (Third).

[34]*Id*. § 152 (Fourth).

[35]*Lebow v. Am. Trans Air*, 86 F.3d 661, 665–66 (7th Cir. 1996).  The parties have agreed to the use of the test set out by the Seventh Circuit in *Lebow*.

[36]*Id*. at 666 (quoting *Union-Tribune Publishing Co. v. NLRB*, 1 F.3d 486, 490 (7th Cir. 1993)).

[37]*Id*. (quoting *Union-Tribune*, 1 F.3d at 490).

(2) the employer knew of the employee's involvement in protected activities; (3) the employer harbored animus towards those activities; and (4) there was a causal connection between the employer's animus and its discharge decision.[38]

1.      PLAINTIFF'S PRIMA FACIE CASE

a.      WHETHER PLAINTIFF ENGAGED IN UNION ACTIVITIES

Defendant has conceded, for the purposes of summary judgment, that Plaintiff has engaged in union activities.  Therefore, the Court will consider this element as proven for the purposes of this Motion.

b.      WHETHER DEFENDANT KNEW OF PLAINTIFF'S INVOLVEMENT IN UNION ACTIVITIES

The second element under the *Lebow* test is whether SkyWest knew of Plaintiff's involvement in union activities.  The Court finds that Plaintiff cannot show that Defendant knew he was involved in union activities.  The only thing that would suggest that Defendant had such knowledge was the December 2000 meeting, which was scheduled to discuss crew scheduling complaints that had been lodged against Plaintiff and his postings on the SAPA website. Plaintiff has stated that these postings contained pro-union messages.  Holt has denied that he ever saw any pro-union postings from Callaway and has stated that he did not know that Callaway was a union organizer until this lawsuit.[39]  Breeze cannot remember the specifics of these postings.[40]  Hyatt has stated that he did not know that Callaway was involved with union

---

[38]*Id.*

[39]Docket No. 92, Exhibit F, at 118–21.

[40]*Id.*, Exhibit H, at 40–41.

activity until after this lawsuit was filed.[41]  Additionally, it is unclear whether these postings were
even discussed at the December 2000 meeting.  Plaintiff himself has stated that he cannot
remember whether the postings were actually discussed at the meeting.[42]

To date, only three items which Plaintiff claims he posted on the SAPA website have
been produced.  As noted, those items are: (1) a chart showing the disparity between SkyWest's
top three management salaries and those of SkyWest's Captains and First Officers; (2) a cartoon
showing a small blimp entitled "Pilot Pay Proposal" running into a larger blimp entitled
"Management Pay & Bonuses"; and (3) a drawing entitled "Comair + 1."  The Court finds that
these items do not show that Plaintiff was engaged in union activity.  Rather, these items show a
disparity between the salaries of SkyWest management and pilots.  The only items which have
been produced do not show that Plaintiff was involved with union activity or that Defendant
knew of his involvement with union activity.  Therefore, Plaintiff cannot meet this element.

c.  WHETHER DEFENDANT HARBORED ANIMUS TOWARDS THOSE
ACTIVITIES

Plaintiff points to a number of things to show that SkyWest harbored an animus towards
pro-union activities.[43]  These include: (1) the December 2000 meeting; (2) other incidents

------

[41]Docket No. 78, Exhibit G, at 175.

[42]*Id*., Exhibit A, at 54–55.

[43]Plaintiff has conceded that SkyWest's "union free" statement on its website is not
sufficient to show an animus towards union activities.  *See Webco Indus., Inc. v. NLRB*, 217 F.3d
1306, 1316 (10th Cir. 2000) ("An employer is free to communicate to its employees any of its
general views about unionism or any of its views about a particular union, so long as the
communications do not contain a threat of reprisal or force or promise of benefit.") (quotation
marks and citation omitted).

between SkyWest and other pro-union employees; and (3) the two July 1999 letters by Brad Holt sent to pilots.[44]

First, as mentioned above, it is unclear whether union activity was discussed at the December 2000 meeting. Plaintiff contends that his posts concerned pro-union activity. Holt has denied that he ever saw any pro-union postings from Callaway and has stated that he did not know that Callaway was a union organizer until this lawsuit.[45] Breeze cannot remember the specifics of these postings.[46] Hyatt has stated that he did not know that Callaway was involved with union activity until after this lawsuit was filed.[47] Plaintiff himself has stated that he cannot remember whether the postings were actually discussed at the meeting.[48] Since Plaintiff cannot show that Defendant knew he was engaged in union activities, Plaintiff cannot prove that he was disciplined for engaging in union activities at the December 2000 meeting.

Second, Plaintiff points to the actions that SkyWest has taken against other union organizers. Plaintiff only provides his own Affidavit concerning these actions. Plaintiff does not provide deposition testimony or affidavits from these individuals. As discussed above, the statements to this effect in Plaintiff's Affidavit are stricken and will not be considered by the Court.

---

[44]Docket No. 87, Exhibits 17 & 18.

[45]Docket No. 92, Exhibit F, at 118–21.

[46]*Id*., Exhibit H, at 40–41.

[47]Docket No. 78, Exhibit G, at 175.

[48]*Id*., Exhibit A, at 54–55.

14

Third, Plaintiff points to two letters written by Brad Holt in July of 1999.  The Tenth Circuit has held that "'an employer may properly point out the hazards' of the collective bargaining process."[49]  These letters do just that.  They merely consist of an employer pointing out the hazards of the collective bargaining process and, therefore, do not show animus toward union activities.  As a result, Plaintiff cannot prove the third element.

> d.   WHETHER THERE WAS A CAUSAL RELATIONSHIP BETWEEN DEFENDANT'S ANIMUS AND ITS DISCHARGE DECISION

The final element Plaintiff must show in order to establish a prima facie case is that there was a causal relationship between Defendant's animus and its decision to discharge him.  Plaintiff alleges that SkyWest discharged him as a result of his union activities.  SkyWest, on the other hand, states that Callaway was fired because of the other disciplinary action that had been taken against him.

Callaway, as noted above, relies on his posts on the SAPA website as evidence that he was involved in union activities.  These posts have not all been produced, and those that have been produced do not show that Plaintiff was engaged in union activity.  These posts were one of the reasons SkyWest called the December 2000 meeting, although it is not clear whether these were actually discussed at the meeting.  At the December 2000 meeting, Plaintiff was given a verbal warning.  This verbal warning was later mentioned in the Counseling Statement issued to Plaintiff after the incident at the Butte airport and in the summary presented to the Review Board.

---

[49]*Webco*, 217 F.3d at 1317 (quoting *Belcher Towing Co.*, 265 N.L.R.B. 1258, 1268 (1982), *aff'd in part and rev'd in part on other grounds*, 726 F.2d 705 (11th Cir. 1984)).

The one meeting in December of 2000 and the later mentioning of the meeting on two occasions, even if it did concern union activity, does not show a direct causal relationship between SkyWest's alleged animus toward unions and Plaintiff's discharge.  The Fourth Circuit has held that an employee's statements made two years prior to termination did not show that the discharge was discriminatorily motivated.[50]  Plaintiff was terminated nearly three years after the December 2000 meeting where his posts may have been discussed.  Further, Plaintiff admits that he believes he was terminated, at least in part, because of the emails between himself and the flight attendant.[51]  Additionally, as will be discussed below, Defendant has presented a number of other reasons to justify Plaintiff's termination.  For these reasons, Plaintiff cannot meet the final element and cannot make a prima facie showing of a violation of the RLA.

2.     WHETHER PLAINTIFF WOULD HAVE BEEN FIRED ANYWAY FOR A VALID REASON

If Plaintiff could establish a prima facie case, which the Court finds he cannot, the burden would then shift to the employer to prove by a preponderance of the evidence that the employee would have been fired anyway for a valid reason.[52]  In this case, Defendant presented a number of issues which it believes shows that Plaintiff would have been fired anyway for a valid reason.

Defendant cites to the following bases to support its termination decision: (1) the crew scheduling complaints which were discussed at the December 2000 meeting; (2) the complaints

---

[50]*Goldtex Inc. v. NLRB*, 14 F.3d 1008,1011–12 (4th Cir. 1994).  *See also General Electric Co. v. NLRB*, 117 F.3d 627, 638 (D.C. Cir. 1997) ("[B]ecause [the employee] was fired almost two years after the [union] election and ten months after he testified, his firing did not follow the election or proceedings so closely as to be remotely suspect.").

[51]Docket No. 78, Exhibit A, at 223.

[52]*Lebow*, 86 F.3d at 666.

from Callaway's neighbors; (3) the comments from Callaway's ground instructor, that Callaway was disrespectful; (4) the incident at the Butte airport and the Counseling Statement that followed; and (5) Callaway's actions with regard to collecting money from the flight attendant. Plaintiff disputes the characterization of many of these incidents, but he does not dispute the fact that Defendant had been told about these incidents and that they were used in the decision-making process.

Defendant has presented ample evidence that Plaintiff had exhibited "a pattern of attitudinal and interpersonal conflicts with supervisors and other SkyWest employees."[53]  The Court finds that it is for these reasons that he was terminated, not because of any engagement in union activity.  From this, the Court finds that even if Plaintiff could make out a prima facie case under the RLA, he would have been fired anyway for a legitimate reason.  As a result, Plaintiff's RLA claim fails and Defendant's Motion for Summary Judgment is granted.

V.  CONCLUSION

It is therefore

ORDERED that Defendant's Motion to Strike (Docket No. 89) is DENIED IN PART AND GRANTED IN PART.  It is further

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 50) is GRANTED.

The clerk of the court is directed to close this case forthwith.

---

[53]Docket No. 78, Exhibit Q.

DATED   March 29, 2006.

BY THE COURT:

_____
TED STEWART
United States District Judge